UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WARD BREHM,<br><br>        Plaintiff,<br><br>   v.<br><br>PETE MAROCCO, Acting Deputy<br>Administrator for Policy and Planning and for<br>Management and Resources for USAID, et al.,<br><br>       Defendants. | Civil Action No. 25-0660 (RJL) |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR A TEMPORARY RESTRAINING ORDER</u>**

# TABLE OF CONTENTS

Table of Contents ...................................................................................................... i

Background ................................................................................................................ 2

    I.      Legal Background ............................................................................... 2

    II.     Factual Background. ........................................................................... 3

Legal Standards ......................................................................................................... 4

Argument .................................................................................................................. 5

    I.      Brehm Cannot Succeed on the Merits ................................................ 5

          A.      Brehm was Never Lawfully Appointed President so He Cannot be Recognized as Such. .................................................... 6

          B.      Brehm Lacks Standing to Challenge Marocco's Designation. ................... 9

          C.      Marocco's Designation was Lawful. ......................................... 13

    II.     Brehm Has Failed to Demonstrate Irreparable Harm. ......................... 14

    III.    The Balance of Equities and Public Interest Favor Defendants. ........................ 17

Conclusion .............................................................................................................. 19

Defendants, various government components and officials, including the President, sued in their official capacities, respectfully submit this memorandum in opposition to Plaintiff's motion for a temporary restraining order (ECF No. 7).

## INTRODUCTION

On February 24, 2025, the President removed Ward Brehm, Carol Moseley Braun, Morgan Davis, and John Leslie from the Board of the United States African Development Foundation (the "Foundation") effective immediately. Two days later, the President removed John Agwunobi. Notwithstanding their removals, on March 3, 2025, the defunct Board allegedly convened a board meeting and purported to appoint Brehm as Foundation president. Brehm later sued seeking an injunction compelling Defendants, including the President, to recognize his position and treat him as president of the Foundation. The Foundation had no authority to recognize Brehm as president, and this Court lacks authority to order the President and other Defendants to treat him as such.

Indeed, Brehm cannot succeed on the merits. The President acted pursuant to his constitutional and statutory authority in removing Brehm and the other four Foundation Board members. The statute establishing the Foundation permits the President alone to select seven members for six-year terms subject to Senate confirmation. But nothing in the statute restricts the President's ability to remove those members he appoints. And even assuming Congress could limit the President's removal authority, the Supreme Court has explained it may only do so expressly. The lack of any express removal protections here means Brehm cannot prevail on the merits.

Brehm also lacks standing to challenge Marocco's designation because Marocco's appointment did not cause a concrete injury to Brehm specifically. Even if Brehm had standing to challenge Marocco's designation, the challenge would still fail because the designation was within

President Trump's authority under Article II.  Moreover, to the extent that Brehm's removal has caused him harm, that harm is not irreparable and thus extraordinary relief is not warranted. Finally, because the relief that Brehm seeks would alter the status quo the balance of equities weighs against entering a temporary restraining order.

In short, Brehm's motion for extraordinary preliminary relief should be denied because the merits and the other temporary restraining order factors all cut against him.

## BACKGROUND

### I.    <u>Legal Background</u>

In 1980, Congress established the United States African Development Foundation ("the Foundation"), 22 U.S.C. § 290h-1(a), to strengthen ties between the United States and African Nations and "enable the people of African countries to develop their potential, fulfill their aspirations, and enjoy better, more productive lives, the purposes."  *Id.* § 290h-2(a).  The Foundation is tasked with making "grants, loans, and loan guarantees to any African private or public group (including public international organizations), association, or other entity engaged in peaceful activities for" carrying out its purposes. *Id*. § 290h-3(a)(1).

Congress also established a Board of Directors tasked with managing the Foundation.  *Id.* § 290h-5(a).  The Board is "composed of seven members appointed by the President, by and with the advice and consent of the Senate," for six-year terms. *Id*. § 290h-5(a)(1).  And the President may select a chairperson and vice chairperson among the board members.  *Id*. § 290h-5(a)(1)-(2). No more than four Board members can be members of the same political party. *Id.* § 290h-5(a)(1). The Board, in turn, is empowered to appoint "a president of the Foundation on such terms as the Board may determine."  *Id*. § 290h-5(d)(1). The statute lacks any statutory removal protections. *See generallu Id.* § 290h-5(a)-(e).

