IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Ward Brehm**, <br><br> Plaintiff, <br><br> v. <br><br> **Pete Marocco,** *et al.*, <br><br> Defendants. | **Civil Case No. 25-cv-660** |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

Introduction ............................................................................................................... 1

Argument .................................................................................................................. 3

    **I.**   Brehm is likely to succeed on the merits. ......................................................... 3

        A.   The USADF board members were not terminated. ...................................... 3

        B.   Defendants lack any authority to appoint Marocco as an acting member of the Board. ................................................................................................. 6

        C.   Brehm has standing. ................................................................................... 8

    **II.**  Preventing Brehm from carrying out USADF's mission would be an irreparable harm. ........................................................................................... 10

    **III.** The public interest weighs in favor of enjoining unlawful government action. .......................................................................................... 12

Conclusion ............................................................................................................. 15

**INTRODUCTION**

Defendants' attempts to gut a 44-year-old agency in the span of two weeks reflect the tech-startup motto to "move fast and break things." Whatever the wisdom of that approach in the private sector, it has no place in government. This case shows why.

As explained in Brehm's opening brief, Congress created USADF and explicitly outlined how the agency operates. USADF's bipartisan Board is appointed with advice and consent of the Senate. The Board selects and oversees the President and CEO. The President and CEO carries out the statutorily required functions of the agency. And every year, Congress (which has exclusive authority to close the agency) decides how much funding to appropriate to USADF to carry out that mission.

Defendants treat those statutory requirements as mere suggestions to be ignored. After gaining access to USADF under false pretenses, DOGE admitted that their goal was to cancel all but one or two of USADF's grants—ignoring that Congress has appropriated $45 million dollars to USADF with instructions to use those funds to provide grants to support entrepreneurship in Africa. Seeking to immediately lay off all employees other than the President and CEO, DOGE made threats and demanded that they be allowed to bypass the background checks and training required to access such sensitive information. When that didn't work, Defendants purported to appoint Pete Marocco as the sole Board member—despite having failed to remove the four active Board members. Marocco then purported to appoint himself the acting President and CEO—despite Plaintiff Brehm being in that position. And then

1

Defendants physically forced their way into the agency, rooting through offices and demanding access to sensitive financial and human-resources files.

Defendants skip over most of those facts. Instead, they argue that they are free to ignore Congress's direction for USADF (and the funds appropriated to carry out that mission) because it is the President's prerogative to fire the USADF Board and to ignore the statutorily required process for appointing a new Board. But Defendants never fired the existing Board. Defendants were too impatient to find the actual contact information for the Board members. Instead, it appears that they took their best guess as to email addresses, hoping it would be sufficient to send termination notices to email addresses that were close enough. It wasn't. So the properly constituted Board remained and selected Brehm as the President and CEO. *See Resolution of the Board of Directors: Appointment of USADF President*, 90 Fed. Reg. 11596 (Mar. 3, 2025). And even if the President could fire the Board at will, he could not bypass Senate advice and consent to appoint someone as the sole Board member.

If Defendants want to convince Congress to shutter USADF, that is their prerogative. But it is not in their power to simply run roughshod over the law that created USADF forty-four years ago and the law that funded it just last year. Absent preliminary relief, Defendants will do irreparable damage to USADF. So even if Brehm wins at the end of the day, there will be little for him to do in his position as President of USADF other than to preside over the tatters of the agency. This Court should grant a TRO to protect the status quo until it has further considered the merits.

## ARGUMENT

### I. Brehm is likely to succeed on the merits.

The lynchpin of Defendants' entire argument is that the USADF Board was fired. From that premise, Defendants argue that Brehm was never appointed President and CEO and, therefore, he has no standing to challenge the lawful appointment of Marocco to the board. But the Board was never fired. So there was no vacancy to fill—especially not through an unlawful process—and Brehm has standing to object to Defendants' actions.

