IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Ward Brehm,

    *Plaintiff*,

v.

Pete Marocco, *et al.*,

    *Defendants*.

Civil Action No. 1:25-cv-660-RJL

**MEMORANDUM ORDER**

(March 11, 2025) [Dkt. #7]

Before the Court is plaintiff Ward Brehm's motion for a temporary restraining order ("TRO"). Pl.'s Mot. for TRO ("Mot.") [Dkt. #7]. Brehm seeks to enjoin defendants Pete Marocco, the U.S. Department of Government Efficiency Service ("DOGE"), Sergio Gor, Amy Gleason, Stephen Ehikian, and President Donald Trump (collectively, "defendants") from: (i) removing Brehm from his position as President of the United States African Development Foundation ("USADF"); and (ii) appointing Marocco or any other person as an acting member of the USADF's board of directors ("Board") without Senate confirmation, or appointing Marocco or any other person President absent appointment by a "lawfully-constituted Board." *Id.* at 1–2; Compl. [Dkt. #1]. Brehm also asks the Court to order "that any actions taken or contemplated to be taken by . . . Marocco, any other [d]efendant, or any other person acting in concert with the [d]efendants purportedly as a member of the Board of USADF, absent Senate confirmation, are void ab initio and without

1

effect." Mot. 1–2. For the reasons stated below, the Court **DENIES** plaintiff's motion for a TRO.[1]

## BACKGROUND

USADF is an independent federal agency established by Congress to support and invest in African-owned and African-led enterprises, with the goal of "enabl[ing] the people of African countries to develop their potential, fulfill their aspirations, and enjoy better, more productive lives." *See* 22 U.S.C. §§ 290h-1, 290h-2(a). Its management is vested in the Board, which is "composed of seven members appointed by the President [of the United States], by and with the advice and consent of the Senate." *Id.* § 290h-5(a). The Board manages the agency, in part, through its appointment of a President. *Id.* § 290h-5(d).

On February 19, 2025, President Trump issued an Executive Order to "reduce the size of the Federal Government," listing USADF as an entity that "shall be eliminated to the maximum extent consistent with applicable law, and such entities shall reduce the performance of their statutory functions and associated personnel to the minimum presence and function required by law." Compl. ¶¶ 33–36 (quoting Exec. Order No. 14,217, 90 Fed. Reg. 10577 (Feb. 19, 2025)). In the following days, DOGE arrived at USADF, met with its leadership team, and attempted to gain access to its computer systems. *Id.* ¶¶ 40–42.

---

[1] Brehm attached to his reply brief a Revised Proposed Order Granting Temporary Restraining Order which adds a fourth request: "Defendants, or any other person acting in concert with the Defendants, shall not maintain, retain, gain, or exercise any access or control over USADF's offices, facilities, computer systems, or any other records, files, or resources, absent the express permission of Plaintiff." Proposed Order, Reply in Supp. of Pl.'s Mot. for TRO [Dkt. #12-5]. The Court will also deny this request.

On February 24, 2025, the Presidential Personnel Office ("PPO") notified Brehm that he had been terminated from his position as Chairman of the Board. *Id.* ¶ 45. According to defendants, PPO also notified the other Board members via email that they had been terminated as well, "effective immediately." Mem. in Opp'n to Pl.'s Mot. for a TRO ("Defs.' Opp'n") [Dkt. #10] at 3; *see also* Defs.' Opp'n, Exs. 1, 2, 3, 5 [Dkt #10-1]. The parties dispute whether the other Board members ever received these emails, as plaintiff asserts that they were sent to incorrect email addresses. Reply in Supp. of Pl.'s Mot. for TRO ("Reply Br.") [Dkt. #12] at 3–5.

On February 28, PPO purportedly appointed Marocco as the Acting Chair of the Board to fill Brehm's seat. Compl. ¶ 46. A few days later, on March 3, 2025, the other Board members—who allegedly did not know they had been terminated—convened an emergency meeting (without Marocco) and adopted a resolution appointing Brehm as the President of USADF. *Id.* ¶ 47.

Marocco and DOGE then attempted to enter USADF "with software engineers who had purportedly been detailed to the Foundation." *Id.* ¶¶ 49–50. At Brehm's direction, Marocco and DOGE were denied entry to USADF's offices. *Id.* ¶ 50. Defendants eventually gained access to USADF's offices; they disabled USADF's locks and keycard access and searched individual offices, including the offices of USADF's General Counsel and senior leadership. Reply Br., Ex. H, Supp. Decl. of Elisabeth Feleke ("Feleke Supp. Decl.") [Dkt. #12-1] ¶¶ 18–22. According to plaintiff, DOGE has represented to USADF that it intends to reduce USADF to its "minimum presence and function." Mot., Ex. B, Decl. of Elisabeth Feleke ("Feleke Decl.") [Dkt. #7-3] ¶ 5. Plaintiff alleges that DOGE

interprets the required "minimum" to be that "1) only the USADF Board and President/CEO are statutorily required, 2) only one or two grants funded by private sector partnerships are required, and 3) all other personnel/employees therefore need[] to be eliminated under the Executive Order." *Id.*

On March 6, 2025, Brehm filed the instant motion for a TRO, seeking to enjoin Marocco from serving as Board Chairman and to enjoin defendants from removing Brehm as President. *See* Mot. Later that day, the Court entered an administrative stay given the significant statutory and constitutional issues involved, which expired at 5:00 PM on March 11, 2025. *See* Min. Order (Mar. 6, 2025). The Court heard oral argument on the afternoon of March 11, 2025.

