UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WARD BREHM,

          Plaintiff,

    v.

PETE MAROCCO, Acting Deputy
Administrator for Policy and Planning and for
Management and Resources for USAID, et al.,

         Defendants.

Civil Action No. 25-0660 (RJL)

# DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND <u>MEMORANDUM IN SUPPORT THERETO</u>

# TABLE OF CONTENTS

Table of Contents ..................................................................................................... i

Table of Authorities ................................................................................................ ii

Background ............................................................................................................... 2

    I.    Legal Background. ......................................................................................... 2

    II.    Factual Background. ...................................................................................... 3

Legal Standards ....................................................................................................... 5

    I.    Preliminary Injunction. ................................................................................. 5

    II.    Summary Judgment. ...................................................................................... 6

Argument ................................................................................................................. 7

    I.    Brehm was Not Lawfully Appointed President of the Foundation, and Even if He Were, Brehm Was Lawfully Removed. .............................................................. 7

        A.    The Board Members Who Selected Brehm as President of the Foundation had Been Removed and Thus Did Not Have Legal Authority to Appoint Brehm. ..................................................................................................... 7

        B.    President Trump Lawfully Designated Marocco as Chairman of the Foundation Board and Marocco Subsequently Removed Brehm from His Position as President of the Foundation .................................................... 11

    II.    Brehm Is Not Entitled to Any Injunction. ......................................................... 16

        A.    Brehm Cannot Establish Irreparable Harm ............................................... 16

        B.    The Balance if Equities and Public Interest Favors Defendants. .............. 21

    III.    Brehm in Not Entitled to a Writ of Mandamus or a Declaratory Judgment. ........ 24

    IV.    Brehm Should Be Ordered to Post Security in Connection with Any Preliminary Injunctive Relief. ...................................................................................... 25

Conclusion ............................................................................................................... 26

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abdullah v. Bush*,
   945 F. Supp. 2d 64 (D.D.C. 2013) .......................................................................................24

*Advantage Health Plan, Inc. v. Knight*,
   139 F. Supp. 2d 108 (D.D.C. 2001) ......................................................................................10

*Alvarex v. Smith*,
   558 U.S. 87 (2009) ...............................................................................................................15

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................................6, 7

*Beattie v. Barnhart*,
   663 F. Supp. 2d 5 (D.D.C. 2009) .........................................................................................17

*Blinken*,
   560 F. Supp. 3d 81 (D.D.C. 2021) .......................................................................................24

*Burns v. GAO Emps. Fed. Credit Union*,
   Civ. A. No. 88-3424, 1988 WL 134925 (D.D.C. Dec. 2, 1988) ..........................................18

*Cafeteria & Restaurant Workers Union v. McElroy*,
   367 U.S. 886 (1961) .............................................................................................................22

*Campbell v. Schmidt*, Civ. A.,
   No. 20-1785 (CRC), 2020 U.S. Dist. LEXIS 204893 (D.D.C. Nov. 3, 2020) .........................19

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................................6, 7

*Chaplaincy of Full Gospel Churches*,
   454 F.3d .................................................................................................................................17

*Church v. Biden*,
   573 F. Supp. 3d 118 (D.D.C. 2021) .....................................................................................20

*Clinton v. City of New York*,
   524 U.S. 417 (1998) .............................................................................................................23

*Colo. Wild Horse v. Jewell*,
   130 F. Supp. 3d 205 (D.D.C. 2015) .....................................................................................21

*Consolidated Edison Co. v. Ashcroft*,
   286 F.3d 600 (D.C. Cir. 2002) .............................................................................................24

*Curtis, Collins & Holbrook Co. v. United States*,
   262 U.S. 215 (1923) ...............................................................................................................9

*Damus v. Nielsen*, Civ. A.,
   No. 18-0578 (JEB), 2018 WL 3232515 (D.D.C. July 2, 2018) ...............................................5

*Davis v. Billington*,
   76 F. Supp. 3d 59 (D.D.C. 2014) ............................................................................17, 18, 24

*Davis v. Pension Ben. Guar. Corp.*,
   571 F.3d 1288 (D.C. Cir. 2009) ..............................................................................................6

*DSE, Inc. v. United States*,
   169 F.3d 21 (D.C. Cir. 1999) ...............................................................................................25

*EEOC v. City of Janesville*,
    630 F.2d 1254 (7th Cir. 1980) ................................................................. 18
*Elite Entm't, Inc. v. Reshammiya*,
    Civ. A. No. 08-0641, 2008 WL 9356287 (D.D.C. Apr. 18, 2008) ......................... 24
*English v. Trump*,
    279 F. Supp. 3d 307 (D.D.C. 2018) ..................................................... 18, 19
Exec. Order No. 14,217 ................................................................. 3, 20, 21, 22
*Farris v. Rice*,
    453 F. Supp. 2d 76 (D.D.C. 2006) ........................................................ 6, 18
*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) ........................................................................ 14
*Franks v. Nimmo*,
    683 F.2d 1290 (10th Cir. 1982) .............................................................. 18
*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) ......................................................................... 11
*George v. Ishimaru*,
    849 F. Supp. 68 (D.D.C. 1994) .............................................................. 15
*George v. Ishimaru*,
    No. 94-5111, 1994 WL 517746 (D.C. Cir. Aug. 25, 1994) ................................... 15
*Great Lakes Dredge & Dock Co. v. Huffman*,
    319 U.S. 293 (1943) ......................................................................... 25
*Grosdidier v. Broad. Bd. of Governors*,
    709 F.3d 19 (D.C. Cir. 2013) ................................................................. 7
*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
    920 F.3d 1 (D.C. Cir. 2019) .................................................................. 5
*Heckler v. Ringer*,
    466 U.S. 602 (1984) ......................................................................... 24
*Henderson v. Charles E. Smith Mgm't, Inc.*,
    567 A.2d 59 (D.C. 1989) .................................................................... 10
*Hetreed v. Allstate Ins. Co.*,
    135 F.3d 1155 (7th Cir. 1998) ........................................................... 17, 18
*Holcomb v. Powell*,
    433 F.3d 889 (D.C. Cir. 2006) ............................................................... 6
*Holder v. Humanitarian L. Project*,
    561 U.S. 1 (2010) ........................................................................... 23
*Holy Land Found. for Relief & Dev. v. Ashcroft*,
    219 F. Supp. 2d 57 (D.D.C. 2002) ........................................................... 23
*In re Fed. Bureau of Prisons' Execution Protocol Cases*,
    980 F.3d 123 (D.C. Cir. 2020) ............................................................... 16
*Kansas v. United States*,
    124 F.4th 529 (8th Cir. 2024) ............................................................... 20
*Laningham v. Dep't of Navy*,
    813 F.2d 1236 (D.C. Cir. 1987) .............................................................. 7
*League of Women Voters v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) .................................................................. 5

