## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Ward Brehm**, | |
| Plaintiff, | |
| **v.** | Civil Case No. **25-cv-660** |
| **Pete Marocco,** *et al.*, | |
| Defendants. | |

## COMBINED REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PRELIMINARY INJUNCTION AND RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Introduction ................................................................................................. 1

Supplemental Factual Background ............................................................... 2

Argument ...................................................................................................... 5

  **I.**  Brehm succeeds on the merits. .............................................................. 5

    A.  Marocco does not lawfully hold a position as a Board Member or Officer of the United States African Development Foundation. ........................................... 5

    B.  The USADF Board was never terminated. ................................... 12

  **II.**  The Court should grant Brehm relief. ................................................ 15

    A.  Brehm is entitled to an order voiding all actions of Defendants based on Marocco's invalid claim of authority. ...................... 15

    B.  Brehm is entitled to an injunction. ............................................. 16

    C.  Brehm is entitled to a writ of mandamus ................................... 19

    D.  Brehm is entitled to a declaratory judgment. ............................. 20

  **III.**  Bond is not appropriate here. ............................................................ 20

Conclusion .................................................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183 (D.C. Cir. 2016) ........................................ 19

* *Asylumworks v. Mayorkas*, 590 F. Supp. 3d 11 (D.D.C. 2022) ........................... 10, 16

*Augustus v. McHugh*, 870 F. Supp. 2d 167 (D.D.C. 2012) ................................. 9, 16, 18

* *Aviel v. Gor*, No. 25-cv-778 (D.D.C. Apr. 4, 2025) .............................................. 7, 8, 9

*Berry v. Reagan*, No. 83-cv-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983),
    *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983) ................................................. 16, 17

*Bowerbank v. Morris*, 3 F. Cas. 1062 (C.C.D. Pa. 1801) (No. 1726) .......................... 12

*DSE, Inc. v. United States*, 169 F.3d 21 (D.C. Cir. 1999) ........................................... 21

*Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868 (1991) ..................................... 7

*George v. Ishimaru*, 849 F. Supp. 68 (D.D.C. 1994), *vacated as moot*, No. 94-5111,
    1994 WL 517746 (D.C. Cir. Aug. 25, 1994) ........................................................... 11

*Grundmann v. Trump*, No. CV 25-425, 2025 WL 782665
    (D.D.C. Mar. 12, 2025) ...................................................................................... 16, 20

*Huisha-Huisha v. Mayorkas*, 27 F.4th 718 (D.C. Cir. 2022) ..................................... 19

*In re Aiken Cnty.*, 725 F.3d 255 (D.C. Cir. 2013) ....................................................... 18

*In re Al Baluchi*, 952 F.3d 363 (D.C. Cir. 2020) ........................................................ 19

* *In re Hennen*, 38 U.S. 230 (1839) .......................................................................... 12

*Johnson v. Panetta*, 953 F. Supp. 2d 244 (D.D.C. 2013) ............................................ 19

*Jones v. Hendrix*, 599 U.S. 465 (2023) ........................................................................ 9

*LaRoque v. Holder*, 650 F.3d 777 (D.C. Cir. 2011) .................................................... 15

*League of Women Voters of the U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ............. 18

*Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167 (D.D.C. 1971) ................... 21

*Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. 2025 WL 597959
    (D.D.C. Feb. 25, 2025) ........................................................................................... 21

*New Process Steel, L.P. v. NLRB*, 560 U.S. 674 (2010) ............................................... 11

*NLRB v. SW Gen., Inc.*, 580 U.S. 288 (2017) .......................................................... 7, 16

*Noel Canning v. NLRB*, 573 U.S. 513 (2014) .............................................................. 10

* *Noel Canning v. NLRB*, 705 F.3d 490 (D.C. Circ. 2013), *aff'd*,
    573 U.S. 513 (2014). ............................................................................................... 10

*P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492 (D.D.C. 2020) ........ 21

* Authorities principally relied upon are marked with an asterisk

*President v. Vance*, 627 F.2d 353 (D.C. Cir. 1980) ....................................................... 20

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012) .............. 9

*Sampson v. Murray*, 415 U.S. 61 (1974) ...................................................................... 17

*Samuels v. Mackell*, 401 U.S. 66 (1971) ...................................................................... 20

*Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023) ...................................................... 17

*Simms v. District of Columbia*, 872 F. Supp. 2d 90 (D.D.C. 2012) ............................. 21

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) .................................................... 17, 20

*TikTok Inc. v. Trump*, 490 F. Supp. 3d 73 (D.D.C. 2020) ............................................ 21

*United States v. Arthrex, Inc.*, 594 U.S. 1 (2021) ......................................................... 7

* *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483 (2001) .............. 16

## Constitutional Provisions and Statutes

* U.S. Const., art. II, § 2, cl. 2 ........................................................................................ 6

5 U.S.C. § 3347 ................................................................................................................ 8