On February 19, 2025, President Trump signed an Executive Order to "commenc[e] a reduction in the elements of the Federal bureaucracy that the President has determined are unnecessary." Exec. Order No. 14,217, 90 Fed. Reg. 10577 (Feb. 25, 2025). The Executive Order directed that "the non-statutory components and functions of" four named governmental entities "shall be eliminated to the maximum extent consistent with applicable law, and such entities shall reduce the performance of their statutory functions and associated personnel to the minimum presence and function required by law." *Id*. The Foundation was among the four entities subject to the order. *Id*. § 2(a)(iii). The Executive Order directed the Foundation to "submit a report to the Director of the Office of Management and Budget confirming compliance with this [Executive O]rder and stating whether the governmental entity, or any components or functions thereof, are statutorily required and to what extent." *Id*. § 2(a)(iii).

## II.    <u>Factual Background.</u>

Plaintiff Ward Brehm was appointed to the Foundation's Board in 2008 by then-President George W. Bush. Brehm Decl. (ECF No. 7-2) ¶ 4. Brehm remained on the Board until February 24, 2025, when President Trump removed him from his position on the Board. *Id.* ¶ 9. Brehm seems to concede that this removal was lawful. TRO Mot. (ECF No. 7) at 1 (arguing there are "still … four properly appointed board members"). That same day, President Trump also removed additional Board members: Carol Moseley Braun, Morgan Davis, and John Leslie. Emails, Exhibits 1 to 4 hereto ("Opp'n. Exs. 1-4"). Two days later, President Trump removed the remaining Board member, John Agwunobi. Email to Agwuobi, Mot. Ex. 5. All of the removals were "effective immediately." Emails, Mot. Exs. 1-5. On February 28, 2025, with the Foundation lacking a Board and a president, President Trump designated Pete Marocco as the acting Chairman of the Board. Compl. (ECF No. 1) ¶ 46.

On March 3, 2025, some unspecified number of removed Board members allegedly convened a meeting where they determined that Marocco's designation was unlawful and adopted a resolution appointing Brehm as President of the Foundation. *Id.* ¶ 47. Marocco was not present at this meeting. *Id.* On March 5, 2025 Marocco arrived at the Foundation's headquarters, but the Foundation's staff refused him entry upon instructions from Brehm. *Id.* ¶ 50. The next day, Brehm filed suit demanding that he be recognized as the lawful president and barring Marocco from being recognized as a member of the Board of the Foundation. *See generally id.* ¶¶ a-e. Brehm simultaneously filed this motion for a temporary restraining order. See ECF No. 7.

## LEGAL STANDARDS

Plaintiff seeks a temporary restraining order—"an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). To obtain such extraordinary relief, a plaintiff "must show (1) 'he is likely to succeed on the merits,' (2) 'he is likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in his favor,' and (4) issuing 'an injunction is in the public interest.'" *Hanson v. District of Columbia*, 120 F.4th 223, 231 (D.C. Cir. 2024) (*quoting Winter*, 555 U.S. at 20); *see also Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 109 (D.D.C. 2022) ("The decision of whether to award a TRO is analyzed using the same factors applicable to preliminary injunctive relief[.]" (cleaned up)). When "the Government is the opposing party," the assessment of "harm to the opposing party" and "the public interest" merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Plaintiff must do more than merely show the possibility of prevailing on the merits, but rather must show "a substantial likelihood of success on the merits." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). Plaintiff also must establish irreparable harm, as failure do so constitutes "grounds for refusing to issue [preliminary relief], even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England,*

454 F.3d 290, 297 (D.C. Cir. 2006); *accord* Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.) (irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction" as "[o]nly when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief")

Mandatory injunctions that "would change the status quo" are disfavored as "an even more extraordinary remedy" than the typical preliminary injunction, "especially when directed at the United States Government." *Kondapally v. U.S. Citizenship & Immgr. Servs.*, Civ. A. No. 20-0920 (BAH), 2020 WL 5061735, at *3 (D.D.C. Aug. 27, 2020) (citations omitted); *see also Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 36 (D.D.C. 2000) ("In this Circuit, 'the power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised.'" (quoting *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969))). "Plaintiffs seeking this type of relief . . . face 'an additional hurdle' when proving their entitlement to relief," and courts "exercise extreme caution in assessing" such motions. *Kondapally*, 2020 WL 5061735, at *3.