#### A. The USADF board members were not terminated.

Brehm's TRO motion explained (at 9) that he was appointed President and CEO by a duly appointed, bipartisan Board. *See also* Ex. I, Memorandum of USADF Board to Congress. In response, Defendants offer emails purporting to deliver termination notices to each Board member. *See* Defs.' Exs. 1-5. Defendants then argue in a passing paragraph that they were not required to notify the Board of their supposed termination. Defendants are wrong on the facts and the law.

**1.** Defendants' exhibits are not what they appear to be. And Defendants have knowledge, or at least should have knowledge, that the Board never received their purported terminations.

Of the five exhibit emails, four were never delivered. For good reason: they were sent to wrong or nonexistent email addresses. The email to Chair Carol Moseley Braun (Defs.' Ex. 2) was sent to a Gmail address, but she does not have a Gmail address. Ex. H, Supp. Feleke Decl., ¶ 12. The email to Morgan Davis (Defs.' Ex. 1)

3

was sent to two email addresses that do not exist—one at a USADF address and another at a company for which he once was, but no longer is, a board member. Ex. H, Supp. Feleke Decl., ¶ 11. The email to Jack Leslie (Defs.' Ex. 3) was likewise sent to an inactive USADF address. Ex. H, Supp. Feleke Decl., ¶ 13. And worst of all, John Agwunobi's termination (Defs.' Ex. 5) was sent to an email that both misspelled his name and used usadf.org instead of the proper usadf.gov domain. Ex. H, Supp. Feleke Decl., ¶ 14.[1]

Perhaps the incorrect email addresses were shots in the dark. Perhaps they were attempts to deduce naming conventions from other email addresses at the agency or at a business. Perhaps it was assumed that someone with a distinctive name, like Carol Moseley Braun, would have that full name at Gmail. And perhaps a misspelled name and incorrect domain were simply the result of moving fast.

Whatever the explanation, the email termination notices were not delivered. But they could have been. When DOGE employees first demanded the contact information for the Board, a USADF staff member informed the DOGE employees that the information was personal (presumably not a .gov address) and that she would check if she could share it. Ex. H, Supp. Feleke Decl., ¶¶ 5, 6. But the DOGE employees were too impatient and instead tried to find information about the Board members online. *Id.* ¶ 6. They never followed up to ask the employee if she had been given permission to share the information (which she had). *Id.* ¶ 8. Nor have Defendants

---

[1] One email was received by a Board member—Ward Brehm. Defs.' Ex. 4. Although Brehm does not concede that he was lawfully fired from the Board, he recognizes receipt of the termination notice and did not challenge it.

4

shown any attempt to otherwise seek the contact information from USADF staff or management.

**2.** Because Defendants did not notify—or even make any meaningful attempt to notify—the members of the Board of a purported removal from their positions, they retained their seats on the Board.

A person may not be removed from a federal office in secret; instead, removal must actually be communicated to the officer. "[R]emoval may be made either by express notification, or simply by appointing another person to the same office." *In re Hennen*, 38 U.S. 230, 247 (1839) (citing *Bowerbank v. Morris*, 3 F. Cas. 1062, 1064 (C.C.D. Pa. 1801)). Both *Bowerbank* opinions endorsed the common-sense rule that notice is required to effect removal. Chief Judge Tilghman reasoned that "[a] removal from office may be either express, that is, by a notification by order of the president of the United States that an officer is removed; or implied, by the appointment of another person to the same office. But in either case, the removal is not completely effected till notice actually [is] received by the person removed." 3 F. Cas. at 1064 (opinion of Tilghman, C.J.). Judge Griffiths concurred, reasoning that "[t]here can be no question, I apprehend, but that the president may, by a proper act of office, remove a marshal, without a new appointment. But this would not supersede him until he had notice of such declaration of the president's pleasure, and only from the time of notice; the office then would be vacant." *Id*. at 1065 (opinion of Griffiths, J.); *see also Creation of the Federal Judiciary: A Review of the Debates in the Federal and States Constitutional Conventions; and Other Papers*, S. Doc. No. 75-91, at 141 n.38 (1937)

("A marshal is not removed by the appointment of a new one, until he receives notice of such appointment.").