## STANDARD

A TRO "is an extraordinary form of relief." *Banks v. Booth*, 459 F. Supp. 3d 143, 149 (D.D.C. 2020). In general, "the moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the [TRO] were not granted, (3) that [the TRO] would not substantially injure other interested parties, and (4) that the public interest would be furthered by the [TRO]." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). "If a party fails to make a sufficient showing of irreparable injury, a court may deny a motion for injunctive relief." *New Mexico v. Musk*, 2025 WL 520583, at *3 (D.D.C. Feb. 18, 2025) (quoting *Beattie v. Barnhart*, 663 F. Supp. 2d 5, 8 (D.D.C. 2009)).

## ANALYSIS

I will analyze irreparable harm first, because if plaintiff cannot show irreparable

4

harm, his motion for a TRO must fail. *See Beattie*, 663 F. Supp. 2d at 8 (explaining that irreparable harm is "a threshold requirement in granting temporary injunctive relief"). Irreparable harm requires Brehm to show that his injury must be "both certain and great, actual and not theoretical, beyond remediation, and of such *imminence* that there is a clear and present need for equitable relief." *Church v. Biden*, 573 F. Supp. 3d 118, 138 (D.D.C. 2021) (quoting *Mexichem Specialty Resins v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015)). Here, Brehm has not demonstrated either that his alleged harm is "both certain and great" or "beyond remediation." Therefore, I must deny his motion for a TRO.

The heart of the problem is that Brehm has not identified any cognizable irreparable harm to *himself* as opposed to potential harm to the agency and its partners. At the outset, his loss of employment in and of itself is not irreparable harm. Should he eventually succeed on the merits, the Court could remedy any harm by reinstating him to his position and ordering back pay. *See Farris v. Rice*, 453 F. Supp. 2d 76, 79–80 (D.D.C. 2006) ("[C]ases are legion holding that loss of employment does not constitute irreparable injury.").

Brehm evidently anticipates this conclusion and instead argues that the harm stems from his "statutory right to function" as President of USADF. Mem. in Supp. of Pl.'s Mot. for TRO ("Pl.'s Br.") [Dkt. #7-1] at 24–26. Specifically, he asserts that he "has 'a statutory mission' and 'statutory right to function' as the President of USADF, and the 'loss of the ability to do what Congress specifically directed him to do cannot be remediated with anything other than equitable relief.'" Reply Br. 10 (citing *Harris v. Bessent*, 2025 WL 521027, at *8 (D.D.C. Feb. 18, 2025)). He claims that if defendants achieve their goals

5

regarding the agency, it will no longer be "an agency dedicated to fulfilling its statutory mission" of fostering partnerships and strengthening bonds between Africa and the United States. *Id.* at 11.

This is not a cognizable irreparable harm to Brehm. As an initial matter, the viability of a "statutory right to function" claim is uncertain. *See Dellinger v. Bessent*, No. 25-5052 (D.C. Cir. Mar. 10, 2025), slip op. at 8 (declining to find irreparable harm stemming from a statutory right to function because, "[a]t worst, [the plaintiff] would remain out of office for a short period of time" and thus the harm was not "irreparable"). To the extent courts have accepted such a claim, it has been on different facts. *See, e.g., Harris v. Bessent*, 2025 WL 679303, at *39 (D.D.C. Mar. 4, 2025) (finding a "statutory right to function" where the plaintiff was "unlike most other federal employees" because she was "duly appointed by the President and confirmed by the Senate to a position carrying a term of years with specific reasons for her removal"), *appeal docketed*, No. 25-5055 (D.C. Cir. Mar. 4, 2025). Unlike in *Harris*, for example, Brehm was not appointed by the U.S. President or confirmed by the Senate to his position as USADF President.

Regardless, plaintiff could not show irreparable harm for at least two reasons. *First*, defendants have stated that they will maintain USADF at the statutorily required "minimum presence and function"—meaning it will maintain the Board, a President and CEO, and one or two grants funded by private sector partnerships. Feleke Decl. ¶ 5. On the facts before the Court, defendants will therefore comply with statutory requirements regarding USADF. Plaintiff is, in essence, complaining that if he were President and CEO, he would maintain USADF at a higher level of functioning. Congress has defined the

6

agency's minimum level of functioning already, yet Brehm is asking the Court to define what it means for the agency to be fulfilling its mission. The Court would be guessing here and would be substituting Brehm's judgment for that of Congress. This I will not do.