*Levesque v. Maine*,
  587 F.2d 78 (1st Cir. 1978)............................................................................18
*Lovitky v. Trump*,
  949 F.3d 753 (D.C. Cir. 2020)........................................................................24
*Macauley v. Waterman S.S. Corp.*,
  327 U.S. 540 (1946)......................................................................................25
*Marxe v. Jackson*,
  833 F.2d 1121 (3d Cir. 1987)........................................................................18
*Morgan v. White*,
  964 F.3d 649 (7th Cir. 2020)........................................................................19
*Munaf v. Geren*,
  553 U.S. 674 (2008)......................................................................................16
*Myers v. United States*,
  272 U.S. 52 (1926).........................................................................11, 15, 22
*Nat'l Ass'n of Broadcasters v. FCC*,
  789 F.3d 165 (D.C. Cir. 2015)......................................................................11
*Nichols v. Agency for Int'l Dev.*,
  18 F. Supp. 2d 1 (D.D.C. 1998)....................................................................18
*Nken v. Holder*,
  556 U.S. 418 (2009)................................................................................16, 21
*NLRB v. Noel Canning*,
  573 U.S. 513 (2014)................................................................................14, 15
*Noel Canning v. NLRB*,
  705 F.3d 490 (D.C. Cir. 2013)......................................................................14
*Open Top Sightseeing USA v. Mr. Sightseeing, LLC*,
  48 F. Supp. 3d 87 (D.D.C. 2014)....................................................................5
*Phillip v. Fairfield Univ.*,
  118 F.3d 131 (2d Cir. 1997)..........................................................................16
*Powers of the President "in Emergency or State of War,*
  *"* 39 Op. Att'y Gen. 343 (1939)....................................................................11
*Printz v. United States*,
  521 U.S. 898 (1997)......................................................................................12
*Pub. Citizen Health Rsch. Grp. v. Acosta*,
  363 F. Supp. 3d 1 (D.D.C. 2018)..............................................................5, 11
*Pursuing Am.'s Greatness v. FEC*,
  831 F.3d 500 (D.C. Cir. 2016)........................................................................5
*Raines v. Byrd*,
  521 U.S. 811 (1997)......................................................................................17
*Rubino v. City of Mount Vernon*,
  707 F.2d 53 (2d Cir. 1983)............................................................................18
*Samuels v. Mackell*,
  401 U.S. 66 (1971)..................................................................................24, 25
*Schneider v. Kissinger*,
  412 F.3d 190 (D.C. Cir. 2005)........................................................................8
*Scott v. Harris*,
  550 U.S. 372 (2007)........................................................................................6

*Seed v. EPA,*
    100 F.4th 257 (D.C. Cir. 2024) ..................................................................15
*Seila Law LLC v. CFPB,*
    591 U.S. 197 (2020) ...................................................................................8
*Sherley v. Sebelius,*
    644 F.3d 388 (D.C. Cir. 2011) ..................................................................16
*Sierra Club v. Johnson,*
    374 F. Supp. 2d 30 (D.D.C. 2005) ...........................................................24
*Small v. Avanti Health Sys., LLC,*
    661 F.3d 1180 (9th Cir. 2011) ..................................................................22
*Spokeo Inc. v. Robbins,*
    578 U.S. 330 (2016) .................................................................................10
*Starbucks Corp. v. McKinney,*
    602 U.S. 339 (2024) ...................................................................................6
*United States v. Munsingwear,*
    340 U.S. 36 (1950) ...................................................................................15
*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982) .................................................................................21
*Williams v. Lew,*
    819 F.3d 466 (D.C. Cir. 2016) ..................................................................10
*Winter v. Nat. Res. Def. Council,*
    555 U.S. 7 (2008) ...........................................................................5, 6, 16
*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952) .................................................................................12
*Zivotofsky ex rel. Zivotofsky v. Sec'y of State,*
    725 F.3d 197 (D.C. Cir. 2013) ..................................................................15

**Statutes**

5 U.S.C. § 3347(a) ..............................................................................................13
5 U.S.C. § 3349c ................................................................................................14
5 U.S.C. § 3349c(1) .....................................................................................13, 14
22 U.S.C. 290h(5)(d)(1) ....................................................................................10
22 U.S.C. § 290h-1(a) ....................................................................................2, 3
22 U.S.C. § 290h-1(b) ........................................................................................20
22 U.S.C. § 290h-5(a) ........................................................................................12
22 U.S.C. § 290h-5(c) ........................................................................................15
22 U.S.C. § 290h-5(d)(1) ....................................................................................15
28 U.S.C. § 2202 ................................................................................................24

Defendants, various government components and officials, including the President, sued in their official capacities, respectfully submit this memorandum in support of their cross-motion for summary judgment and in opposition to Plaintiff's motion for a preliminary injunction and summary judgment. (ECF No. 20).

## INTRODUCTION

On February 24 and 26, 2025, the President removed all members of the Board of the U.S. Africa Development Foundation ("the Foundation") effective immediately. Plaintiff Ward Brehm was among the Board members who received this email. On February 28, 2025, the former Board members learned from Mathieu Zahui, the Foundation's Chief Financial Officer, that President Trump had designated Pete Marocco as acting Chairman of the Board because the Foundation had become "board-less." Despite this knowledge, the former Board members met on March 3, 2025, and purported to select Brehm as president of the Foundation. Although Brehm had not been lawfully appointed president, three days later, Marocco, as the sole acting Board member, removed Brehm from his purported position as president and appointed himself as president of the Foundation. Brehm brought this lawsuit claiming his removal was *ultra vires*, and now moves for a preliminary injunction and summary judgment.

. Brehm's claims fail on the merits. The Court should deny Brehm's motions and grant summary judgment in Defendants' favor. President Trump acted within his authority when he removed the Foundation's Board members -- meaning the former Board members lacked the authority to appoint Brehm as president of the Foundation. *See Temporary Presidential Designation of Acting Board Members of the Inter-American Foundation and the United States African Development Foundation*, 49 Op. O.L.C. __, 4 (March 14, 2025) ("Acting Board Members"). Because Brehm's affiliation with the Foundation ended upon his removal from the

Board, Brehm lacks standing to challenge Marocco's designation as acting Chairman of the Board. In any event, President Trump acted within his authority when he designated Marocco as acting Chairman and thus, even if Brehm was lawfully appointed president of the Foundation, Marocco lawfully removed Brehm when Marocco became the acting Chairman of the Board.

Moreover, to the extent that Brehm's removal has caused him harm, that harm is not irreparable and thus extraordinary relief is not warranted. And because the relief that Brehm seeks would alter the status quo, the balance of equities tilts decisively against entering any preliminary relief. And because Brehm's claim that he is entitled to be reinstated as president of the Foundation fails on the merits, Brehm is not entitled to a permanent injunction, mandamus, or declaratory relief.

## BACKGROUND

### I.    Legal Background.

In 1980, Congress established the United States African Development Foundation ("the Foundation"), 22 U.S.C. § 290h-1(a), to strengthen ties between the United States and African Nations and "enable the people of African countries to develop their potential, fulfill their aspirations, and enjoy better, more productive lives, the purposes." *Id.* § 290h-2(a). The Foundation is tasked with making "grants, loans, and loan guarantees to any African private or public group (including public international organizations), association, or other entity engaged in peaceful activities for" carrying out its purposes. *Id*. § 290h-3(a)(1).