* 5 U.S.C. § 3348 ...................................................................................... 8, 9, 10, 16

* 5 U.S.C. § 3349c ........................................................................................................ 8, 9

22 U.S.C. § 290h-2 ......................................................................................................... 18

22 U.S.C. § 290h-3 ......................................................................................................... 18

* 22 U.S.C. § 290h-5 .......................................................................... 5, 6, 9, 11, 15

Pub. L. No. 118-47, Div. F, tit. III, 138 Stat. 460 (2024) ............................................. 18

## Rules

Fed. R. Civ. P. 65 .......................................................................................................... 20

## Other Authorities

Jonathan Landry, *All local workers, US diplomats to be fired from USAID, sources say*, Reuters (Apr. 1, 2025), https://tinyurl.com/mm9f3k2z ...................................... 3

S. Rep. No. 105-250 (1998) ........................................................................................ 7, 8

*Temporary Presidential Designation of Acting Board Members of the Inter-American Foundation and the United States African Development Foundation*, 49 Op. O.L.C. ___ (2025) ................................................................................................... 8

\* Authorities principally relied upon are marked with an asterisk

## INTRODUCTION

Defendants' position turns on two arguments that are as novel as they are breathtaking. First, in their view, it does not matter that Congress enacted the Federal Vacancies Reform Act as the exclusive method to appoint acting federal officers and that Congress denied the authority to appoint acting members to boards such as that of USADF. Nor does it matter to Defendants that Congress specified that USADF Board members could take their seats only upon receiving Senate confirmation. Instead, Defendants argue that the President holds a free-floating power to appoint an acting member to USADF's Board, no matter what Congress said. Second, Defendants argue—ignoring precedent to the contrary—that the President does not need to provide actual notice to terminate principal officers. According to Defendants, Board members who have been appointed through a formal process can be removed either by sending terminations to incorrect email addresses or by sending a vague email that does not even mention termination to an employee, hoping that the employee will decipher the message and pass it on to the principal officers. Worse yet, Defendants make material misrepresentations to the Court and ignore (thus forfeiting) Brehm's central arguments.

At bottom, Defendants' attempt to install Pete Marocco as the "acting chair" of the USADF Board is without legal effect—so too is Marocco's attempt to terminate Ward Brehm from his position as USADF President to install himself as Brehm's replacement. This Court should enter an order confirming that Brehm is lawfully the President of the Foundation and reject Defendants' efforts to circumvent the role that

the Appointments Clause of the Constitution reserves for Congress in the appointment of federal officers.

## SUPPLEMENTAL FACTUAL BACKGROUND

We rely on the statement of facts that we presented in our opening brief. We supplement that statement to bring to the Court's attention material misstatements of fact by Defendants, and to correct an inference relied on by Defendants that is directly contradicted by the record evidence.

**1.** Defendants rely on Pete Marocco's declaration (signed under the penalty of perjury) as their only piece of evidence. ECF No. 31-3. Marocco declares that as of March 31, he had "taken no actions with respect to terminations of USADF staff," *id.* ¶ 11, and had "taken no steps towards canceling any USADF contracts or grants," *id.* ¶ 10. Neither statement is correct.

Marocco had, in fact, taken "actions with respect to terminations of USADF staff." Almost three hours *before* Marocco submitted his declaration, he sent a notice informing three USADF employees that they were subject to a reduction in force. Ex. P, Suppl. Feleke Decl. ¶ 7. These notices followed Marocco's March 18 notices to almost all USADF's employees placing them on administrative leave and prohibiting them from appearing at USADF's premises or accessing USADF's systems; Marocco had issued similar notices to employees at USADF's sister agency, the Inter-

2

American Foundation (IAF), as a precursor to a reduction in force there. Ex. B. Feleke Decl. ¶¶ 31, 55, ECF No. 20-4.[1]

Marocco had likewise taken steps toward canceling USADF contracts and grants. Exhibit K, submitted with our motion for summary judgment or preliminary injunction (ECF No. 20-13), is a March 19 email from the Administrative Resource Center (ARC), a component of the Department of the Treasury that provides financial management services for various agencies, including USADF. ARC alerted USADF that it had been informed that Marocco "intends to commence the termination of select USADF contracts and grants as early as today," and that ARC would honor Marocco's instructions because it had been advised that he was the President of the Foundation. *Id.* That Marocco had not yet cancelled any grants is irrelevant—by informing ARC that he was going to, he had certainly "taken . . . steps towards canceling . . . USADF contracts or grants," Marocco Decl. ¶ 10. And if there were any question, just over one hour *after* Defendants filed Marocco's declaration, at 12:17 a.m. on April 1, 2025, one of the DOGE employees detailed to USADF on Marocco's orders emailed Feleke (cc'ing Marocco) asking if they could "schedule a call 'to discuss the outstanding grants' and another call 'with your contracting officers to review descoping / cancellations.'" Ex. P, Suppl. Feleke Decl. ¶ 8.[2]

---

[1] If DOGE's actions at USAID are any indication, RIFs for the rest of the USADF staff—who have been placed on administrative leave under Marocco's orders—are coming soon. *See* Jonathan Landry, *All local workers, US diplomats to be fired from USAID, sources say*, Reuters (Apr. 1, 2025), https://tinyurl.com/mm9f3k2z.