## ARGUMENT

Brehm fails to satisfy any of the factors necessary for the extraordinary remedy he seeks—a mandatory temporary restraining order compelling Defendants, including the President, to recognize him as holding a position that he never lawfully held, president of the U.S. African Development Foundation.

## I.    **Brehm Cannot Succeed on the Merits.**

Brehm's claims will not succeed on the merits for three reasons. First, Brehm was not lawfully appointed as president of the Foundation because the members of the board who met and appointed him had been removed by the President. Second, Brehm lacks standing to challenge Marocco's designation because the appointment did not cause Brehm an injury in fact. Third, even

if Brehm had standing to challenge Marocco's designation, the challenge would not succeed because Marocco's designation was lawful.

## A.    Brehm was Never Lawfully Appointed President so He Cannot be Recognized as Such.

Brehm argues that he is entitled to remain and be recognized as president of the Foundation because the Board appointed him to the position and only the Board has authority to remove him. TRO Mot. (ECF No. 7-1) at 18-19. This argument is based on a false premise that Brehm was lawfully selected to be the Foundation's president by former Board members more than a week after they had been removed.

The Constitution vests the entirety of the "executive Power" in the President, who is given the sole responsibility to "take Care that the Laws be faithfully executed." Art. II, § 1, cl. 1; id. § 3; *see also Severino v. Biden*, 71 F.4th 1038, 1043–44 (D.C. Cir. 2023). "[A]s a general matter," the executive power encompasses "the authority to remove those who assist [the President] in carrying out his duties." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513–14 (2010). Without such power, the President would be unable to control those who aid him in executing the laws and "could not be held fully accountable for discharging his own responsibilities." *Id.* at 514.

For nearly a century, the Supreme Court has repeatedly reaffirmed "the President's power to remove—and thus supervise—those who wield executive power on his behalf." *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020) (citing *Myers v. United States*, 272 U.S. 52 (1926)). The Supreme Court has recognized "only two exceptions to the President's unrestricted removal power." *Id.* First, in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Supreme Court held that Congress could impose for-cause removal restrictions on "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial

- 6 -

functions and was said not to exercise any executive power." *Seila Law,* 591 U.S. at 216. Second, in *Morrison v. Olson*, 487 U.S. 64 (1988), and *United States v. Perkins*, 116 U.S. 483 (1886), the Court recognized an exception "for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law*, 591 U.S. at 218. Those exceptions represent the "outermost constitutional limits of permissible restrictions on the President's removal power" under current precedent. *Id.*

Neither exception applies to the Foundation or its Board members. In creating the Foundation, Congress did not include a "for cause" removal restriction like the restriction found in *Humphrey's Executor*. *See* 22 U.S.C. § 290h-1. "That ends this case because the Supreme Court has long held "as a matter of statutory interpretation, that, absent a 'specific provision to the contrary, the power of removal from office is incident to the power of appointment.'" *Carlucci v. Doe*, 488 U.S. 93, 95 (1988) (quoting *Keim v. United States*, 177 U.S. 290, 293-294 (1900)) (collecting cases); *see also Shurtleff v. United States*, 189 U.S. 311, 316 (1903) (explaining the right of removal "does not exist by virtue of the grant, but . . . inheres in the right to appoint, unless limited by constitution or statute"); *Keim*, 177 U.S. at 293-94 (holding that absent a "specific provision to the contrary" the Secretary of the Interior retained the incidental power to remove clerks he previously appointed).