Defendants address notice in only one passing paragraph, citing *Marbury v. Madison*, 5 U.S. 137, 159 (1803), to contend that an executive officer may be removed from his position without ever being informed of that fact. Defs.' Mem. at 9. But *Marbury* was not about removal of an executive officer at all. It was about appointment. Nothing in *Marbury* contradicts the rule discussed in *In re Hennen* and *Bowerbank* that a removal from office must actually be communicated to the officer.

With nothing else supporting their position that officers can be removed in secret, Defendants devote the lion's share of their argument to the proposition that the USADF Board members are removable at will. Defs.' Mem. at 5-9. There is no reason to dispute that proposition here; the power of removal has not been exercised.

### B. Defendants lack any authority to appoint Marocco as an acting member of the Board.

Compounding their errors, Defendants argue that Pete Marocco is the sole Board member (and, according to statements by Defendants, the President and CEO too). But even if the Board had been terminated, Marocco could not act as a Board member.

The Federal Vacancies Reform Act (FVRA) provides the "exclusive means" for appointment of an acting official, unless another "statutory provision expressly" authorizes such an appointment or the President validly makes a recess appointment. 5 U.S.C. § 3347(a). The FVRA specifies in no uncertain terms that, "[u]nless an officer or employee is performing the functions and duties in accordance with sections 3345, 3346, and 3347,"—that is, unless an official was appointed under the terms of the

6

FVRA or under another explicit statutory provision—any vacancy in an office requiring Senate confirmation "shall remain vacant." 5 U.S.C. § 3348(b).

The FVRA does not allow acting appointments to USADF's multi-member Board. *See* 5 U.S.C. § 3349c(1). Nor does any provision of USADF's governing statute authorize the appointment of acting members to USADF's Board. *See* 22 U.S.C. § 290h *et seq*. Instead, the sole means of appointment to the Board is through nomination by the President and confirmation by the Senate. 22 U.S.C. § 290h-5(a)(1). Congress addressed the possibility that seats on the USADF Board would become vacant, not by authorizing the appointment of acting Board members, but instead by permitting Senate-confirmed Board members to remain in their positions until a successor is nominated and confirmed. *Id*. So under the FVRA, any USADF Board seat that is purported to be filled by an acting member must instead remain "vacant," 5 U.S.C. § 3348(b), and any action taken by such a purported official "shall have no force and effect," 5 U.S.C. § 3348(d)(1).

Defendants resist this conclusion through a tortured reading of the FVRA. They acknowledge that the FVRA provides the exclusive means to appoint an acting official and that the FVRA excludes the appointment of a member of a multi-member board (like USADF) on an acting basis. Defs.' Mem. at 13. From there, they contend that because the FVRA excludes boards like USADF's, *see* 5 U.S.C. § 3349c, it excludes those boards from the entirety of the law—including the statute's plain statement that it is the "exclusive means" of appointment of acting officials. Defs.' Mem. at 13.

7

Therefore, according to Defendants, because the FVRA does not apply, the President holds implicit Article II authority to appoint acting members to the Board. *Id.*

But in the FVRA's plain language, Congress contemplated and rejected Defendants' argument—the statute specifies that "an action taken by any person who is not acting . . . in the performance of any function or duty of a vacant office to which this section *and sections . . . 3349c apply* shall have no force or effect," and "may not be ratified." 5 U.S.C. § 3348(d)(1), (2) (emphasis added). Put another way, under Section 3348, when Section 3349c excludes multi-member boards from appointments of acting officers, the rest of the FVRA still applies.