*Second*, Brehm's assertions regarding the extent of the harm are speculative. He claims that without a TRO, the agency will be reduced to "ashes." Reply Br. 11–12. Brehm relies heavily on "[d]efendants' actions at USADF's sister agency, the Inter-American Foundation (IAF)." *Id.* at 11. According to Brehm, when Marocco gained access at IAF, "he cancelled 'all contracts and grants,' 'placed all IAF staff on administrative leave with the intention of implementing a reduction in force within 30 days,' and informed grantees . . . that they would be required to return funds." *Id.* Brehm also asserts defendants deleted IAF databases, which would make it "nearly impossible to restore grants" should defendants do the same at USADF. *Id.*

Here, the mere possibility that defendants will follow the same path as they did with IAF falls short of the "imminent threat of injury required to grant a TRO." *See Beattie*, 663 F. Supp. 2d at 9. Plaintiff has not "identified specific individuals or programs imminently targeted by [d]efendants." *See Musk*, 2025 WL 520583, at *3, *10 (denying a TRO for lack of irreparable harm where "[p]laintiffs' declarations are replete with attestations that *if* Musk and DOGE Defendants cancel, pause, or significantly reduce federal funding or eliminate federal funding or eliminate federal-state contracts, Plaintiff States will suffer extreme financial and programmatic harm" (emphasis in original)). Instead, Brehm asks the Court to accept his speculative assertions of harm and implement the "extraordinary" relief of a TRO. *See Banks*, 459 F. Supp. 3d at 149. Unfortunately for

7

Brehm, based on the record before me, I cannot find that he satisfies the "high standard for irreparable injury." *See Musk*, 2025 WL 520583, at *3 (quoting *Church*, 573 F. Supp. 3d at 138).

That said, Brehm raise a colorable Appointment Clause claim. *See* Mot. 19–24. Where a vacancy arises to an office requiring Presidential appointment and Senate confirmation, "Congress has given the President limited authority to appoint acting officials to temporarily perform the functions of [that] office without first obtaining Senate approval." *NLRB v. SW Gen.*, 580 U.S. 288, 294 (2017). Those circumstances derive either from the Federal Vacancies Reform Act (the "FVRA"), *see* 5 U.S.C. §§ 3345–3346, or another statutory provision that expressly authorizes such appointment, *see id.* § 3347(a).

The FVRA does not, however, permit such temporary appointments to USADF's Board because it is "composed of multiple members" and "governs an independent establishment or Government corporation." *See id.* § 3349c(1); 22 U.S.C. §§ 290h-4(b), 290h-5(a)(1). The Court has not found—nor has the Government identified—any other statute that provides President Trump with the authority to appoint Marocco as the Acting Chairman of the Board. Defendants' reliance on the Office of Legal Counsel's "long position" that President Trump's authority to appoint Marocco as an acting Board member "comes down to his Article II authority," *see* Defs.' Opp'n 13, ignores Congress's amendments to the statutes authorizing the President to fill vacancies and longstanding Supreme Court precedent, *see SW Gen.*, 580 U.S. at 293–97.

Nevertheless, without a showing of irreparable harm, "even a strong merits argument cannot secure a temporary restraining order at this juncture." *Musk*, 2025 WL 520583, at *4.[2]

## CONCLUSION

For the reasons explained, it is hereby **ORDERED** that plaintiff's motion for temporary restraining order is **DENIED**. It is further **ORDERED** that the parties shall meet and confer regarding further proceedings. The parties shall file a proposed briefing schedule for a preliminary injunction and state their positions on consolidating the merits with the preliminary injunction by 5:00 PM on March 12, 2025. For clarity, plaintiff's motion for preliminary injunction itself is *not* due tomorrow.

It is further **ORDERED** that, during the course of the litigation on the preliminary injunction, the Government must be prepared to provide testimony from Ethan Shaotran, Jacob Altik, and Nate Cavanaugh, under oath, as to what steps were taken to maintain USADF to "the minimum presence and function required by law." *See* Feleke Decl. ¶¶ 4–

---

[2] The Government argues that Brehm does not have standing to bring his removal and Appointment claims. Defs.' Opp'n 9–13. While the Government has represented that President Trump fired the Board prior to its March 3 emergency meeting purporting to appoint Brehm, *see* Defs.' Opp'n, Exs. 1–5 [Dkt. #10-1], it has not provided the Court with enough information to make that determination. The Government has not provided the Court with an authenticating declaration, genuine printouts of the emails, nor any sort of attestation or proof that the emails did not bounce back. And it is apparent from the face of PPO's email terminating John Agwunobi that his name is spelled wrong in the email address. *See* Defs.' Opp'n, Ex. 5. Given that Brehm has not shown irreparable harm, I will not reach the issue of whether and to what extent the President must provide notice to effectuate removal of its officers.

5. The Court expects, and will closely scrutinize, defendants' witnesses' testimony on how they maintained USADF's statutory requirements.

    **SO ORDERED.**

                                              */s/ Richard J. Leon*
                                              RICHARD J. LEON
                                              United States District Judge