Congress also established a Board of Directors tasked with managing the Foundation. *Id.* § 290h-5(a). The Board is "composed of seven members appointed by the President, by and with the advice and consent of the Senate," for six-year terms. *Id*. § 290h-5(a)(1). And the President may select a chairperson and vice chairperson among the board members. *Id*. § 290h-5(a)(1)-(2). No more than four Board members can be members of the same political party. *Id.* § 290h-5(a)(1).

The Board, in turn, is empowered to appoint "a president of the Foundation on such terms as the Board may determine." *Id.* § 290h-5(d)(1). The statute lacks any statutory removal protections. *See generally id.* § 290h-5(a)-(e). And the Foundation's bylaws anticipate that a board member may be subject to "removal," creating a vacancy to be filled by the President. *See* Foundation Bylaws (ECF No. 20-6 at 3).

On February 19, 2025, President Trump signed an Executive Order to "commenc[e] a reduction in the elements of the Federal bureaucracy that the President has determined are unnecessary." Exec. Order No. 14,217, 90 Fed. Reg. 10577 (Feb. 25, 2025). The Executive Order directed that "the non-statutory components and functions of" four named governmental entities "shall be eliminated to the maximum extent consistent with applicable law, and such entities shall reduce the performance of their statutory functions and associated personnel to the minimum presence and function required by law." *Id.* The Foundation was among the four entities subject to the order. *Id.* § 2(a)(iii). The Executive Order directed the Foundation to "submit a report to the Director of the Office of Management and Budget confirming compliance with this [Executive O]rder and stating whether the governmental entity, or any components or functions thereof, are statutorily required and to what extent." *Id.* § 2(a)(iii).

## II.    Factual Background.

On February 10, 2025, the Foundation's Board of Directors was notified that the Foundation president, Travis Adkins had resigned, effective immediately. Leslie Decl. ¶ 4 (ECF No. 20-5). The Board then appointed a leadership committee that would perform the functions of the president until the Board could select a new president. *Id.* The leadership committee included Elisabeth Feleke, the Foundation's Chief Program Officer, Kerline Perry, the General Counsel, and Mathieu Zahui, the Chief Financial Officer. *Id.* On March 3, 2025, the Board would purport

to appoint one of its own members, Plaintiff Ward Brehm, as president of the Foundation.  Brehm Decl. ¶ 11 (ECF No. 20-3).

Brehm was appointed to the Foundation's Board in 2008 by then-President George W. Bush.  Brehm Decl. ¶ 4 (ECF No. 7-2).   Brehm remained on the Board until February 24, 2025, when President Trump removed him from his position on the Board.  *Id.* ¶ 9; *see also* Email to Brehm (ECF No. 10-1 at 8).  That same day, President Trump also removed three additional Board members: Carol Moseley Braun, Morgan Davis, and John Leslie.  *See* Emails to Moseley Braun, Davis and Leslie (ECF No. 10-1 at 1-6).  Two days later, President Trump removed the remaining Board member, John Agwunobi.  *See* Email to Agwuobi (ECF No. 10-1 at 10).  All of the removals were "effective immediately."  *See generally* Emails (ECF No. 10-1).  On February 28, 2025, with the Foundation lacking a Board and a president, President Trump designated Marocco as the acting Chairman of the Board, and the only Board member.  Ex. 1, Marocco Decl. ¶ 5.  That same day, Zahui "shared an email that he received from [the Presidential Personnel Office] asserting that, because [the Foundation] was 'Board-less,' Peter Marocco had been appointed as Acting Board Chair of the Foundation."  Feleke Decl. ¶ 27 (ECF No. 20-4).  Zahui and Feleke (the Foundation's Chief Program Officer) then consulted with the removed Board members, and after consulting them, Zahui responded to the Personnel Office's email, stating "because under [the Foundation's] statute, a board nomination requires Senate confirmation, [the Foundation] could not recognize Marocco's authority as [Foundation] board chair."  *Id.*   Indeed, Leslie attested that he learned from Feleke that "we received an email from DOGE notifying [Foundation] staff that because [the Foundation] was 'Board-less,' President Trump citing his 'inherent authority' under Article [II], was appointing Peter Marocco as acting Chairman of the Board of USADF."  Leslie Decl. ¶ 12 (ECF No. 20-5).

Even though they had been removed from their Board positions, the former Board members convened on March 3, 2025, and purported to elect Brehm as president of the Foundation. Brehm Decl. ¶ 11 (ECF No. 20-3). The following day, Brehm received an email from Nate Cavanaugh, a detailee to the Foundation, Ex. 1, Marocco Decl. ¶ 7, informing Brehm that President Trump had designated Marocco as the acting Chairman. Brehm Decl. ¶ 12 (ECF No. 20-3). On March 6, 2025, Marocco held a Foundation Board meeting where he voted to terminate Brehm as president of the Foundation and appointed himself as president of the Foundation. *Id.* ¶ 6.

## LEGAL STANDARDS

### I.    <u>Preliminary Injunction.</u>

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council,* 555 U.S. 7, 24 (2008). A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (*quoting Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)). The last two factors merge when the government is the opposing party. *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019); *accord Pub. Citizen Health Rsch. Grp. v. Acosta*, 363 F. Supp. 3d 1, 20 (D.D.C. 2018). "[P]laintiffs bear the burden of persuasion on all four preliminary injunction factors in order to secure such an 'extraordinary remedy.'" *Open Top Sightseeing USA v. Mr. Sightseeing, LLC,* 48 F. Supp. 3d 87, 90 (D.D.C. 2014).

Before the Supreme Court's decision in *Winter*, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. *Damus v. Nielsen*, Civ. A. No. 18-0578 (JEB), 2018 WL 3232515, at *4

(D.D.C. July 2, 2018) (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009)).  The Supreme Court subsequently reaffirmed its disagreement with the sliding scale approach holding that "a plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Starbucks Corp. v. McKinney,* 602 U.S. 339, 346 (2024) (*quoting, Winter*, 555 U. S., at 20).  And where, as here, a party "seeks a mandatory injunction—to change the status quo through action rather than merely to preserve the status quo—typically the moving party must meet a higher standard than in the ordinary case: the movant must show 'clearly' that [it] is entitled to relief or that extreme or very serious damage will result."  *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006).

## II.    <u>Summary Judgment.</u>

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  *Anderson*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Holcomb*, 433 F.3d at 895.  When Rule 56 is invoked, the moving party has the initial burden of demonstrating the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of persuasion at trial, its burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

Once the moving party has met its burden, to defeat the motion the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted). Though courts must view this evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *see Grosdidier v. Broad. Bd. of Governors*, 709 F.3d 19, 23–24 (D.C. Cir. 2013), the nonmoving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his position—"there must be evidence on which the jury could reasonably find for [the nonmoving party]." *Anderson,* 477 U.S. at 252. The nonmoving party, moreover, "may not rest upon mere allegation or denials of his pleading but must present affirmative evidence showing a genuine issue for trial." *Laningham v. Dep't of Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (internal citation and quotation marks omitted).