[2] Marocco also contends that staff have not been working with him. ECF No. 31-3 ¶ 8. That is not true either. As already explained, at Brehm's direction, staff have

At the hearing on the motion for a TRO in this case, this Court instructed Defendants that "[t]he person who's making these representations to the Department of Justice [regarding Defendants' plans for the agency] is going to be required in the litigation on the PI to list in detail what steps were taken by the DOGE folks." Transcript of Mot. for TRO 35 (Mar. 11, 2025). "[T]hey're going to be under oath to report to this Court what they did in this interim between today and the PI hearing." *Id.* "That person's going to be in this courtroom and on that witness seat and have to answer questions from me if it's not acceptable to this Court. Remind them of that." *Id.* at 36. Given the grave concerns that have now arisen concerning Marocco's lack of candor with this Court, it would be appropriate for this Court to instruct that Marocco be one of Defendants' witnesses at the hearing that the Court has scheduled for April 16.

**2.** Throughout their brief, Defendants insist that the USADF Board "certainly knew" that they had been fired when management received an email describing USADF as "board-less." *See, e.g.*, Defs.' Mem. 9, ECF No. 31; *id.* ("Zahui's email established that the Board members learned of the removal on February 28."). Defendants do not submit any evidence for this factual conclusion. It is wrong and directly contradicted by Brehm's evidence.

Elisabeth Feleke, for example, explained that "the only board member who received a notice of termination was Ward Brehm." Ex. B, Feleke Decl. ¶ 21. And

---

cooperated with Defendants. Ex. P, Suppl. Feleke Decl. ¶¶ 4-6. When staff raised that they didn't have authority to carry out some of Defendants' demands, Defendants threatened to fire them. Ex. B, Feleke Decl. ¶¶ 50-54.

Board member Jack Leslie states that after Brehm was terminated from the Board, he believed he might be terminated in the future. Ex. C, Leslie Decl. ¶ 11, ECF No. 20-5. But "at no point did [he] receive any notice that [he] had been removed, and at no point was [he] under the impression that [he] had in fact been removed." *Id.* As to the "Board-less" email, Leslie explained his understanding that "USADF was not, in fact, Board-less." *Id.* ¶ 13.

Defendants fault Brehm for relying on the statement of only one Board member. *See* Defs.' Mem. 8 n.1. We have already adequately explained that none of the members received notice terminating their positions with the Board. Nonetheless, every remaining member of the Board has confirmed that they have not received any such notice and that they did not construe the "Board-less" email as a termination notice. Ex. M, Moseley Braun Decl. ¶¶ 4, 5; Ex. N, Agwunobi Decl. ¶¶ 4, 5; Ex. O, Davis Decl. ¶¶ 4, 5.

## ARGUMENT

### I.    Brehm succeeds on the merits.

#### A. Marocco does not lawfully hold a position as a Board Member or Officer of the United States African Development Foundation.

As we explained in our opening brief, the Appointments Clause "forecloses a Presidential power to unilaterally appoint principal officers." Pl.'s Mem. 17, ECF No. 20-1. Brehm's brief also explained (and Defendants concede) that neither the USADF's organic statute, 22 U.S.C. § 290h-5(a)(1), nor any other federal statute grants the President the authority to appoint acting members to USADF's Board of Directors. Pl.'s Mem. 21-22. And the Federal Vacancies Reform Act (FVRA), 5 U.S.C.

§ 3345 *et seq.*, precludes the appointment of an acting Board member. *See* Pl.'s Mem. 18-21. Now, Defendants ignore the Appointments Clause, arguing instead that the FVRA doesn't apply, that Congress was silent as to appointment of USADF Board members, and that the President holds inherent power to appoint Marocco as an acting member of the Board. *See* Defs.' Mem. 11-15. Defendants are wrong at each turn.

**1.** In arguing that the President had the power to appoint Marocco to a position as a principal officer, Defendants do not even address the plain text of the Appointments Clause, which describes only two methods for the appointment of officers. The first method, for the appointment of principal officers such as the members of USADF's Board, provides for nomination by the President "with the Advice and Consent of the Senate." U.S. Const., art. II, § 2, cl. 2; *see also* 22 U.S.C. § 290h-5(a)(1) (specifying this method, and only this method, for appointment to the Board). The second method applies when "Congress may by law vest" the appointment of inferior officers "as they think proper" in the President or in other bodies. U.S. Const., art. II, § 2, cl. 2.