The Supreme Court reaffirmed this longstanding principle recently, explaining that courts "generally presume that the President holds the power to remove at will executive officers and that a statute must contain 'plain language to take [that power] away.'" *Collins v. Yellen*, 594 U.S. 220, 250 (2021) (quoting *Shurtleff*, 189 U.S. at 316). That decision restated the Supreme Court's holding more than a century prior in *Shurtleff* that this "usual rule governing the tenure of office" applies barring "plain and explicit language" from Congress limiting the appointing power's right

to remove.  *Shurtleff,* 189 U.S. at 316.   Here, the enabling statute for the Foundation does not provide for any limits on the President's authority to remove Board members.  *See generally*, 22 U.S.C. § 290h-1.

The President's power to remove officials that he is tasked with appointing, as a matter of statutory construction, "should not be held to be taken away by mere inference or implication." *Shurtleff,* 189 U.S. at 315.   Thus, even if the President's removal powers have ostensibly been "taken away by an act of Congress," "court[s] . . . require explicit language to that effect"— particularly where, as here, Congress granted the President alone the power of appointment.  *Id.; see also Morgan v. Tenn. Valley Auth.*, 115 F.2d 990, 992 (6th Cir. 1940) (explaining in removal context that "curtailment by the Congress of an inherent power of the President, assuming its constitutional validity, is not to be implied without clear indication of the legislative purpose"); *cf. Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991) (explaining the general rule that when "Congress decides purposefully to enact legislation restricting or regulating presidential action, it must make its intent clear").   "Because no statute insulates Board members from removal, the President had the power to remove" the board members who appointed Brehm president of the Foundation.  *Spicer v. Biden*, 575 F. Supp. 3d 93, 98 (D.D.C. 2021).

Additionally, although lack of a for-cause removal provision in the enabling statute, standing alone, is sufficient to find that the removal of the board members is lawful, the President's authority to remove the Board is bolstered by the fact that the Foundation's functions are entirely executive.  The Foundation is tasked with making "grants, loans, and loan guarantees."  22 U.S.C. § 290h-3(a)(1). The Foundation lacks any policymaking or adjudicatory authority and thus performs no legislative or judicial functions. As *Seila Law* made clear, the *Humphrey's Executor*

exception applies only to a multimember body that "was said not to exercise *any* executive power," *Seila Law*, 591 U.S. at 198, which cannot be said of the Foundation.

The removed Board members do not fall into the inferior officer exception either. The removed Board members were principal officers appointed by the President with Senate confirmation, *see* U.S. Const. art. II, § 2, cl. 2; 22 U.S.C. § 290h-5(a)(1), oversee their own department, and are not subservient to any other principal officer, *see generally*, 22 U.S.C. § 290h-5(a). *See also Free Enterprise Fund*, 561 U.S. at 511 (explaining that a department "is a freestanding component of the Executive Branch, not subordinate to or contained within any other such component"). Thus, Brehm could not credibly claim that the Board members are inferior officers insulated from removal at the President's discretion.

Indeed, Brehm does not challenge the President's ability to remove the Foundation's Board members. He admits that he, at least, was removed. *See* Mot. at 1. Instead, Brehm appears to suggest that because the other Board members allegedly did not receive notice of their removal, the removal was not effective. *Id.* But nothing in Article II requires *notice* to effectuate removal of an executive officer. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 159 (1803). And it would be absurd to think that an executive officer could avoid removal simply by being difficult to contact, or refuse to accept the removal notice.

Because President Trump lawfully removed the Board members before they convened to appoint Brehm as president of the Foundation, they lacked any authority whatsoever to appoint Brehm president of the Foundation. Accordingly, Brehm will not succeed in challenging his removal from his position as president of the Foundation.

### B.    Brehm Lacks Standing to Challenge Marocco's Designation.

Moreover, Brehm lacks standing to challenge his removal or Marocco's designation for two independent reasons: (1) Brehm was never lawfully appointed president of the Foundation, so

he cannot complain about his removal, and (2) in any event, his claim is not redressable by the Court.

A federal court's jurisdiction is limited to "Cases" and "Controversies." U.S. Const. art. III, § 2. A case or controversy exists only when a plaintiff can satisfy "the irreducible constitutional minimum of standing," which in turn "contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* (cleaned up). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (cleaned up). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (quotation marks omitted).

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* This means that to establish standing, "a complaint must state a plausible claim that the plaintiff has suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016).