Defendants may not disregard the strictures of the FVRA simply because "Congress has chosen not to provide for acting [Board] members." *Noel Canning v. NLRB*, 705 F.3d 490, 511 (D.C. Cir. 2013), *aff'd*, 573 U.S. 513 (2014). If Defendants want a new Board at USADF, they must follow the process defined in Article II of the Constitution for the appointment of principal officers and USADF's statute—Presidential nomination and Senate confirmation. Defendants have not attempted to nominate or confirm new members of the USADF Board. They cannot now rely on their own failure as justification for an acting appointment plainly prohibited by law. *See id.* ("We cannot accept an interpretation of the Constitution completely divorced from its original meaning in order to resolve exigencies created by—and equally remediable by—the executive and legislative branches.").

### C. Brehm has standing.

Defendants contend that Brehm lacks standing, either because he was never lawfully appointed President of USADF, or because this Court lacks the authority to

8

order him to be reinstated to that position. Defs.' Mem. at 9-13. Neither argument carries any weight.

First, for the reasons stated above, Brehm was appointed to be the President of USADF by the lawfully constituted USADF Board. And for the purposes of assessing Brehm's standing, this Court must assume that he will prevail on the merits of his claims. *See LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011).

Second, this Court plainly has the authority to award the relief that Brehm seeks. Brehm does not "ask[] the Court to appoint him to the president position." Defs.' Mem. at 11-12. Instead, he seeks an order confirming that neither Marocco nor the other Defendants have validly removed him from his position as the President of USADF, and that Marocco would not have the authority to do so (or to exercise any other power on behalf of the agency). *See Harris v. Bessent*, No. CV 25-412 (RC), 2025 WL 679303, at *11 n.13 (D.D.C. Mar. 4, 2025) (citing *Kalbfus v. Siddons*, 42 App. D.C. 310, 319-21 (D.C. Cir. 1914)); *see also Kalbfus*, 42 App. D.C. at 321 ("In the present case the removal of the relator having been illegal and void, the office never became vacant, and the attempted appointment of his successor was a mere nullity."). Accordingly, the D.C. Circuit has repeatedly affirmed that the courts may redress claims by public officers who challenge the validity of attempts to remove them from their positions. *See Severino v. Biden*, 71 F.4th 1038, 1042-43 (D.C. Cir. 2023); *Swan v. Clinton*, 100 F.3d 973, 980 (D.C. Cir. 1996).

9

## II. Preventing Brehm from carrying out USADF's mission would be an irreparable harm.

Brehm has "a statutory mission" and "statutory right to function" as the President of USADF, and the "loss of the ability to do what Congress specifically directed him to do cannot be remediated with anything other than equitable relief." *Harris*, 2025 WL 521027, at *8 (internal quotation omitted). Brehm was duly appointed by the USADF Board to carry out the agency's statutory mission and follow statutory requirements—including consulting with Congress before repurposing appropriated funds. Brehm faces irreparable injury from Defendants' attempts to interfere with his ability to perform the duty he was appointed to carry out. The frustration of that duty qualifies as irreparable harm and could not be remedied by a later award of backpay. *See Berry v. Reagan*, Civil Action No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983) (finding "deprivation of [plaintiffs'] statutory right to function as Commissioners" and "their unlawful removal from office by the President" to constitute irreparable injury); *Wilcox v. Trump*, No. cv 25-334 (BAH), 2025 WL 720914, at *15 (D.D.C. Mar. 6, 2025) (same); *Harris*, 2025 WL 521027, at *9 (same).