## ARGUMENT

### I. Brehm was Not Lawfully Appointed President of the Foundation, and Even if He Were, Brehm Was Lawfully Removed.

The Board members who purportedly selected Brehm to serve as president of the Foundation had been removed before they purportedly appointed Brehm. As former Board members, they did not have any legal authority to make any decision on the Foundation's behalf, including selecting the Foundation's president. Brehm was therefore not elected by a legally constituted Board, meaning Brehm was never lawfully elected at all. But even if the Board members had not yet been removed when they selected Brehm, the Board members' removal was in effect when President Trump designated Marocco as an acting Board member, which permitted Marocco to lawfully exercise his authority as an acting Board member to remove Brehm.

### A. The Board Members Who Selected Brehm as President of the Foundation had Been Removed and Thus Did Not Have Legal Authority to Appoint Brehm.

The Constitution vests the entirety of the "executive Power" in the President, who is given the sole responsibility to "take Care that the Laws be faithfully executed." Art. II, § 1, cl. 1; *id.* §

3. As the Supreme Court has long held, that executive power encompasses the authority to remove those who aid the President in carrying out his duties. *See Seila Law LLC v. CFPB*, 591 U.S. 197, 204 (2020).  As Brehm properly does not contest, the President has the authority to remove the Foundation's Board members at will because they are principal officers without any statutory removal protections.  *See also Harris v. Bessent*, No. 25-5037, slip op. 26–30,  (D.C. Cir. Mar. 28, 2025) (Walker, J., concurring) (noting that statutory removal protections cannot apply to principal officers who perform solely executive functions).

Although Brehm "does not concede" that he was lawfully removed from the Board, Pl. Mot. at 35 n.1, Brehm makes no arguments explaining why his removal from the Board was unlawful.  In failing to make any arguments, Brehm has accepted he was lawfully removed from the Board.  *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work."). Brehm instead argues the removals were not effective on the day that they selected Brehm as president of the Foundation because the Board members had not received removal notice.  *See generally*, Pl. Mot. at 34-36.  Brehm admits he received the email informing him of his removal on February 24, 2025, Brehm Decl. ¶¶ 9-10 (ECF No. 20-3), but alleges that the other Board Members did not because the emails were not sent to their correct email addresses.[1]  Pl. Mot. at 34-36.  This argument lacks merit.

The President must be able to swiftly remove officers.  Any holding that imposed additional requirements on the way the President effectuates a removal would risk seriously undermining his executive power.  Agency heads before a Presidential transition could turn off all communications

---

[1]    Other than the declaration from Leslie (ECF No. 20-5), Brehm does not include declarations from any of the former Board members confirming on their own behalf that they did not receive the emails effectuating their termination.

and maintain power by becoming unreachable.  At the very least, they could delay the incoming administration by days, weeks, or months.  They might even continue to act through subordinates while being hard to reach.  This is not a hypothetical.  Here, the removed Board members allegedly appointed as president of the Foundation a former member of the Board who had just been lawful removed by the President, in obvious contravention of the President's wishes.  *See* Brehm Decl. ¶ 11 (ECF No. 20-3)

Even if the former Board members did not have noticeon February 26, 2025, that they had been removed from their positions, they certainly knew by February 28 that they were effectively removed.  According to Elisabeth Feleke, the Foundation's Chief Program Officer, on February 28, 2025, Chief Financial Officer Zahui "shared an email that he received from [the Presidential Personnel Office] asserting that, because [the Foundation] was 'Board-less,' Peter Marocco had been appointed as Acting Board Chair of the Foundation."  Feleke Decl. ¶ 27 (ECF No. 20-4).  After Zahui and Feleke consulted with the Board, Zahui "responded that, because under [the Foundation's] statute, a board nomination requires Senate confirmation, [the Foundation] could not recognize Marocco's authority as [Foundation] board chair. *Id.* ¶ 27.  Zahui's email established that the Board members learned of their removal on February 28 after he and Feleke consulted with them before responding to the Presidential Personnel Office's email. *Id.* ¶ 27.  Therefore, by at least March 3, 2025, the Board members knew that they were acting as former Board members when they purportedly selected Brehm as president.   Brehm Decl. ¶ 11 (ECF No. 20-3).

At common law, "[t]he general rule is that a principal is charged with the knowledge of the agent acquired by the agent in the course of the principal's business."  *Curtis, Collins & Holbrook Co. v. United States*, 262 U.S. 215, 222 (1923); *see* Restatement (First) of Agency §§ 9, 268 (1933); Restatement (Second) of Agency §§ 9, 268 (1958); Restatement (Third) of Agency § 5.02

(2006).  *See generally* Warren A. Seavey, *Notice Through an Agent*, 65 U. Penn. L. Rev. 1 (1916).

A principal-agent relationship is established if "parties' consent to establish a principal-agent

relationship" and "the activities of the agent are subject to the principal's control." *Henderson v.*

*Charles E. Smith Mgm't, Inc*., 567 A.2d 59, 62 (D.C. 1989).  As the Chief Financial Officer, Zahui

was an employee of the Foundation, and subordinate to the Board, thus there can be no doubt that

Zahui was an agent of the Board.  *Advantage Health Plan, Inc. v. Knight*, 139 F. Supp. 2d 108,

111 (D.D.C. 2001) (finding the chief financial officer of the Hospital was an agent of the Hospital).

Indeed, Zahui was part of a committee acting as President of the Foundation on February

28.   Leslie Decl.  ¶ 4 (ECF No. 20-5).   For this reason, regardless of when the Board members

learned that they were removed, the February 28, 2025, notice to Zahui, which he shared with the

Board members, was effective as notice to the Board members that they had been removed from

their positions.

Moreover, Brehm lacks standing to challenge Marocco's designation as the acting Chair.

To establish standing, "a complaint must state a plausible claim that the plaintiff has suffered an

injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a

favorable decision on the merits."  *Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016).  And for

an injury to be concrete and particularized, it must the injury must affect a plaintiff "in a personal

and individual way."  *Spokeo Inc. v. Robbins*, 578 U.S. 330, 339 (2016).  Here, Brehm's affiliation

with the Foundation ended when President Trump removed him from the Board, so he lacks

standing to challenge Marocco's designation as acting Chairman of the Board.  That is because

after the President removed Brehm from the Board, Brehm Decl.  ¶ 4 (ECF No. 7-2), Brehm ceased

to have any fiduciary or business relationship with the Foundation.  And, the removed Board

Members likewise lacked authority to appoint Brehm as President.  *See* 22 U.S.C. 290h(5)(d)(1).

Thus, Brehm lacks a factual and legal basis demonstrating he is still suffering from an actual "ongoing injury." *Nat'l Ass'n of Broadcasters v. FCC*, 789 F.3d 165, 181 (D.C. Cir. 2015).

> **B.      President Trump Lawfully Designated Marocco as Chairman of the Foundation Board and Marocco Subsequently Removed Brehm from His Position as President of the Foundation.**

Even if Brehm's appointment as president of the Foundation was valid, which it was not, Brehm's claim that he is entitled to reinstatement as president of the Foundation would still fail because Marocco, whom President Trump had lawfully designated as the sole member of the Foundation Board, removed Brehm as president of the Foundation on March 6, 2025.  Marocco Decl. ¶ 6.