Apart from the possibility of a recess appointment under clause 3 of section 2, the Constitution does not describe any additional vehicle for the appointment of federal officers. Nor may Defendants rely on the Take Care Clause to invent a new method of appointment not provided for in the express language of the Appointments Clause. One of the laws that the President must take care to be faithfully executed, after all, is the Appointments Clause, which imposes mandatory duties on him to appoint

principal officers only upon Senate confirmation, and to adhere to such other laws as Congress thinks proper for the appointment of other officers. *See United States v. Arthrex, Inc.*, 594 U.S. 1, 6 (2021) (describing the relationship between the two clauses).[3]

The Appointments Clause thus reveals that the President enjoys the authority to appoint acting officers only to the extent that Congress grants him that power. Apart from the methods that Congress specifies by law for such appointments, "the President lacks any inherent appointment authority," S. Rep. No. 105-250, at 5 (1998), and "in the absence of affirmative statutory authority to fill a vacancy, the office must remain vacant," *id.* The Supreme Court accordingly has recognized that Congress, by enacting the FRVA and its predecessors, Congress "has given the President limited authority to appoint acting officials," *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 294 (2017)—that is, the statute is the affirmative source of authority for these appointments, rather than a restriction of a pre-existing Presidential power.

Congress so understood this "divi[sion]" of the appointment power "between the Executive and Legislative Branches," *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 884 (1991), when it enacted the FVRA in 1998. The statute specifies that it provides the "exclusive means for temporarily authorizing an acting official" to

---

[3] What's more, Defendants' argument would effectively render the Recess Appointments Clause to be surplusage. If the President can create vacancies, then rely on inherent authority to fill those vacancies for an indeterminate time with an "acting" principal no matter whether the Senate were in session or not, it is hard to see when the Recess Appointments Clause would ever come into play. *See* Mem. Opinion 18, *Aviel v. Gor*, No. 25-cv-778 (D.D.C. Apr. 4, 2025), ECF No. 22.

perform the duties of an office, unless another statute "expressly" authorizes such an appointment, or the President exercises his recess appointment authority. 5 U.S.C. § 3347(a). *See also* S. Rep. No. 105-250, at 1 (describing the FVRA as the "exclusive process" to name acting officers). And the statute further specifies that, unless an acting officer is named in accordance with the terms of the FVRA itself, "the office shall remain vacant," "an action taken by any person [improperly claiming to be an acting officer] shall have no force or effect," and any such action "may not be ratified." 5 U.S.C. § 3348(b)(1), (d)(1), (d)(2). Because the FVRA is the exclusive method for the appointment of acting officials, and it does not provide for appointments of acting members of boards, the President enjoys no authority to appoint acting members to the Board of USADF or the Board of its sister organization, IAF. *See* Mem. Opinion 15-18, *Aviel v. Gor*, No. 25-cv-778 (D.D.C. Apr. 4, 2025), ECF No. 22 (holding the purported appointment of Marocco as chair of the IAF Board to be without force or effect).

**2.** Defendants contend that the FVRA does not apply at all here, given that 5 U.S.C. § 3349c clarifies that Congress's limited grant of appointment authority for acting officials does not extend to multi-member boards such as that of USADF. Defs.' Mem. 13-14. Accordingly, they reason, in the face of "statutory silence," Defs.' Mem. 12, Marocco could be appointed to this position without Congressional sanction. *See also Temporary Presidential Designation of Acting Board Members of the Inter-American Foundation and the United States African Development Foundation*, 49 Op. O.L.C. ___ (2025) (similarly relying on "statutory silence"). Even if Defendants were

correct in this argument, this would not help them, as they must identify an affirmative Congressional grant of authority for Marocco's appointment.

But their reading of the FVRA, in any event, is incorrect. As we explained in our opening brief, 5 U.S.C. § 3348(d)(1) specifies that its terms cover "vacant office[s] to which . . . section 3349c appl[ies]," that is, vacancies on multi-member boards. *See* Pl.'s Mem. 19-20. Nor is there any conflict between section 3348 and section 3349c, as we have also explained. Pl.'s Mem. 20-21. The first provision covers the treatment of persons invalidly claiming to serve as acting board members, while the second provision describes the treatment of Senate-confirmed board members. *See* 5 U.S.C. § 3349c(1). The two provisions can be (and thus must be) read in harmony with each other, *see Jones v. Hendrix*, 599 U.S. 465, 478 (2023), and even if there were any conflict between the two, the more specific language of section 3348 would take precedence, *see RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 646 (2012); *see also* Mem. Opinion 15-18, *Aviel v. Gor*, No. 25-cv-778 (D.D.C. Apr. 4, 2025), ECF No. 22. Defendants fail entirely to respond to these statutory arguments and therefore must be treated as conceding them. *See Augustus v. McHugh*, 870 F. Supp. 2d 167, 172 (D.D.C. 2012).

**3.** Defendants also fail entirely to grapple with the language of USADF's organic statute, which—far from being silent—describes Senate confirmation as the only vehicle for the appointment of members of the Foundation's Board, 22 U.S.C. § 290h-5(a)(1), and further specifies that the consequence of a vacancy on the board is that the current member carries over until a successor is appointed in accordance with the

terms of the statute, *id.* § 290h-5(a)(2). They must therefore be treated as conceding this point as well. *See Augustus*, 870 F. Supp. 2d at 172.