First, Brehm argues that he is entitled to remain as president of the Foundation because the Board appointed him to the position and only the Board has authority to remove him. TRO Mot.

(ECF No. 7-1) at 18-19. But Brehm was not lawfully appointed to be the Foundation's president so he cannot complain that he was removed from an office he never held in the first place.

As explained, President Trump removed all Board members, including Brehm, on February 24 and 26, 2025, "effective immediately." Emails, Opp'n Ex. 1-5. When the removed Board met on March 3, 2025, they were no longer members of the Board. They therefore lacked authority to convene the meeting or conduct business, much less to appoint a president of the Foundation. *Cf. Sino Clean Energy, Inc. v. Seiden*, 901 F.3d 1139, 1140 (9th Cir. 2018) (affirming "individuals attempting to file the petition lacked authority where a receiver appointed by the Nevada state court already had removed them from the corporation's board of directors."); *Jemsek v. Rhyne*, 662 F. App'x. 206, 210 (4th Cir. 2016) (injunctive relief cannot be enforced against former board members because whatever authority the former Board members had at the time . . . they have none now"); *Armstrong v. Adams*, 869 F.2d 410, 414 (8th Cir. 1989) (former election board members lacked standing to challenge a settlement that the subsequent board approved).

Brehm's request to be installed as president of the Foundation likewise fails because his claim is not redressable by the Court. A plaintiff who seeks to establish redressability must demonstrate that a federal court possesses the authority to grant the remedy requested. *See Swan v. Clinton*, 100 F.3d 973, 976 (D.C. Cir. 1996) (stating that the "'redressability' element of standing" asks "whether a federal court has the power to grant [the plaintiff's requested] relief"). Under the Foundation's enabling statute, the Foundation's president is selected by the Board, 22 U.S.C. § 290h-5(d)(1), and as explained, President Trump has the authority to remove Board members without cause. The removed Board members cannot perform their statutory functions, including convening the March 3 meeting that led to appointing Brehm as president of the Foundation. Brehm's requested relief is tantamount to asking the Court to appoint him to the

president position, a power that the Court lacks. *Claybrook v. Slater*, 111 F.3d 904, 907 (D.C. Cir. 1997) ("if the plaintiff's claim has no foundation in law, he has no legally protected interest and thus no standing to sue."). To provide the redress sought by Brehm, the Court would have to find President Trump lacked the authority to remove the Board members and thus they were still affiliated with the Foundation as Board members when they met to appoint Brehm as president. There is no factual or statutory basis for the Court to do so.

Brehm likewise lacks standing to challenge Marocco's designation an Acting Chairman of the Board because Marocco's designation did not cause an injury to Brehm's "legally protected interests." *Lujan*, 504 U.S. 560. President Trump removed Brehm from the Board, Brehm Decl. ¶ 4 (ECF No. 7-2), and after his removal, Brehm ceased to have any fiduciary or business relationship with the Foundation. Specifically, the removed Board Members lacked authority to appoint Brehm as President. *See* 22 U.S.C. 290h(5)(d)(1). Thus, Brehm lacks a factual and legal basis demonstrating he is still suffering from an actual "ongoing injury." *Nat'l Ass'n of Broadcasters v. FCC*, 789 F.3d 165, 181 (D.C. Cir. 2015).

Marocco's designation did not and could not cause any harm to Brehm's legally protected interests, or otherwise, because Brehm ceased to have any business affiliation with the Foundation when Marocco was designated. For an injury to be concrete and particularized, the injury must the injury must affect a plaintiff "in a personal and individual way." *Spokeo Inc. v. Robbins*, 578 U.S. 330, 339 (2016). Marocco's designation as Acting Chairman of the Board, after Brehm's removal did not affect Brehm personally, and thus, the appointment did not cause Brehm "concrete and particularized" injury that Brehm can challenge in Court. *Abulhawa v. Dep't of the Treasury*, No. 17-5158, 2018 U.S. App. LEXIS 16945, *8 (D.C. Cir. Jun. 19, 2018) (no concrete injury based on "policy concerns and heartfelt desire to defend the rights of other unrelated persons are not

legally cognizable injuries."). To conclude otherwise would give any citizen standing to challenge a Presidential personnel decision.