Defendants insist that any harm Brehm suffers from his unlawful removal at the hands of Marocco "can be remediated in the ordinary course of the case." Defs.' Mem. at 16 (citing *English v. Trump*, 279 F. Supp. 3d 307, 335 (D.D.C. 2018)). Not so. In *English v. Trump*, this Court held there was no irreparable injury because the plaintiff could later be reinstated. *English*, 279 F. Supp. 3d at 335. *English* distinguished *Berry v. Reagan*, where plaintiffs would forever lose out on their ability to fulfill their statutory duty because the commission to which they were appointed

10

would be "shut down." *Id.* In *Berry*, "any harm suffered by the commissioners was plainly irreparable because the commission would have expired and they could not have been reinstated to it." *Id.*

If Defendants have their way, the same will happen here. Defendants have made clear that their mission is to unravel USADF and reduce it to a single D.C.-based office, a skeleton staff, and perhaps one or two grants. Defendants' actions at USADF's sister agency, the Inter-American Foundation (IAF), foretell USADF's fate in the absence of injunctive relief: when Marocco gained access at IAF, he cancelled "all contracts and grants," "placed all IAF staff on administrative leave with the intention of implementing a reduction in force within 30 days," and informed grantees in poor communities across Latin America that they would be required to return unused funds. Pls.' Ex. B ¶ 18. Worse yet, it appears that Defendants also deleted entire IAF databases, meaning that even if rebuilding were legally required, it would be nearly impossible to restore grants. *See* Ex. H, Supp. Feleke Decl., ¶ 24.

If Defendants could accomplish the same result with USADF, they would undermine the purpose of the agency to foster partnerships and "strengthen the bonds of friendship and understanding between the people of Africa and the United States." 22 U.S.C. § 290h-2. The idea that Brehm could simply return to USADF later "fails to recognize that any later reinstatement of [Brehm] would not restore the state of affairs that existed prior to [his] purported termination, given that [he] would no longer serve as a member" of an agency dedicated to fulfilling its statutory mission. *Harris*, 2025 WL 521027, at *8. Without immediate injunctive relief, any prospect

11

that Brehm might later be reinstated is vitiated by the fact that USADF would be effectively shuttered in the meantime with the most critical data likely erased. Brehm would return to an agency in ashes.

Defendants further complain that Brehm "conflates [his] fortunes with those of the Foundation." Defs.' Mem. at 16. In the first place, Defendants ignore that Brehm's "inability to fulfill his 'statutory mission'" is a harm to him, not the agency. *Harris*, 2025 WL 521027, at *8 (D.D.C. Feb. 18, 2025). But second, it is in fact appropriate for Brehm to vindicate injuries to the agency and its mission, particularly where the agency would be "shut down [] without it having fulfilled its mandate." *English*, 279 F. Supp. at 335. "By vindicating his right to occupy that office, [Brehm] acts as much in his own interests as those of his agency's . . . . Striking at the independence of these officials accrues harm to their offices, as well." *Wilcox*, 2025 WL 720914, at *15 (citing *Harris* 2025 WL 521027, at *7) (cleaned up).

### III. The public interest weighs in favor of enjoining unlawful government action.

**A.** As Brehm explained in his opening brief, "there is a substantial public interest in having governmental agencies abide by the federal laws . . . that govern their existence and operations." *Open Cmty. All. v. Carson*, 286 F. Supp. 3d 148, 179 (D.D.C. 2017) (internal quotation marks and citations omitted). That substantial public interest is particularly acute here, in a case that involves Defendants' attempts to flout the process mandated by the Constitution and by statute for the Senate's participation in the selection of USADF's leadership.

Even if Defendants had acted properly to remove all USADF Board members, President Trump did not seek the advice and consent of the Senate required by law to appoint new members. 22 U.S.C. § 290h-5(a)(1). As explained above (at 6-8), the President has no authority under USADF's organic statute or the FVRA to appoint acting Board members. And any purported appointment of Marocco as President and CEO violates Article II because Congress vested the authority to appoint inferior officers in the USADF Board. U.S. Const. art. II, § 2; 22 U.S.C. § 290h-5(d). So whatever the validity of any interest the public may have in "reducing the size of the Federal Government," Defs.' Mem. at 18, Defendants may not pursue it by unlawful and unconstitutional means.