The President must be able to designate acting officials to fulfill his duty to "take care that the laws be faithfully executed."  *See* Art. II, § 1, cl. 1; id. § 3.  The President has "powers not enumerated in the statutes—powers derived not from statutory grants but from the Constitution." *See Request of the Senate for an Opinion as to the Powers of the President "in Emergency or State of War,"* 39 Op. Att'y Gen. 343, 347 (1939).  "As part of his executive power," the President must be able to "select those who [are] to act for him under his direction in the execution of the laws." *Myers v. United States*, 272 U.S. 52, 117 (1926*); see e.g., Free Enter. Fund v. Pub. Co. Acct. Oversight Bd*., 561 U.S. 477, 492 (2010).  Relevant here, the President has the "concomitant power to name acting officials when necessary to fulfill his constitutional duties, at least where no statute precludes it."  *Temporary Presidential Designation of Acting Board Members of the Inter-American Foundation and the United States African Development Foundation*, 49 Op. O.L.C. __, 4 (March 14, 2025) ("*Acting Board Members*").  The President's inherent powers under the Take Care Clause would extend to designating acting members of the Board" to manage the Foundation temporarily.  *Id.* at 6.

Here, the President lawfully exercised his discretion in removing the Foundation Board members. There is no statute that limits or prohibits the President's prerogative to ensure the Foundation has temporary leadership, particularly in the context of a presidential transition. Therefore, nothing required the President to leave the Foundation leaderless and unable to "direct the exercise of all the powers of the Foundation" until the Senate considers his nominees for to fill vacancies on the Board. 22 U.S.C. § 290h-5(a); *see also, Acting Board Members*, 49 Op. O.L.C. __, at 6 ("no statute specifically governs the President's authority to designate acting Board members.") Instead, the President has the concomitant authority, incident to his Article II power, to designate acting officers. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Robert Jackson, J., concurring) ("congressional inertia, indifference or quiescence may sometimes, at least as a practical matter, enable, if not invite, measures on independent presidential responsibility"). The President's authority to designate in the face of statutory silence is consistent with the Framers' demand for "unity in the Federal Executive" to guarantee "both vigor and accountability." *Printz v. United States*, 521 U.S. 898, 922 (1997).

Because Congress has not provided for procedures that the President must undertake to fill vacancies on the Foundation board, "any actual test of power" depends on "imperatives of events and contemporary imponderables rather than on abstract theories of law." *Youngstown Sheet & Tube Co.*, 343 U.S. at 637. Here, President Trump needs individuals who could "exercise all powers of the Foundation," consistent with his agenda, until the Senate could confirm his nominees. 22 U.S.C. § 290h-5(a). "If the President could not task a politically accountable official to fill the [Foundation's] leadership positions in an acting capacity, the President functionally could not exercise his Take Care authority." *Acting Board Members*, 49 Op. O.L.C. __, at 9. Indeed, Brehm argues that he wants to run the Foundation "in accordance with its statutory

mandates, as those mandates are understood by [Foundation's] lawful leadership, Brehm and the Board," Pl. Mot at 39 (ECF No. 20), thus conceding that he does not share President Trump's vision for the Foundation.

Brehm argues that the Federal Vacancies Act limits the President's authority to designate acting Board members for the Foundation.  Pl. Mot. at 24 (ECF No. 20).  But statutes like the Federal Vacancies Act are a limitation on the President's power, not the source of his authority. *See, e.g.*, *Acting Board Members*, 49 Op. O.L.C. at 6–10; *Power of the President to Designate Acting Member of the Federal Home Loan Bank Board*, 1 Op. O.L.C. 150 (1977) ("Whatever the term 'independent' may mean …, the continued functioning of the Board is plainly included in the constitutional responsibility of the President as the head of the executive branch to take care that the laws be faithfully executed."); *Authority of the President to Remove the Staff Director of the Civil Rights Commission and Appoint an Acting Staff Director*, 25 Op. O.L.C. 103 (2001) (similar).

In that vein, the Federal Vacancies Act applies to "any office of an Executive agency" "for which appointment is required to be made by the President, by and with the advice and consent of the Senate" unless the Act specifies otherwise.  5 U.S.C. § 3347(a).  The Federal Vacancies Act does indeed specify otherwise for entities like the Foundation because Congress excluded those entities from it.  5 U.S.C. § 3349c(1).  Specifically, Federal Vacancies Act does not apply to "any member who is appointed by the President, by and with the advice and consent of the Senate to any board, commission, or similar entity that is composed of multiple members; and governs an independent establishment or Government corporation."  5 U.S.C. § 3349c(1).  Brehm concedes the Foundation qualifies as an entity described in this provision.  Pl. Mot at 25 (ECF No. 20).  But Brehm construes this provision to mean the President does not have any authority to designate officials to act as Board members.  *Id.*  This interpretation is incorrect.  If the Federal Vacancies

- 13 -

Act itself does not apply to the Foundation, then Section 3345, which governs procedures for designating acting officers in the event that a Senate-confirmed position becomes vacant, and Section 3346, which limits the amount of time that a designee can serve in an acting role, would not apply to the Foundation either. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 121 (2000) (statutory provisions "must [be] place[d] . . . in context"—including in the context of each other—and "interpret[ed] . . . to create a symmetrical and coherent regulatory scheme."). Brehm next argues that Section 3348(b) of the Federal Vacancies Act requires the seats on the Foundation Board to remain vacant until the Senate confirms President Trump's nominees. Pl. Mot. at 27. But this reading of the statute would contradict the exclusion in Section 3349c, which provides that Section 3348 does not apply to entities like the Foundation. 5 U.S.C. § 3349c (stating "Sections 3345 through 3349b shall not apply to— (1) any member who is appointed by the President, by and with the advice and consent of the Senate to any board, commission, or similar entity that—(A) is composed of multiple members…").

Brehm's reliance on *NLRB v. Noel Canning*, 573 U.S. 513 (2014) to argue the contrary is misplaced. *See* Pl. Mot. 28 (ECF No. 20). *Noel Canning,* 573 U.S. at 519, concerned the scope of the President's power to make recess appointments to the National Labor Relations Board. Here, President Trump did not appoint Marocco to the Foundation board as a recess appointment; rather, the President simply designated Marocco to perform the duties of the Chairman of the Foundation Board while the President searches for individuals to nominate to the Foundation Board for full terms. Ex. 1, Marocco Decl.