As the D.C. Circuit has explained, in provisions like the FVRA and USADF's organic statute, Congress has "addressed the problem of vacancies on various multimember agencies" by providing for the carryover of existing members until a successor is confirmed, but "Congress has chosen not to provide for acting [Board] members." *Noel Canning v. NLRB*, 705 F.3d 490, 511 (D.C. Cir. 2013), *aff'd*, 573 U.S. 513 (2014). The Circuit held that it was not free to disregard Congress's choice in this regard, because it could not "accept an interpretation of the Constitution completely divorced from its original meaning in order to resolve exigencies created by—and equally remediable by—the executive and legislative branches." *Id.* Defendants attempt to discount *Noel Canning* as mere dicta, Defs.' Mem. 14-15, but this is not so. If the Executive were free to appoint acting members to the NLRB without regard to the boundaries of the limited power that Congress had granted in the FVRA, there would have been no need to consider the applicability of the Recess Appointments Clause. *Noel Canning*'s recognition that the relevant statutory provisions foreclose the appointment of acting board members, then, is binding on this Court.

Marocco, then, could not take a seat as an acting member of UADF's Board, as no statute authorized his appointment without Senate confirmation. For that reason alone, any actions he has taken in his purported role as a member of the Board must be held to be without "force and effect," 5 U.S.C. § 3348(d)(1). *See Asylumworks v. Mayorkas*, 590 F. Supp. 3d 11, 26 (D.D.C. 2022).

But in any event, he could not possibly claim to exercise the authority of the Board by himself, even under his (incorrect) theory that he is the sole member of that Board. A single individual cannot constitute a quorum of the Board. The Board is defined as a plural entity, *see* 22 U.S.C. § 290h-5(a)(1) ("The management of the Foundation shall be vested in a board of directors (hereafter in this subchapter referred to as the 'Board')"), and only "[a] majority of the [board of directors) shall constitute a quorum," *id.* § 290h-5(c). *See also* Ex. D, Amended and Reinstated Bylaws of African Development Foundation, § 3.04(a), ECF No. 20-6 (defining a quorum as a "majority of the Directors"—in the plural—"holding office"); *New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 683–84 (2010) (collecting dictionary definitions establishing that a "quorum" is "the number of members," in the plural, "of a larger body that must participate for the valid transaction of business").

In sum, no provision of law, whether in Article II or the Constitution or otherwise, permits Defendants to disregard the limits of the authority that Congress has granted for the appointment of acting officers. *See George v. Ishimaru*, 849 F. Supp. 68, 72 (D.D.C. 1994), *order vacated and appeal dismissed as moot*, No. 94-5111, 1994 WL 517746 (D.C. Cir. Aug. 25, 1994). Defendant protest that *Ishimaru* is not precedential authority, Defs.' Mem. 15, but this misses the point. We cited this case for the factual proposition that "[n]o court has ever recognized that the President has such inherent authority" to appoint officers without Congressional authorization. 849 F. Supp. at 72. That proposition remains true today. This Court should not break new ground.

### B. The USADF Board was never terminated.

Federal officers may not be removed from their offices in secret. Nor should federal officers (or the public) have to guess whether they continue to hold their positions or not. To the contrary, "express notification" must be provided to the officer before their removal may take effect. *In re Hennen*, 38 U.S. 230, 247 (1839) (citing *Bowerbank v. Morris*, 3 F. Cas. 1062, 1064 (C.C.D. Pa. 1801) (No. 1726)). Defendants contend, without competent evidence, that they sent termination notices to the four remaining members of USADF's seven-member Board. But those notices were sent to email addresses that do not exist, so the USADF Board never received actual notice. *See* Pl.'s Mem. 28-29.

Defendants do not mention *Hennen* or *Bowerbank* and so have forfeited their previous position that actual notice is not required. *See* Mem. in Opp'n to Pl.'s Mot. for TRO 9, ECF No. 10. Nor have Defendants "provided the Court with an authenticating declaration, genuine printouts of the emails, []or any sort of attestation or proof that the emails did not bounce back." Mem. Order 9 n.2, ECF No. 15. So they have abandoned their reliance on the misdirected emails too.[4]

Now, in an ever-evolving attempt to justify their failures to actually notify the Board, Defendants pose a new theory that was entirely absent from their TRO brief. Defendants argue that describing USADF as "Board-less" in one clause of one sentence, in an email sent to someone other than the Board, is sufficient actual notice

---

[4] Despite failing to follow the Court's invitation to verify the emails, Defendants still rely on the unauthenticated emails to state as undisputed material fact that President Trump fired the Board members on February 24 and 26. *See* Defs.' Mem. 4; Defs.' Statement of Material Facts ¶¶ 3-4, ECF No. 31-1.

to remove a federal officer. Specifically, without any factual support, Defendants argue that the recipient of the email must have understood the passing reference to being "Board-less" as a termination notice and that, under the laws of agency, that understanding is imputed to the Board members themselves. This Court should reject Defendants' baseless argument.