Accordingly, because Brehm's removal is not redressable and Marocco's designationdid not cause Brehm an injury in fact, Brehm's claims cannot succeed on the merits.

### C.    Marocco's Designation was Lawful.

Because Brehm lacks standing to challenge Marocco's designation, the Court need not address the issue of whether the appointment was lawful. But even if the Court finds that Brehm has standing, Brehm's claim would not succeed because President Trump lawfully designated Marocco to serve as an acting Chairman of the Board under Article II. As Brehm admits, the Federal Vacancies Reform Act ("Vacancies Act") excludes the Foundation because its members are confirmed by the Senate and sit on a board "composed of multiple members" which controls a "Government corporation." 5 U.S.C. § 3349c(1). This exclusion applies to the entire Vacancies Act, including the provision which states that it be the "exclusive means for temporarily authorizing an acting official." *Id.* §§ 3347(a), 3349c. Therefore, the President's authority to appoint an acting Board member for the Foundation comes down to his Article II authority where Congress has not spoken.

The President must be able to designate acting officials to fulfill his duty to enforce the laws. *See* Art. II, § 1, cl. 1; id. § 3. Thus, the Office of Legal Counsel has long position that statutes like the Vacancies Act are a limitation on the President's power, not the source of his authority. *See, e.g., Power of the President to Designate Acting Member of the Federal Home Loan Bank Board*, 1 Op. O.L.C. 150 (1977) ("Whatever the term 'independent' may mean …, the continued functioning of the Board is plainly included in the constitutional responsibility of the President as the head of the executive branch to take care that the laws be faithfully executed."); *Authority of the President to Remove the Staff Director of the Civil Rights Commission and Appoint*

*an Acting Staff Director*, 25 Op. O.L.C. 103 (2001) (similar).  This case is a perfect example for why this authority is sometimes necessary.  The Foundation's former Board, as outlined in the complaint, have done everything possible to avoid complying with the President's clear directives—including by holding an *ultra vires* board meeting to appoint a president that had just been removed from the board of directors.  And thus, President Trump exercised his authority to designate a new Board Chairman.

Because Brehm was never the president of the Foundation, because Marocco's designation did not cause Brehm an injury in fact, and because, regardless, Marocco was lawfully designated, Brehm's claims will not succeed on the merits.

## II.    Brehm Has Failed to Demonstrate Irreparable Harm.

The "high standard for irreparable injury"—even higher here insofar as Brehm requests a mandatory injunction that would alter the status quo, *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997)—requires a two-fold showing: First, because an irreparable injury "must be both certain and great," Brehm "must show 'the injury complained of is of such imminence that there is a "clear and present" need for equitable relief to prevent irreparable harm.'" *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (quoting *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  Second, "the injury must be beyond remediation." *Id.*

Brehm argues he has suffered irreparable harm because Defendants denied him the "statutory right to function" in the role to which he has been appointed.  Mot. TRO (ECF No. 7-1) at 26-27.  But Brehm cites no injury of a kind that the Supreme Court has recognized as irreparable in this context.  *See Sampson v. Murray*, 415 U.S. 61, 92 & n.68 (1974) (holding loss of income, face, and reputation do not amount to irreparable harm).  Moreover, Brehm's argument presupposes he was lawfully appointed in the first place.  As explained above, as a removed Board member he cannot credibly claim that he has a "statutory right to function" as president of the

Foundation.  And even if Brehm did have such a right, his attempt to show irreparable harm would still fail because settled law dictates that loss of employment does not constitute irreparable harm. *Raines v. Byrd*, 521 U.S. 811, 820 (1997) (noting although a public official's "loss of salary" amounts to a judicially cognizable harm, his "loss of political power" does not); *Dellenger v. Bessent,* No. 25-5052 (D.C. Cir. March 5, 2025) (Order) (denying a stay pending appeal, giving "effect to the removal of appellee from his position as Special Counsel for the U.S. Office of Special Counsel.")*; See also Hetreed v. Allstate Ins. Co.,* 135 F.3d 1155, 1158 (7th Cir. 1998); *Davis v. Billington*, 76 F. Supp. 3d 59, 65–66 (D.D.C. 2014) (collecting cases); *Farris v. Rice*, 453 F. Supp. 2d 76, 79–80 (D.D.C. 2006) ("cases are legion holding that loss of employment does not constitute irreparable injury").