What's more, Defendants seek to circumvent these legal procedures in an effort to reduce USADF to a skeleton staff administering a grant or two, in complete disregard of the mission that Congress assigned to the agency to "make grants, loans, and loan guarantees to any African private or public group . . . engaged in peaceful activities," for the purpose of "the fostering of local development institutions." 22 U.S.C. § 290h-3(a)(1); *see* Ex. I, Memorandum of USADF Board to Congress.

Defendants argue that the new Administration has different goals in mind for USADF and that Brehm's leadership would frustrate those goals. That argument ignores the role of Congress: Congress enacted the statute that instructs USADF to perform its mission, Congress has continued to appropriate the funds that USADF is instructed to disburse, and the Constitution requires that the Senate participate in

13

the selection of USADF's leadership. The public interest weighs strongly in favor of respecting Congress's role in the creation, structure, and funding of USADF.

**B.** Defendants also object that Brehm seeks a mandatory injunction that would "alter the status quo," Defs.' Mem. at 19, but this misdescribes the current state of affairs. Brehm is not seeking to alter the status quo. Instead, he asks this Court to confirm that at all relevant times he has been the lawfully appointed President of USADF, and that at no relevant time has Marocco lawfully been able to exercise authority on behalf of USADF. *See Harris*, 2025 WL 679303, at *11 n.13.

Defendants' argument rests entirely on the assumption that USADF was "board-less," Pls.' Ex. B ¶ 14, and thus that President Trump could appoint Defendant Marocco Chair of the Board so that Marocco could appoint himself President, *see* Defs.' Mem. at 3. But as explained above (at 3-6), both Defendants' premise and conclusion are false. USADF has a Board; Defendants never removed the incumbent members of the Board from their seats. And even if USADF were "board-less," that could not justify Defendants' disregard for the confirmation process required by the Appointments Clause. *See Noel Canning*, 705 F.3d at 511. USADF's actual Board appointed Ward Brehm to be the President of the agency. Brehm simply seeks recognition of the fact of that appointment. It is Defendants, not Brehm, who seek to alter the status quo, and to do so quickly and recklessly—in other words, to move fast and break things. This Court should not bless that effort.

**C.** Finally, to vindicate the public interest, this Court should enter the revised proposed order granting a TRO. As outlined in the Second Declaration of Elizabeth

14

Feleke, submitted with this brief, on Thursday, March 6, representatives of Defendants spent several unsupervised hours in the offices of USADF. Ex. H, Supp. Feleke Decl., ¶¶ 15-22. Staff of USADF are continuing their efforts to determine whether the agency's computer systems have been compromised. After this Court entered its administrative stay in this matter, counsel for Plaintiff asked counsel for Defendants to confirm that Defendants, or any person acting in concert with Defendants, could not exercise access or control over USADF's computer systems. *See* Ex. K. Counsel for Defendants did not provide that assurance. *Id.* In our view, this Court's administrative stay contemplates that Defendants would have no such access or control. But since Defendants resist this conclusion, Plaintiff seeks to remove any doubt and accordingly request that the Court enter the attached revised proposed temporary restraining order.

## CONCLUSION

For these reasons, the Court should grant the motion and enter a TRO pending further consideration of the merits.

March 11, 2025                                    Respectfully submitted,

                                                */s/Bradley Girard*
                                           Bradley Girard (DC Bar No. 1033743)
                                           Joel McElvain (DC Bar No. 448431)
                                           Orlando Economos*
                                           Robin F. Thurston (DC Bar No. 1531399)
                                           Skye Perryman (DC Bar No. 984573)
                                           Democracy Forward Foundation
                                           P.O. Box 34553
                                           Washington, DC 20043
                                           (202) 448-9090
                                           bgirard@democracyforward.org

jmcelvain@democracyforward.org
oeconomos@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

*motion to appear *pro hac vice* forthcoming

*Counsel for Plaintiff*