To be sure, as Brehm notes, the D.C. Circuit's ruling in *Noel Canning v. NLRB,* 705 F.3d 490, 511 (D.C. Cir. 2013) cites 5 U.S.C. § 3349c(1) with the aside that "Congress has chosen not to provide for acting NLRB members." But that line has no applicability because the case did not

deal with the Federal Vacancies Act, and the Supreme Court did not rely on this analysis in upholding the D.C. Circuit's view.  *See generally, Noel Canning*, 573 U.S. 513. The dicta, therefore, cannot and does not control this case. "A bare assumption is not the type of 'carefully considered language of the Supreme Court' that [the D.C. Circuit] considers authoritative for purposes of applying Supreme Court dictum."  *Seed v. EPA*, 100 F.4th 257, 266 (D.C. Cir. 2024) (*quoting Zivotofsky ex rel. Zivotofsky v. Sec'y of State*, 725 F.3d 197, 211-12 (D.C. Cir. 2013)). Brehm's reliance on *George v. Ishimaru*, 849 F. Supp. 68, 70 (D.D.C. 1994) is similarly misplaced. *George* was subsequently vacated as moot.  *George v. Ishimaru*, No. 94-5111, 1994 WL 517746 (D.C. Cir. Aug. 25, 1994) (per curiam).  In the normal course, appellate courts vacate judgments as moot "because doing so 'clears the path for future relitigation of the issues between the parties,' preserving 'the rights of all parties,' while prejudicing none 'by a decision which ... was only preliminary.'" *Alvarex v. Smith*, 558 U.S. 87, 93 (2009) (*quoting United States v. Munsingwear*, 340 U.S. 36, 40 (1950)).   In short, because of the vacatur, *George* is no longer precedent.

    Because Congress has not provided for procedures that the President must undertake to fill vacancies on the Foundation Board and the President must "take care that the laws be faithfully executed," the President must be able to "select those who [are] to act for him under his direction in the execution of the laws,"  *Myers*, 272 U.S. at 117, even those that simply act as "acting" members until the Senate confirms a permanent replacement.  Finally, the statute provides that the Board selects the president of the Foundation "on such terms as the Board may determine," 22 U.S.C. § 290h-5(d)(1), and "a majority of the Board shall constitute a quorum."  22 U.S.C. § 290h-5(c).  Therefore, Marocco, as the sole Board member and thus the "majority of the Board," had the authority to select the president of the Foundation.  Marocco exercised this authority on March

6, 2025, by removing Brehm from his position as president of the Foundation and selecting himself to succeed Brehm as president of the Foundation.  Ex. 1, Marocco Decl. ¶ 6.

Accordingly, because Brehm was never lawfully appointed president of the Foundation, and even if he was, Marocco removed Brehm from his position, the Court should grant summary judgment in Defendants' favor.

## II.    Brehm Is Not Entitled to Any Injunction.

"A preliminary injunction is an extraordinary and drastic remedy" that should "never [be] awarded as of right*." Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted).  The movant must satisfy a four-prong test, establishing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011).  The third and fourth factors of the preliminary injunction analysis—harm to others and the public interest—"merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Moreover, to obtain a permanent injunction, Brehm must do more than succeed on the merits.  Brehm must demonstrate he "has suffered an irreparable injury, (ii) remedies available at law are inadequate to compensate for that injury, (iii) the balance of hardships weighs in favor of an injunction, and (iv) 'the public interest would not be disserved by a permanent injunction.'"  *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123, 137 (D.C. Cir. 2020).  Accordingly, for the reasons explained below, Brehm is not entitled to any injunctive relief.

### A.    Brehm Cannot Establish Irreparable Harm

The "high standard for irreparable injury"—even higher here insofar as Brehm requests a mandatory injunction that would alter the status quo, *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133

(2d Cir. 1997)—requires a two-fold showing: First, because an irreparable injury "must be both certain and great," Brehm "must show 'the injury complained of is of such imminence that there is a "clear and present" need for equitable relief to prevent irreparable harm.'" *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (quoting *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Second, "the injury must be beyond remediation." *Id.* Importantly, irreparable harm "is a threshold requirement for granting temporary injunctive relief." *Beattie v. Barnhart*, 663 F. Supp. 2d 5, 8 (D.D.C. 2009). The same standard would apply to Brehm's request for a permanent injunction. *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. For that reason, even if Brehm had a likelihood of success on the merits, which he does not, Brehm should still be denied both a preliminary and permanent injunction.

Brehm claims that his removal has caused him irreparable harm because it deprived him of his "statutory right to function" as president of the Foundation and the "lost opportunity to administer [the Foundation] in accordance with its statutory mandates." Pl. Mot at 38-39. This argument lacks merit because settled law dictates that loss of employment does not constitute irreparable harm. Although a public official's "loss of salary" amounts to a judicially cognizable harm, his "loss of political power" does not. *Raines v. Byrd*, 521 U.S. 811, 820 (1997); *Harris*, No. 25-5037, slip op. at 45-46  (Walker, J. concurring) (rejecting a finding of irreparable harm based on removed Merit Systems Protection Board and National Labor Relations Board members' assertion of a "statutory right to function."); *Dellinger v. Bessent*, No. 25-5052, slip op. at 6-7 (D.C. Cir. March 10, 2025) (denying a stay pending appeal, giving effect to the removal of appellee from his position as Special Counsel for the U.S. Office of Special Counsel); *see also Hetreed v. Allstate Ins. Co.,* 135 F.3d 1155, 1158 (7th Cir. 1998); *Davis v. Billington*, 76 F. Supp. 3d 59, 65–

- 17 -

66 (D.D.C. 2014) (collecting cases); *Farris v. Rice*, 453 F. Supp. 2d 76, 79–80 (D.D.C. 2006) ("cases are legion holding that loss of employment does not constitute irreparable injury").

Courts have also repeatedly rejected the notion that the deprivation of a unique, singular, or high-level position is any more of an irreparable injury.  *See Hetreed*, 135 F.3d at 1158 (loss of position as senior manager leading audit department not irreparable injury); *Marxe v. Jackson*, 833 F.2d 1121, 1122 (3d Cir. 1987) (division manager); *Rubino v. City of Mount Vernon*, 707 F.2d 53 (2d Cir. 1983) (mayoral-appointed City Assessor); *Franks v. Nimmo*, 683 F.2d 1290, 1291 (10th Cir. 1982) (Associate Chief of Staff for Research and Development position at Department of Veterans Affairs Medical Center); *EEOC v. City of Janesville*, 630 F.2d 1254, 1256 (7th Cir. 1980) (Chief of Police); *Levesque v. Maine*, 587 F.2d 78, 79 (1st Cir. 1978) (Maine Commissioner of Manpower); *Nichols v. Agency for Int'l Dev.*, 18 F. Supp. 2d 1, 2, 4 (D.D.C. 1998) (Chief of Information Management Systems, Office of Inspector General); *Burns v. GAO Emps. Fed. Credit Union*, Civ. A. No. 88-3424, 1988 WL 134925, at *1–2 (D.D.C. Dec. 2, 1988) (President of Credit Union Board of Directors).  Notably, in denying Brehm's motion for a temporary restraining order, this Court had already rejected Brehm's argument that depriving him of his "statutory right to function" as president of the Foundation would cause him irreparable harm.  *Brehm v. Marocco*, Civ. A. No. 25-0660 (RJL), slip op. at 5 (D.D.C. March 11, 2025) (ECF No. 15).