As an initial matter, Defendants offer no legal support for the novel proposition that the mere existence of a principal-agent relationship means that an officer could be removed from his position by giving notice of the removal to some person other than the officer himself—even if, unlike here, the communication expressly stated that point. And we are aware of none.

Even if that were the law, it would not be satisfied here. Defendants insist that the Board members had notice they had been removed because Chief Financial Officer Mathieu Zahui received the "Board-less" email, and as an agent of the Board, notice to Zahui is imputed to the Board. *See* Defs.' Mem. 9-10. But Defendants fail to offer even a scrap of evidence to support that the Board members or Zahui understood the email as a termination notice. Indeed, Defendants do not even put the email into evidence—relying solely on descriptions of it in Brehm's declarations.

But the evidence that *is* in the record refutes Defendants' argument. Elisabeth Feleke, for example, explained that "the only board member who received a notice of termination was Ward Brehm." Ex. B, Feleke Decl. ¶ 21. And Board member Jack Leslie states that after Brehm was terminated from the Board, he believed he might be terminated in the future. Ex. C, Leslie Decl. ¶ 11. But "*at no point* did [he] receive

any notice that [he] had been removed, and *at no point* was [he] under the impression that [he] had in fact been removed." *Id.* (emphasis added). As to the "Board-less" email, Leslie explained his understanding that "USADF was not, in fact, Board-less." *Id.* ¶ 13. And lest there be any doubt, every other Board member explains that they did not understand the "Board-less" email as a termination notice either. Ex. M, Moseley Braun Decl. ¶ 5; Ex. N, Agwunobi Decl. ¶ 5; Ex. O, Davis Decl. ¶ 5.

Given Defendants' pattern of erratic communications in this case, the Board members' understanding is reasonable. Among other things, Defendants lied to gain access to USADF and made various threats to try to get what they wanted. The Board members knew that Brehm had received an explicit termination notice. *See* Ex. B, Feleke Decl. ¶¶ 20-21. When none of the remaining Board members received termination notices (despite checking), it was perfectly reasonable for them not to construe a vague description of USADF as "Board-less" (sent as an email to someone else entirely) as a termination notice. Each Board member, after all, went through a formal process of nomination and advice and consent of the Senate to be appointed in the first place, so it would be reasonable for them to expect that similar formalities would be observed for their removal, rather than hunting for inferences to be drawn from emails sent to other people. It would have been easy enough for Defendants to observe those formalities; USADF's chief program officer had obtained permission to share the board members' actual email addresses with Defendants, but Defendants never followed up with her to obtain that information. Ex. B, Feleke Decl. ¶ 18.

But the Court does not need to guess as to the inferences that might be drawn from the email. *Hennen* requires that notification of removal be expressly stated. If Defendants had a plausible argument that this email qualified as express notice, presumably they would have raised it in their TRO opposition. Or they would have put in some evidence to establish the point. Or, at the very least, they would have acknowledged Brehm's evidence that directly contradicts their conclusion. Because they failed to do any of those things, the Court should not accept their argument.[5]

The members of the Board accordingly remained in their seats, and they lawfully fulfilled their statutory duty to appoint Brehm as the president of USADF. *See* 22 U.S.C. § 290h-5(d)(1). Because Brehm is an inferior officer, only the Board holds the power to terminate Brehm from that position, as we explained in our opening brief. *See* Pl.'s Mem. 24-25. Defendants fail entirely to respond to this point and so concede it. Because the lawfully constituted Board of USADF has not terminated Brehm from his position, he remains the president of the Foundation.

## II. The Court should grant Brehm relief.

### A. Brehm is entitled to an order voiding all actions of Defendants based on Marocco's invalid claim of authority.

We showed in our opening brief that, under the express language of the FVRA, Brehm is entitled to an order setting aside any actions taken by Marocco, or under

---

[5] Defendants also dispute Brehm's standing to bring his claims. Defs.' Mem. 12-13. Their arguments on this score, however, are based on the premise that Marocco (on his own) had replaced the entirety of the USADF Board. They are incorrect on the merits, but in any event, this Court must "assume [Plaintiff] will prevail on the merits" of his claims when evaluating his standing. *LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011). Brehm plainly suffers an injury that is traceable to Defendants' actions and is redressable by a judgment in his favor.

Marocco's direction, as a purported member of USADF's Board. Pl.'s Mem. 31-32. The FVRA "remove[s] remedial discretion" in this regard, *Asylumworks,* 590 F. Supp. 3d at 2, by specifying that if a person is found to be invalidly acting as an officer of an agency, any of his actions must be treated as having "no force or effect," 5 U.S.C. § 3348(d)(1). *See also SW Gen.*, 580 U.S. at 298 n.2. There is therefore no cause to weigh the ordinary four factors for injunctive relief in this case, given that Congress itself has specified the remedy that must be applied here. *See United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001). Defendants fail entirely to respond to this point in their briefing and therefore must be treated as conceding the point. *See Augustus*, 870 F. Supp. 2d at 172. This Court therefore need not proceed any further to determine the appropriate remedy to award here.