Courts have also repeatedly rejected the notion that the deprivation of a unique, singular, or high-level position is any more of an irreparable injury.  *See Hetreed*, 135 F.3d at 1158 (loss of position as senior manager leading audit department not irreparable injury); *Marxe v. Jackson*, 833 F.2d 1121, 1122 (3d Cir. 1987) (division manager); *Rubino v. City of Mount Vernon*, 707 F.2d 53 (2d Cir. 1983) (mayoral-appointed City Assessor); *Franks v. Nimmo*, 683 F.2d 1290, 1291 (10th Cir. 1982) (Associate Chief of Staff for Research and Development position at Department of Veterans Affairs Medical Center); *EEOC v. City of Janesville*, 630 F.2d 1254, 1256 (7th Cir. 1980) (Chief of Police); *Levesque v. Maine*, 587 F.2d 78, 79 (1st Cir. 1978) (Maine Commissioner of Manpower); *Nichols v. Agency for Int'l Dev*., 18 F. Supp. 2d 1, 2, 4 (D.D.C. 1998) (Chief of Information Management Systems, Office of Inspector General); *Burns v. GAO Emps. Fed. Credit Union*, Civ. A. No. 88-3424, 1988 WL 134925, at *1–2 (D.D.C. Dec. 2, 1988) (President of Credit Union Board of Directors).  If the Court determines, at the conclusion of this case that Brehm was somehow legally appointed as the Foundation's president and his removal was unlawful, Brehm

can obtain monetary relief in the form of back pay. In other words, to the extent that Brehm's removal caused an injury to his legally protected interests, that injury can be remedied and thus any harm that Brehm experiences is not irreparable in the interim. *English v. Trump*, 279 F. Supp. 3d 307, 335 (D.D.C. 2018) (any harm that an agency director suffered from removal "can be remediated in the ordinary course of this case."); *Davis v. Billington*, 76 F. Supp. 3d 59, 65 (D.D.C. 2014) ("The plaintiff fails to meet this high standard as he has no concrete proof that the vacancy . . . will not be available when this matter is ultimately resolved.").

Brehm next argues that he has established irreparable harm because if he is not able to retain the position then the Foundation will be "effectively" shuttered. Mot. TRO Br. (ECF No. 7-1) at 27. As a threshold matter, this argument conflates Brehm's fortunes with those of the Foundation. But Brehm can hardly establish irreparable harm to himself by pointing to alleged harm to a government entity. In any event, Brehm's assertion of irreparable harm is unfounded. The Executive Order that caused Brehm's removal only eliminates the Foundation's "non-statutory components and functions." Exec. Order No. 14,217. In creating the Foundation, Congress mandated the Foundation "establish a principal office in the United States," but gave the Foundation discretion to "establish such branch offices in Africa as may be necessary to carry out its functions." 22 U.S.C. § 290h-1(b). Congress also specified the Foundation's functions. *Id.* § 290h-3 ("Functions of the Foundation"). In accordance with the Executive Order, the Foundation will continue to operate at its principal office and carry out the statutory functions that Congress directed it to perform. Indeed, as Brehm acknowledges, even with the plan to cease certain Foundation operations, the Foundation will still manage a small number of "contracts and grants." Mot. TRO Br. (ECF No. 7-1) at 25. Brehm's claim the President intends to "effectively" shutter the Foundation is not justified by the text of the Executive Order. It is instead based on speculation.

But speculation cannot establish irreparable harm. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (holding that a movant cannot show "certain[] impending" injury when the asserted injury is based on a "speculative chain of possibilities").