If the Court determines, at the conclusion of this case that Brehm's removal was unlawful, then Brehm can obtain monetary relief in the form of back pay.  In other words, if Brehm's removal caused an injury to his legally protected interests, that injury can be remedied and thus any harm that Brehm experiences is not irreparable.  *English v. Trump*, 279 F. Supp. 3d 307, 335 (D.D.C. 2018) (any harm that an agency director suffered from removal "can be remediated in the ordinary course of this case."); *Davis*, 76 F. Supp. 3d at 65 ("The plaintiff fails to meet this high standard

as he has no concrete proof that the vacancy . . . will not be available when this matter is ultimately resolved."). In a seeming attempt to get around these established legal principles, Brehm disclaims an interest in "potential loss of pay." Pl. Mot. at 39. But by refusing the appropriate remedy that would be available if his removal turned out to be wrongful, Brehm is causing a self-inflicted injury, which does qualify as irreparable harm. *See, Morgan v. White*, 964 F.3d 649, 651 (7th Cir. 2020) ("One important question, when a plaintiff seeks emergency relief, is whether the plaintiff has brought the emergency on himself."); *Campbell v. Schmidt*, Civ. A. No. 20-1785 (CRC), 2020 U.S. Dist. LEXIS 204893, at *35 (D.D.C. Nov. 3, 2020) (courts "do not find irreparable harm based on an economic injury the plaintiff could avoid"). Thus, the Court should not credit Brehm's lack of interest in backpay in its irreparable harm analysis.

Brehm next argues that he has established irreparable harm because if he is not able to retain the position then Defendants will "effectively shutter" the Foundation. Pl. Mot. at 39 (ECF No. 20-1). But this argument conflates Brehm's fortunes with those of the Foundation. To demonstrate irreparable harm, Brehm must explain how removing him as president of the Foundation cause irreparable harm not to the Foundation, but to him. *Harris*, No. 25-5037, slip op. at 46 (Walker, J. concurring) (declining to consider removed Board members' assertions of harm to their former agencies as part of the irreparable harm analysis because "those are institutional interests, not personal interests."); *Brehm,* Civ. A. No. 25-0660 (RJL), slip op. at 5 (denying Brehm a temporary restraining order to stop his removal as President of the Foundation because he "has not identified any cognizable irreparable harm to himself as opposed to potential harm to the agency and its partners.").

Brehm's assertions about possible changes to the Foundation would only affect the Foundation, not Brehm personally. *English*, 279 F. Supp. 3d at 335 (finding that terminated

agency director failed to establish irreparable harm even if "there could be harm suffered by the [Agency] or by other parties if it is later determined that [plaintiff's replacement] has not been lawfully the acting Director[.]"). "[H]arm that might befall unnamed third parties does not satisfy the irreparable harm requirement in the context of emergency injunctive relief, which must instead be connected specifically to the parties before the Court." *State v. Musk*. --- F. Supp. 3d ---, 2025 WL 520583, at *4 (D.D.C. Feb. 18, 2025) (quoting *Church v. Biden*, 573 F. Supp. 3d 118, 146 (D.D.C. 2021)); *see also Kansas v. United States*, 124 F.4th 529, 534 (8th Cir. 2024) ("The irreparable-harm analysis focuses on the moving party, not the nonmoving party or some third party.") (citation omitted). For example, in *State v. Musk*, 2025 WL 520583, at *4, although the Court noted that "[t]erminating thousands of federal employees may cause extreme harm to the individual employees, and potentially the institution writ large," the Court held that it could not consider alleged harm to parties not before the Court on a request for emergency injunctive relief. *See id.* Likewise, in this case, Plaintiffs' allegations concerning possible harm to third parties cannot support emergency relief.

Brehm must demonstrate the likelihood of irreparable harm to himself—not to the Foundation—if an injunction does not issue. *Id.* Because he has not done so, Brehm is entitled to neither a preliminary injunction nor summary judgment. In any event, Brehm's assertions about harm to the Foundation are unfounded. The Executive Order that caused Brehm's removal only eliminates the Foundation's "non-statutory components and functions." Exec. Order No. 14,217. In creating the Foundation, Congress mandated the Foundation "establish a principal office in the United States," but gave the Foundation discretion to "establish such branch offices in Africa as may be necessary to carry out its functions." 22 U.S.C. § 290h-1(b). Congress also specified the Foundation's functions. *Id.* § 290h-3 ("Functions of the Foundation"). In accordance with the

Executive Order, the Foundation will continue to operate at its principal office and carry out the statutory functions that Congress directed it to perform.  Although Marocco placed thirty-four employees on administrative leave on March 18, 2025, Marocco has not taken any steps to terminate any Foundation staff or cancel any Foundation grants or contracts.  Marocco Decl. ¶¶ 10-11.  Brehm argues that he seeks to administer the Foundation "in accordance with its statutory mandates, as those mandates are understood by [Foundation's] lawful leadership, Brehm and the Board."  Pl. Mot at 39 (ECF No. 20).  But President Trump has directed that the Foundation "reduce the performance of their statutory functions and associated personnel to the minimum presence and function required by law."  Exec. Order No. 14,217.  And, in denying Brehm's motion for a temporary restraining order, this Court explained,

> Congress has defined the agency's minimum level of functioning already, yet Brehm is asking the Court to define what it means for the agency to be fulfilling its mission. The Court would be guessing here and would be substituting Brehm's judgment for that of Congress. This I will not do.

*Brehm,* Civ. A. No. 25-0660 (RJL), slip op. at 6-7.

Because Brehm has failed to demonstrate that removing him from his position as president of the Foundation will cause him irreparable harm, the Court should deny Brehm's motion for a preliminary injunction.

### B.    The Balance if Equities and Public Interest Favors Defendants.

The final two factors required for preliminary injunctive relief—a balancing of the harm to the opposing party, and the public interest—merge when the Government is the opposing party. *See, e.g., Nken v. Holder*, 556 U.S. 418, 435 (2009); *Colo. Wild Horse v. Jewell*, 130 F. Supp. 3d 205, 220-21 (D.D.C. 2015).  Courts must "[give] particular regard [to] the public consequences in employing the extraordinary remedy of injunction."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982).

In this case, the balance of equities and the public interest tip strongly in favor of the Government, for "the public interest favors applying federal law correctly." *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011). As discussed above, Brehm was never lawfully appointed president of the Foundation because President Trump had already removed the Board members from their positions when they convened on March 3, 2025, to appoint Brehm as president of the Foundation. Furthermore, even if lawfully selected as president of the Foundation, Brehm was later removed by Marocco. Therefore, the public interest would be undermined if the President did not have a Foundation Board and the appropriate leadership who holds the President's confidence to effectively serve him in executing his duties as Chief Executive. *See Sampson*, 415 U.S. at 83 (quoting *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 896 (1961)) ("[T]he Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'").

The public also has an interest in "reducing the size of the Federal Government," to minimize Government waste and abuse, reduce inflation, and promote American freedom and innovation." Exec. Order No. 14,217. President Trump has determined that "reducing the performance of [the Foundation's] statutory functions and associated personnel to the minimum presence and function required by law" is necessary to achieve this goal. *Id.* If Brehm is reinstated, then he could issue irrevocable grants or take other actions that undermine these goals. *Harris*, No. 25-5037, slip op. at 44 (Walker, J. concurring) (*quoting Myers*, 272 U.S. at 134) ("If the President 'loses confidence in the intelligence, ability, judgment, or loyalty of any one of [his subordinates], he must have the power to remove him without delay.'").