**B. Brehm is entitled to an injunction.**

Even if Congress had not removed this Court's remedial discretion by mandating the relief that must be awarded when the FVRA is violated, Brehm would nonetheless be entitled to a permanent or preliminary injunction under the traditional standards for equitable relief. All four of the traditional standards are met here. Brehm is likely, and indeed certain, to prevail on the merits, for the reasons we have already explained. He would also suffer irreparable injury in the absence of an injunction. Courts in this circuit have recognized that a federal official suffers an irreparable injury from an unlawful attempt to remove him from his office. *See Grundmann v. Trump*, No. CV 25-425, 2025 WL 782665, at *16 (D.D.C. Mar. 12, 2025); *Berry v. Reagan*, No. 83-cv-3182, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983).

16

Defendants contend that, as a categorical matter, no federal employee may obtain an injunction to confirm their federal employment. *See* Defs.' Mem. 17-19. This is not the law. To be sure, in the "normal situation," legal remedies, or the equitable remedy of back pay, may suffice to redress the mine run of employment disputes. *See Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). But *Sampson* also recognized that injunctive relief remains available in "extraordinary situation[s]." *Id.* For this reason, the D.C. Circuit has repeatedly recognized the availability of injunctive relief for federal officers contesting their unlawful removals. *See Severino v. Biden*, 71 F.4th 1038, 1042-43 (D.C. Cir. 2023); *Swan v. Clinton*, 100 F.3d 973, 980 (D.C. Cir. 1996).

This case presents an extraordinary situation justifying equitable relief. If Brehm could not obtain relief confirming that he lawfully holds his position, Defendants would use the powers of his office to reduce USADF to a shell, consisting only of a skeleton staff that board would terminate all the Foundation's publicly funded grants while allowing one or two privately funded grants to continue. *See* Ex. B, Feleke Decl. ¶ 9. Defendants have had an adequate opportunity to disclaim any such plan but have tellingly declined to do. They instead assert that Brehm has failed to show any irreparable harm because "Marocco has not taken any steps to terminate any Foundation staff or cancel any Foundation grants or contracts." Defs.' Mem. 21. But this statement is false. As we have explained above, both before and after the time that Marocco submitted this declaration, he had already begun to terminate USADF's staff as well as to terminate the Foundation's contracts and grants. Given Defendants' plans for USADF, Brehm's inability to return to an agency that would

17

continue to exist in anything like its current form constitutes irreparable injury to him. *See Berry*, No. 83-cv-3182, 1983 WL 538, at *5.

The remaining equitable factors also weigh strongly in favor of an injunction. There is a strong public interest in protecting Congress's role in the appointments process established by the Appointments Clause, the FVRA, and USADF's organic statute, and for the same reason the balance of the equities tilt decidedly in favor of relief. "[T]here is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (cleaned up).

That public interest is all the more acute here, given that Defendants' plans for USADF are flatly contrary to the mandates that Congress has provided to the agency to distribute federally-funded grants to institutions in Africa, *see* 22 U.S.C. §§ 290h-2(a), (b), 290h-3(a); to use the $45 million that Congress has appropriated to the Foundation to accomplish this goal through the end of this fiscal year, Pub. L. No. 118-47, Div. F, tit. III, 138 Stat. 460, 746 (2024); and to refrain from any attempted reorganization without first justifying any such plans to Congress, *id.*, Div. F, § 7063, 138 Stat. at 843-44. We explained in detail in our opening brief how Defendants' plans to shutter the agency could not be squared with the governing statutes. Pl.'s Mem. 36-37 (discussing, *e.g.*, *In re Aiken Cnty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013) (Kavanaugh, J.)). Defendants fail entirely to respond to this statutory discussion and

accordingly must be treated as conceding this point too. *See Augustus*, 870 F. Supp. 2d at 172.[6]

### C. Brehm is entitled to a writ of mandamus

In any event, even if Brehm could not obtain the mandatory relief that Congress specified for an FVRA violation in 5 U.S.C. § 3348(d) or an injunction under the traditional standards for injunctive relief were unavailable, the legal remedy of mandamus would remain available to him. As we have explained, Pl.'s Mem. 37-39, Brehm satisfies each of the elements for a writ of mandamus to issue here, by demonstrating his clear right to relief, Defendants' clear duty to act, and the absence of another adequate remedy (assuming that relief is not otherwise available to him). *See Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). We have also explained that a writ of mandamus is "appropriate under the circumstances." *In re Al Baluchi*, 952 F.3d 363, 368 (D.C. Cir. 2020) (cleaned up).