Moreover, to demonstrate irreparable harm, Brehm must explain how removing him as president of the Foundation and designating Marocco as Acting Chairman of the Board will cause irreparable harm not to the Foundation, but to Brehm. Yet Brehm's speculative assertions about possible changes to the Foundation would only affect the Foundation, not Brehm personally. *English,* 279 F. Supp. 3d at 335 (finding that terminated agency director failed to establish irreparable harm even if "there could be harm suffered by the [Agency] or by other parties if it is later determined that [plaintiff's replacement] has not been lawfully the acting Director[.]"). Under the law, Brehm must demonstrate the likelihood of irreparable harm to himself—not just to the Foundation—if an injunction does not issue. *Id.* Because he has not done so, Brehm is not entitled to a temporary restraining order.

## III.    <u>The Balance of Equities and Public Interest Favor Defendants.</u>

The final two factors required for preliminary injunctive relief—a balancing of the harm to the opposing party, and the public interest—merge when the Government is the opposing party. *See, e.g., Nken v. Holder*, 556 U.S. 418, 435 (2009); *Colo. Wild Horse v. Jewell*, 130 F. Supp. 3d 205, 220-21 (D.D.C. 2015). Courts must "[give] particular regard [to] the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982).

In this case, the balance of equities and the public interest tip strongly in favor of the Government, for "the public interest favors applying federal law correctly." *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011). As discussed above, Brehm was never lawfully appointed president of the Foundation by removed Board members. Granting the extraordinary

relief requested would be an intrusion into the President's authority to exercise "all of" the "executive Power" of the United States. *Seila Law*, 590 U.S. at 203. Moreover, the public interest is served if the President has a Foundation Board who holds the President's confidence and, accordingly, will more effectively serve him in executing his duties as Chief Executive. "[T]he Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Sampson*, 415 U.S. at 83 (quoting *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 896 (1961)).

The public also has an interest in "reducing the size of the Federal Government," to minimize Government waste and abuse, reduce inflation, and promote American freedom and innovation." Exec. Order No. 14,217. President Trump has determined that "reducing the performance of [the Foundation's] statutory functions and associated personnel to the minimum presence and function required by law" is necessary to achieve this goal. *Id*. If Brehm is reinstated, then Brehm could issue irrevocable grants or take other actions that undermine these goals. Preliminary injunctive relief would displace and frustrate the President's decision and process about how to best address relations with African Nations, and the Court must give deference to the Executive Branch's "evaluation of the facts" and the "sensitive and weighty interests of national security and foreign affairs," *Holder v. Humanitarian L. Project*, 561 U.S. 1, 33–34 (2010), including "the timing of those . . . decisions." *Holy Land Found. for Relief & Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 74 n.28 (D.D.C. 2002), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003).

Additionally, in seeking an order that would require the President to recognize Brehm's appointment as president of the Foundation, Brehm seeks a change in the status quo. Injunctions that "'would change the status quo' are disfavored as 'an even more extraordinary remedy' than the typical preliminary injunction, 'especially when directed at the United States Government.'"

*Strait Shipbrokers Pte. Ltd. v. Blinken*, 560 F. Supp. 3d 81, 93 (D.D.C. 2021) (quoting *Abdullah v. Bush*, 945 F. Supp. 2d 64, 67 (D.D.C. 2013), and *Sierra Club v. Johnson*, 374 F. Supp. 2d 30, 33 (D.D.C. 2005)).  Injunctions that alter the status quo, on balance, favor the non-movant. *See, e.g., Davis v. Billington*, 76 F. Supp. 3d 59, 68 (D.D.C. 2014); *Elite Entm't, Inc. v. Reshammiya*, Civ. A. No. 08-0641, 2008 WL 9356287, at *4 (D.D.C. Apr. 18, 2008).  Because the temporary restraining order that Brehm seeks will alter the status quo, the third and fourth factors weigh against granting the preliminary injunction.

## CONCLUSION

For these reasons, Plaintiff's motion for a temporary restraining order should be denied.

Dated: March 10, 2025                     Respectfully submitted,

                                                          EDWARD R. MARTIN, JR., D.C. Bar #481866
                                                          United States Attorney

                                                          BRIAN P. HUDAK
                                                          Chief, Civil Division

                                             By:  _____/s/ John J. Bardo_____
                                                      JOHN J. BARDO, D.C. Bar #1655534
                                                       Assistant United States Attorney
                                                       601 D Street, NW
                                                       Washington, DC 20530
                                                       (202) 870-6770

                                                       *Attorneys for the United States of America*