The American people elected President Trump and denying him his preferred leadership for the Foundation would "disenfranchises voters by hampering the President's ability to govern

during the four short years the people have assigned him the solemn duty of leading the executive branch." *Harris*, No. 25-5037, slip op. at 47.  Preliminary injunctive relief would displace and frustrate the President's decision and process about how to best address relations with African Nations, and the Court must give deference to the Executive Branch's "evaluation of the facts" and the "sensitive and weighty interests of national security and foreign affairs." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 33–34 (2010), including "the timing of those . . . decisions." *Holy Land Found. for Relief & Dev. v. Ashcroft,* 219 F. Supp. 2d 57, 74 n.28 (D.D.C. 2002), *aff'd,* 333 F.3d 156 (D.C. Cir. 2003); *see also, Clinton v. City of New York*, 524 U.S. 417, 445 (1998) (the President's Article II inherent authority is most commonly exercised "in the foreign affairs arena.").

Brehm further argues the public interest tips in his favor because the Foundation is refusing to spend money that Congress appropriated.  Pl. Mot. at 41.  But Marocco has not canceled any of the Foundation's grants or contracts.  Marocco Decl. ¶ 10.  For that reason, Brehm's assertion that the Foundation is not going to spend money that Congress appropriated is entirely speculative and should not be considered in weighing whether to grant a preliminary injunction.  To obtain summary judgment and an injunction, Brehm must prove his case.  He cannot rely on speculation to do so.

Before Brehm filed this lawsuit, President Trump had removed the Foundation Board members and designated Marocco as acting Chair of the Board.  Marocco Decl. ¶¶ 4-5.  And Marocco had terminated Brehm and appointed himself president of the Foundation.  *Id.* ¶ 6,  Therefore, in seeking an order reinstating him as president of the Foundation, Brehm seeks a change in the status quo.  Injunctions that "'would change the status quo' are disfavored as 'an even more extraordinary remedy' than the typical preliminary injunction, 'especially when

directed at the United States Government.'" *Strait Shipbrokers Pte. Ltd. v. Blinken*, 560 F. Supp. 3d 81, 93 (D.D.C. 2021) (quoting *Abdullah v. Bush*, 945 F. Supp. 2d 64, 67 (D.D.C. 2013), and *Sierra Club v. Johnson*, 374 F. Supp. 2d 30, 33 (D.D.C. 2005)).  Injunctions that alter the status quo, on balance, favor the non-movant. *See, e.g., Davis*, 76 F. Supp. 3d at 68; *Elite Entm't, Inc. v. Reshammiya*, Civ. A. No. 08-0641, 2008 WL 9356287, at *4 (D.D.C. Apr. 18, 2008).  Because the preliminary injunctive relief that Brehm seeks will alter the status quo, the third and fourth factors weigh against granting the preliminary injunction.

### III.    Brehm in Not Entitled to a Writ of Mandamus or a Declaratory Judgment.

Brehm also seeks a writ of mandamus and a declaratory judgment.  Pl. Mot at 43-45 (ECF No. 20).  But Brehm is not entitled to either.  The writ of mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).  Mandamus is "inappropriate except where a public official has violated a 'ministerial' duty." *Consolidated Edison Co. v. Ashcroft*, 286 F.3d 600, 606 (D.C. Cir. 2002).  Brehm has not established that Defendants have a "clear nondiscretionary duty."  Finally, "mandamus jurisdiction" "merges with the merits," *Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020), and because Brehm is incorrect that his removal was *ultra vires*, his mandamus claim fails.

Brehm's declaratory judgment claim fails for the same reason. The same principles that foreclose reinstatement likewise foreclose declaratory relief. A declaratory-judgment suit is "essentially an equitable cause of action." *Samuels v. Mackell*, 401 U.S. 66, 70 (1971) (citation omitted).  "[T]he Declaratory Judgment Act provides that after a declaratory judgment is issued the district court may enforce it by granting 'further necessary or proper relief,' 28 U.S.C. § 2202, and therefore a declaratory judgment . . . might serve as the basis for a subsequent injunction." *Samuels*, 401 U.S. at 72.  "[E]ven if the declaratory judgment is not used as a basis for actually

issuing an injunction, the declaratory relief alone has virtually the same practical impact as a formal injunction would." *Id.* As a result, "the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment." *Id.* at 73. To be sure, there may be "unusual circumstances" where "a declaratory judgment might be appropriate" even though "an injunction [would] be withheld." *Id.* But "ordinarily," "where an injunction would be impermissible," "declaratory relief should . . . be denied as well." *Id.* at 73; *see Macauley v. Waterman S.S. Corp.*, 327 U.S. 540, 545 n.4 (1946) ("The same principles which justified dismissal of the cause insofar as it sought injunction justified denial of the prayer for a declaratory judgment."); *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 300 (1943) (noting that the Declaratory Judgment Act "only provided a new form of procedure for the adjudication of rights in conformity" with "established equitable principles.").

Accordingly, the Court should deny Brehm's claims for a writ of mandamus and a declaratory judgment.

## IV.    Brehm Should Be Ordered to Post Security in Connection with Any Preliminary Injunctive Relief.

For the reasons stated above, Defendants submit that the Court should deny Brehm's motions in their entirety. However, should the Court be inclined to order any injunctive relief, the Court should also order Brehm to post security. Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). In the event the Court issues an injunction here, the Court should require Brehm to post an appropriate bond commensurate with the scope of any injunction. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (stating that Rule 65(c) places "broad discretion in the district court to determine the appropriate amount of an injunction bond"). Particularly

given that the relief requested by Brehm could hinder Defendants' ability to install new leadership

that will operate the Foundation in a manner consistent with President Trump's policies, the Court

should consider the implications of any order prohibiting the President from having his preferred

leadership at the Foundation in determining the amount of bond to require from Brehm.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's motion for preliminary injunction and

summary judgment, and award cross- summary judgment in Defendants' favor.

Dated: March 31, 2025                Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney


By:     _____ */s/ John J. Bardo* _____
   JOHN J. BARDO, DC Bar #1655534
   Assistant United States Attorney
   601 D Street, NW
   Washington, DC 20530
   (202) 870-6770

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WARD BREHM,

        Plaintiff,

    v.

PETE MAROCCO, Acting Deputy
Administrator for Policy and Planning and for
Management and Resources for USAID, et al.,

        Defendants.

Civil Action No. 25-0660 (RJL)

### [PROPOSED] ORDER

UPON CONSIDERATION of Plaintiff's motion for a preliminary injunction and summary judgment, Defendants' cross-motion for summary judgment and opposition to Plaintiff's motion for a preliminary injunction, and the entire record herein, it is hereby

ORDERED Plaintiff's motion for a preliminary injunction is DENIED; it is

ORDERED Plaintiff's motion for summary judgment is DENIED; and it is

FURTHER ORDERED Defendant's cross-motion for summary judgment is GRANTED.

SO ORDERED:

_____
Date

_____
RICHARD J. LEON
United States District Judge