In response, Defendants only dispute whether Brehm has established a "clear nondiscretionary duty." Defs.' Mem. 24. They do not explain their reasoning in this regard, and so they should be taken as conceding the availability of mandamus relief. *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("perfunctory and

---

[6] Contrary to Defendants' characterization, Defs.' Mem. 16-17, Brehm does not seek a mandatory injunction that would alter the status quo. "The status quo is the last *uncontested* status which preceded the pending controversy." *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022) (internal quotation omitted) (emphasis in original). "Courts also have awarded preliminary injunctions when it is necessary to compel defendant to correct injury already inflicted by defining the status quo as 'the last peaceable uncontested status' existing between the parties before the dispute developed." *Id.* at 733-34 (internal quotation omitted). Brehm simply seeks relief that would confirm the state of affairs before this dispute developed.

undeveloped arguments . . . are deemed waived"). We have already shown, in our opening brief and in the foregoing discussion of the merits, why Defendants have a nondiscretionary duty to recognize Brehm as the lawful president of USADF, and to refrain from treating Marocco as a member of the USADF Board, the President of USADF, or any other officer of the Foundation. *See generally Swan*, 100 F.3d at 977 (duty to recognize lawful office holder is "ministerial and not discretionary").

### D. Brehm is entitled to a declaratory judgment.

And, at bottom, Brehm is entitled to a declaratory judgment, in addition to the other forms of relief that he has requested. Defendants cannot, and do not, dispute that a declaratory judgment will clarify the legal relations at issue and will afford relief from the uncertainty giving rise to the parties' dispute, *see President v. Vance*, 627 F.2d 353, 365 n.76 (D.C. Cir. 1980), by settling a controversy as to the lawful leadership of USADF. They argue, instead, only that a declaratory judgment is the functional equivalent of an injunction and should not be issued if an injunction is unavailable. Defs.' Mem. 25 (citing *Samuels v. Mackell*, 401 U.S. 66, 73 (1971)). But *Samuels* only had to do with the application of abstention doctrines to prevent federal courts from interfering in state criminal proceedings. That circumstance is not present here, of course, so *Samuels* does not apply, and the ordinary principles for declaratory relief described by the D.C. Circuit in *Vance* govern instead. *See Grundmann*, No. CV 25-425, 2025 WL 782665, at *11.

### III. Bond is not appropriate here.

Defendants make a cursory request that the Court order Brehm to post bond under Federal Rule of Civil Procedure 65(c). *See* Defs.' Mem. 25-26. But Rule 65(c)

applies only where a party seeks "a preliminary injunction or a temporary restraining order." Fed. R. Civ. P. 65(c). Brehm need not post a bond to obtain a permanent injunction, or to obtain any of the other forms of relief that we have shown he is entitled to receive.

If the Court deems it prudent to withhold summary judgment and instead to award preliminary injunctive relief, no bond should be required. As Defendants say, this Court has "broad discretion . . . to determine the appropriate amount of an injunction bond." *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999). This "includ[es] the discretion to require no bond at all," *P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020) (quoting *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 107 (D.D.C. 2012)). A bond "is not necessary where requiring [one] would have the effect of denying the plaintiffs their right to judicial review of administrative action." *Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 168 (D.D.C. 1971) (collecting cases).

Security should be waived when compliance with the preliminary injunction raises no risk of monetary loss to the defendant—and Defendants here have not met their burden to provide any evidence of such a risk. *See TikTok Inc. v. Trump*, 490 F. Supp. 3d 73, 85 n.4 (D.D.C. 2020) (bond is inappropriate where plaintiff seeks "to vindicate important interests, and there is no risk that Defendants will suffer monetary harm"). In similar cases, courts in this Circuit have determined bond unnecessary. *See, e.g., Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. CV 25-239, 2025 WL 597959, at *19 (D.D.C. Feb. 25, 2025).

Defendants do not even attempt to argue that they would suffer any monetary harm from an injunction. They say only that "the Court should consider the implications of any order prohibiting the President from having his preferred leadership at the Foundation." Defs.' Mem. 26. This Court should instead decline to set a bond, in vindication of the Constitutional command that the President may install his "preferred leadership" in an agency only under the terms permitted by the Appointments Clause.

## CONCLUSION

For these reasons, the Court should award summary judgment in Brehm's favor. In the alternative, it should deny Defendants' motion for summary judgment and award Brehm preliminary injunctive relief until the Court can further consider the merits.

April 4, 2025                               Respectfully submitted,

                                            _/s/ Joel McElvain_____
                                            Joel McElvain (DC Bar No. 448431)
                                            Bradley Girard (DC Bar No. 1033743)
                                            Orlando Economos (DC Bar No. 90013791)
                                            Robin F. Thurston (DC Bar No. 1531399)
                                            Skye Perryman (DC Bar No. 984573)
                                            Democracy Forward Foundation
                                            P.O. Box 34553
                                            Washington, DC 20043
                                            (202) 448-9090
                                            jmcelvain@democracyforward.org
                                            bgirard@democracyforward.org
                                            rthurston@democracyforward.org
                                            sperryman@democracyforward.org

                                            *Counsel for Plaintiff*