UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WARD BREHM,<br><br>       Plaintiff,<br><br>   v.<br><br>PETE MAROCCO, Acting Deputy<br>Administrator for Policy and Planning and for<br>Management and Resources for USAID, et al.,<br><br>       Defendants. | Civil Action No. 25-0660 (RJL) |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR
CROSS MOTION FOR SUMMARY JUDGMENT**

Defendants, various government components and officials, including the President, sued in their official capacities, respectfully submit this reply in further support of their cross-motion for summary judgment (ECF No. 31).

## INTRODUCTION

Plaintiff Ward Brehm is not entitled to an order installing him as president of the U.S. Africa Development Foundation ("the Foundation"). Brehm never held the position as president of the Foundation to begin with because he was appointed by individuals who had been removed from the Foundation Board. And even of Brehm had been lawfully appointed president of the Foundation, Peter Marocco lawfully removed Brehm from his position after President Trump designated Marocco as the acting Chair of the Foundation board. Granting Brehm the relief that he seeks would force the President to accept leadership of an Executive Branch agency that does not share the President's vision for the agency, thereby infringing on the President's inherent authority under Article II of the Constitution. Thus, the Court should deny Plaintiff's motion for summary judgment and preliminary injunction and grant Defendants' cross motion for summary judgment.

## SUPPLEMENTAL BACKGROUND

President Trump had designated Peter Marocco to serve as acting Chair of the Foundation Board since February 24, 2025. Ex. 1, 2d. Marocco Decl. ¶ 5. Marocco took taking steps to implement Executive Order 142,22, which directs that each agency head to review all existing contracts and grants "and, where appropriate and consistent with applicable law, terminate or modify (including through renegotiation) such covered contracts and grants to reduce overall Federal spending or reallocate spending to promote efficiency and advance the policies of

[President Trump's] Administration." Executive Order 14,222 § 2(b), 90 Fed. Reg. 11,095 (Feb. 26, 2025).

Brehm believes there are inconsistencies in Marocco's prior declaration. Opp'n at 6. But Marocco has clarified that on March 30, 2025, he conditionally approved that a future reduction in force could be actioned subject to legal and process review. Ex. 1, 2d. Marocco Decl. ¶ 10. At the time Marocco signed the declaration on March 31, 2025 when he stated he had "taken no actions with respect to terminations of USADF staff," no action had yet been taken. *Id*. On the evening of March 31, 2025, roughly three hours after Marocco signed the declaration, three employees were terminated. *Id*. About a week later, Marocco directed another sixteen employees to be terminated. *Id*. ¶ 12. On that same day, Marocco canceled 353 grants. *Id*. ¶ 11. The following day, Marocco canceled forty-three contracts. *Id*. ¶ 13. As of today, April 9, 2025, the Foundation has thirteen employees, 148 grants and eight contracts. *Id*. ¶ 16.

## ARGUMENT

### I.    Brehm's Cannot Succeed on the Merits.

The Board Members who purported to have selected Brehm to serve as president of the Foundation had been removed from their positions and thus lacked the authority to make appoin. And even if Brehm had been lawfully appointed, Marocco lawfully removed Brehm from his position as the Foundation's president after President Trump designated Marocco as the acting Chair and sole member of the Foundation Board. For these reasons, Brehm's claims will not succeed on the merits.

### A. The Board Members Who Purported to Appoint Brehm President of the Foundation Lacked Authority To Do So.

The former Board Members knew by February 28, 2025, that they had been removed because, on that day, Mathieu Zahui, the Foundation's Chief Financial Officer, received an email

from the Presidential Personnel Office explaining that President Trump had designated Marocco to serve as the acting Chair of the Foundation Board because the Foundation was "board-less." Feleke Decl. ¶ 27 (ECF No. 20-4).[1]   Zauhi informed each of the former Board Members of the email on the day that he received it.  *Id.*; Leslie Decl. ¶ 12 (ECF No. 20-5); Moseley-Braun Decl. ¶ 5 (ECF No. 33-2); Agwunobi Decl. ¶ 5 (ECF No. 33-3); Davis Decl. ¶ 5 (ECF No. 33-4). Although Brehm argues that the former Board Members did not have notice of their removal, Brehm does not dispute that Zahui informed these former Board Members of this correspondence. Opp'n at 17-18 (ECF No. 33).

Even though the former Board Members submitted declarations admitting that they knew President Trump had designated Marocco as the acting Board Chair because the Foundation was "board-less," the former Board Members insist that they were not aware that they had been removed.   Leslie Decl. ¶¶ 12-13 (ECF No. 20-5); Moseley-Braun Decl. ¶¶ 5-6 (ECF No. 33-2); Agwunobi Decl. ¶¶ 5-6 (ECF No. 33-3); Davis Decl. ¶¶ 5-6 (ECF No. 33-4).  But this insistence blinks with reality.  An executive branch official who has been removed from his or her position cannot be said to continue to occupy the position by disregarding notice of the removal or pretending that he or she did not understand the notice.  Indeed, the common law draws precisely the opposite conclusion:  when a reasonable person becomes aware of facts that should cause him to inquire further—for example, into why the Foundation was "board less"—he is deemed to have knowledge of what he would have discovered with reasonable inquiry.  *See, e.g.*, *Wood v.*

---

[1]    Brehm criticizes Defendants for failing to "authenticate" the termination emails that were sent to the Board Members.  Opp'n at 16 n.4.  The Court should disregard this criticism because "[a]t the summary judgment stage, a party is not required to produce evidence in a form that is admissible, but rather the evidence must be capable of being converted into admissible evidence at trial." *Ayuda, Inc. v. FTC,* 70 F. Supp. 3d 247, 280 (D.D.C. 2014) (citing *Gleklen v. Democratic Cong. Campaign Comm., Inc*., 199 F.3d 1365, 1369 (D.C. Cir. 2000)).

*Carpenter*, 101 U.S. 135, 141 (1879) ("Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of every thing to which such inquiry might have led.  When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it." (citation and quotation marks omitted)); *United States Trust Co. v. David*, 36 App. D.C. 549, 557-58 (D.C. 1911).  That the Board Members assert they did nothing to figure out whether they had been terminated undercuts rather than supports their arguments.

Even if the Board members did not receive the termination notices, the Presidential Personnel Office's February 28, 2025 email to Zahui, an agent of the Board, provided sufficient notice to the Board members about their removal status.  At common law, "a principal is charged with the knowledge of the agent acquired by the agent in the course of the principal's business." *Curtis, Collins & Holbrook Co. v. United States*, 262 U.S. 215, 222 (1923).  Brehm does not dispute that the Zahui was the Foundation's agency and cites no statutes or cases to suggest that this common law rule should not apply in effectuating removals of Executive Branch officials, like the Board members here.  Opp'n at 17 (ECF No. 17).  On the contrary, the only precedent of which Defendants are aware states the common law rule does apply.  *See United States v. Bank of Arkansas,* 24 F. Cas. 984, 985 (C.C.D. Ark. 1846) ("Notice to the deputy who performs the act is, in legal contemplation, notice to the principal."), *abrogated on other grounds in Doolittle's Lessee v. Bryan*, 55 U.S. (14 How.) 563 (1853).

Because the former Board Members knew before March 3, 2025, that they had been removed from the Board, they lacked the authority to conduct any business on the Foundation's behalf, including appointing Brehm as president of the Foundation.  Thus, Brehm cannot now seek court intervention to install him as the Foundation's president, a position that he never lawfully held.

**B. As the Sole Acting Board Member, Marocco Lawfully Removed Brehm From the Foundation Presidency.**

Even if Brehm had lawfully been appointed president of the Foundation he still would not be entitled to reinstatement because Marocco, in his capacity as acting chair of the Foundation Board, removed Brehm from the Foundation presidency. As an initial matter, Brehm misunderstands Defendants' standing argument. Opp'n at 19 n.5 (ECF No. 33). Specifically, the standing argument only applies to the extent that Brehm challenges Marocco's designation as the acting Board Chair. Defs' Mot. at 17 (ECF No. 31). If the Court agrees with Defendants that Brehm was never lawfully appointed president of the Foundation, then Brehm's affiliation with the Foundation ended on February 24, 2025, when he was removed from the Foundation Board. Brehm Decl. ¶ 10 (ECF No. 20-3). Anything that occurred at the Foundation after February 24 could not have caused an injury to Brehm's legally protected interests. Defs' Mot. at 17 (ECF No. 31). For this reason, the Court should only resolve the question of whether Marocco was lawfully designated as the acting Board Chair, if the Court believes that Brehm was lawfully appointed president of the Foundation.

In other words, if the Court finds the Board Members had been removed as of February 28, 2025, then those former Board Members could not have appointed Brehm as the Foundation's president, which ends the matter. The Court need not resolve the subsequent hypothetical question of whether Marocco had the authority to remove Brehm from a position that Brehm never held in the first place because such a ruling would amount to an advisory opinion. *See Shell Energy N. Am. (US), L.P. v. FERC*, 107 F.4th 981, 993 (D.C. Cir. 2024) ("Federal courts . . . are without authority to render advisory opinions or to decide questions that cannot affect the rights of litigants in the case before them." (cleaned up)).

As Defendants' motion explained, because Congress has not spoken to the contrary, President Trump has inherent authority to designate acting Foundation Board members as part of his Article II responsibility to "take care that the laws be faithfully executed."  Defs' Mot. at 17 (ECF No. 31).  In arguing that the President can only designate Foundation Board members with Senate confirmation or through recess appointment, Brehm ignores this presidential inherent authority.  Pl. Mot at 10.  Congress vested the Board with the authority to manage the Foundation. 22 U.S.C. § 290h-5(a).  And "the continued functioning of the Board is plainly included in the constitutional responsibility of the President as the head of the executive branch to take care that the laws be faithfully executed."  *Power of the President to Designate Acting Member of the Federal Home Loan Bank Board*, 1 Op. O.L.C. 150, 151 (1977) ("*Home Loan Bank Board*"). Without Marocco's designation, the Foundation lacks individuals who can undertake the "management" of the Foundation.  22 U.S.C. § 290h-5(a).  "The President's power to make such interim designations flows from the President's responsibility to keep executive branch agencies in operation."  *Home Loan Bank Board,* 1 Op. O.L.C. at 151.  Crucially, President Trump has not "appointed" Marocco to the Board, rather President Trump has temporarily designated Marocco to perform the duties of a Foundation Board Member until President Trump can nominate, and the Senate can confirm, Board members who will serve full terms.  *See Temporary Presidential Designation of Acting Board Members of the Inter-American Foundation and the United States African Development Foundation*, 49 Op. O.L.C. __, at *10 (Mar. 14, 2025).

Brehm's arguments that the Federal Vacancies Reform Act prevents the President from making this designation lack merit.  Opp'n at 11 (ECF No. 33).  The Federal Vacancies Reform Act ("Vacancies Act") does not apply to  "any member who is appointed by the President, by and with the advice and consent of the Senate to any board, commission, or similar entity that is

- 6 -

composed of multiple members; and governs an independent establishment or Government corporation." 5 U.S.C. § 3349c(1). This provision was added to the Vacancies Act in 1998, and in adding it, the Senate Committee on Government Affairs explained "this has always been the case with the respect to the Vacancies Act and [the Committee] wishes to avoid any confusion that might result from the enactment of a replacement statute on this point. Thus, vacancies in these positions are not covered by this legislation." S. Rep. No. 105-250, at 22 (1998). In other words, Congress did not intend to alter the status quo. In fact, prior to 1998 amendments, Presidents had from time to time temporarily designated acting members of independent boards. *See e.g., Home Loan Bank Board,* 1 Op. O.L.C. at 151 (the power to make interim designations on independent boards "flows from the President's responsibility to keep executive branch agencies in operation"). In enacting the 1998 amendments, Congress would have been aware that previous Presidents had wielded the power to designate acting members of independent Boards, but rather than limit that authority, Congress chose to leave that authority undisturbed. S. Rep. No. 105-250, at 22.

Brehm seeks solace in 5 U.S.C. § 3348(d)(1) which voids the actions of officials who were acting in a position in violation of the Vacancies Act, but this claim simply lacks merit. Opp'n at 13 (ECF No. 33). The provision provides that,

> An action taken by any person who is not acting under section 3345, 3346, or 3347, or as provided by subsection (b), in the performance of any function or duty of a vacant office to which this section and sections 3346, 3347, 3349, 3349a, 3349b, and 3349c apply shall have no force or effect.

5 U.S.C. § 3348(d)(1). This provision supports Defendants' position because the Foundation Board is an office "to which Section 3349c appl[ies]." *Id.* Under Section 3349c(1), the Vacancies Act's limits on presidential authority do not apply to the Foundation Board. Marocco is acting in a position in which Section 3349c applies and thus Section 3348(d)(1) is consistent with a finding

that Marocco was lawfully designated an acting board member who had the authority to remove Brehm.

Brehm argues that even under Defendants' reading of the Vacancies Act that Defendants "must identify an affirmative Congressional grant of authority for Marocco's appointment." Opp'n at 12-13 (ECF No. 33). But accepting this argument would contradict the inherent authority that Courts have found the President possesses in the face of statutory silence. *Youngstown Sheet& Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring); *Swaim v. United States*, 165 U.S. 553, 557–58 (1897). Brehm doubles down on his reliance on dicta from *Noel Canning v. National Labor Relations Board*, 705 F.3d 490 (D.C. Cir. 2013). *See* Opp'n at 14. In that case, the D.C. Circuit was not tasked with deciding whether the exclusion in 5 U.S.C. § 3349c(1)(A) meant the President could designate acting board members. The D.C. Circuit "assumed without deciding" that the President could not designate acting board members, making the statement dicta and not essential to the Court's holding. *Seed v. EPA*, 100 F.4th 257, 266 (D.C. Cir. 2024).

Brehm's argument also lacks support in the Foundation's organic statute. *Contra* Opp'n at 13-14 (ECF No. 33). Although the statute provides that Board members who serve for full terms must be confirmed by the Senate, the statute is silent on procedures for temporary designations of Board Members while the Senate considers the President's nominees. 22 U.S.C. § 290h-5(a)(1). Brehm also misunderstands the scope of the statute's procedures for filling vacancies. The statute allows a Board member whose term has expired to "continue to serve until a successor is appointed and shall have qualified." *Id*. § 290h-5(a)(2). But Marocco was not designated in place of a Board Member whose term has expired. Rather, Marocco was designated in place of Board Members whom the President had removed.

Finally, the fact that Marocco is the only individual acting as a Board member does not mean that the Board lacks a quorum and thus cannot act. *Contra* Opp'n at 15. A Board's less-than-full membership does not mean that its "power is suspended so that it can be exercised by no delegee." *New Process Steel v. NLRB*, 560 U.S. 674, 684 n.4 (2010). Moreover, the Foundation's bylaws specify that "[a] majority of the Directors holding office shall constitute a quorum for the transaction of business." Amended and Restated Bylaws of African Development Foundation, § 3.04(e). As the only Board member, Marocco was the "majority of directors holding office" when he removed Brehm. Neither the organic statute, nor the bylaws specify a minimum number of individuals who must hold Board positions to allow the Foundation to function.

Accordingly, because President Trump lawfully designated Marocco as the acting Chair of the Foundation Board and as the sole acting Board Member, Marocco had the authority to remove Brehm from his position as president of the Foundation, and Brehm is not entitled to reinstatement to a position he never held.

## II.    <u>Brehm Is Not Entitled to Any of the Equitable Relief that He Seeks.</u>

Brehm seeks an order "setting aside any actions taken by Marocco." Opp'n at 19-20 (ECF No. 33) (citing, 5 U.S.C. § 3348(d)(1)). Although the Vacancies Act provides that an individual who takes an action without the authority to act under the Vacancies Act "shall have no force or effect," 5 U.S.C. § 3348(d)(1), an order voiding Marocco's actions in his capacity as acting Chair of the Foundation Board would only be an available form of relief if the Foundation Board was subject to the Vacancies Act. But as explained above, the Foundation is not subject to the Vacancies Act giving the President the inherent authority to designate an acting Board Member as the Senate considers his nominees to serve full terms on the Board.

Brehm is not entitled to an injunction reinstating him as president of the Foundation. The individuals who purported to appoint Brehm as president of the Foundation had been removed from their positions. And even if they had not been removed, Marocco lawfully removed Brehm when he became the acting Chair of the Board. Brehm's failure to succeed on the merits makes it impossible for him to obtain a preliminary or permanent injunction. *Thomas v. Powell*, 247 F.3d 260, 267 (D.C. Cir. 2001) ("a court cannot issue a permanent injunction without first finding that the applicant has demonstrated actual success on the merits.").

Brehm also will not suffer irreparable injury in the interim. Even if Brehm is correct that he is being deprived of a "statutory right to function" as president of the Foundation, "that does not mean such injury is irreparable and weighs in his favor." *Dellinger v. Bessent*, No. 25-5052, 2025 U.S. App. LEXIS 6914, *10 (D.C. Cir. Mar. 10, 2025). Brehm again emphasizes that his removal is causing irreparable harm because if Brehm is removed, then Defendants will reduce the Foundation to "a shell." Opp'n at 21 (ECF No. 33). But "harm that might befall unnamed third parties does not satisfy the irreparable harm requirement in the context of emergency injunctive relief, which must instead be connected specifically to the parties before the Court." *State v. Musk.* --- F. Supp. 3d ---, 2025 WL 520583, at *4 (D.D.C. Feb. 18, 2025) (quoting *Church v. Biden*, 573 F. Supp. 3d 118, 146 (D.D.C. 2021). The propriety of Defendants' plans to reduce the Foundation's "statutory functions and associated personnel to the minimum presence and function required by law," Exec. Order No. 14,217, 90 Fed. Reg. 10577 (Feb. 25, 2025) are separate from the question of whether Brehm is entitled to serve as president of the Foundation because even if Brehm is installed as president of the Foundation, he will be subordinate to the Foundation Board, and the Board will be composed of members willing to run the Foundation consistent with Executive Order No. 14,217. Thus, Brehm's argument that installing him as president of the

Foundation will prevent irreparable harm by preventing Defendants from making changes to the Foundation and ensure that the Foundation operates in a manner consistent with what Brehm believes is the optimal statutory function lacks merit. Opp'n at 22. Indeed, this argument cuts against Brehm in the weighing of the equities: his position is that he wants to run the Foundation in a manner contrary to the President's stated policy goals.

That Brehm openly seeks to undermine the President's policy is a reason to deny him control over the Foundation rather than to enable it. The President's power to have his preferred leadership at the Foundation flows from core Article II principles. "Only the President (along with the Vice President) is elected by the entire Nation." *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 224 (2020). And the President has entrusted Marocco with temporary leadership of the Foundation. Voiding Marocco's actions as chair of the Foundation Board and ordering Brehm's installment as Foundation president, even temporarily, deprives the President of his power and responsibility to oversee the exercise of executive power. Forcing the President to retain Foundation leadership against his will would be an intrusion into the President's authority to exercise "all of" the "executive Power" of the United States. *Seila L. LLC*, 591 U.S. at 203; *Dellinger v. Bessent*, 2025 U.S. App. LEXIS 3987 (D.C. Cir. Feb. 15, 2025) (Katsas, J., Dissenting) ("Allowing another branch of government to insulate executive officers from presidential control—whether by congressional statute or judicial injunction—would sever a key constitutional link between the People and their government."). It would also break the chain of command that ensures that officials exercising executive power are ultimately accountable to the President and, through him, to people.

To support his argument that harm to the Foundation can establish irreparable harm, Brehm cites to *Berry v. Reagan*, Civ. A. No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983), an

unpublished district court opinion from more than forty years ago. Opp'n at 21-22 (ECF No. 33).

But even *Berry* 1983 WL 538, at *5 is distinguishable because those challenged removals deprived

the agency of a quorum making it unable to operate. *See, Dellinger,* 2025 U.S. App. LEXIS 3987,

at *44 (Katsas, J., dissenting). Here, removing Brehm's from his position as president of the

Foundation does not prevent the Foundation from operating. On the contrary, the Foundation

continues to operate, but in a manner consistent with Executive Order 14,217. Ex. 1, 2d. Marocco

Decl. ¶ 17. The Foundation still has thirteen employees, 148 grants and eight contracts. *Id.* ¶ 16.

Brehm cites no provisions in the Foundation's organic statute stating that this level of employees,

grants, and contracts is below the minimum statutory function. *See* 22 U.S.C. § 290h et seq.

Brehm argues that the remaining equitable factors favor his position because he is not

seeking a change to the status quo. Opp'n at 23 n.6. Specifically, Brehm argues that "the status

quo is the last uncontested status which preceded the pending controversy." *Id.*; (*quoting Huisha-*

*Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022)). But even accepting this argument,

Brehm occupying the position of president of the Foundation is not "the last uncontested status."

As explained above, the individuals who purported to select Brehm as president of the Foundation

had been removed from the Board. Because it is Defendants' position that Brehm was never the

lawful president of the Foundation, installing Brehm as president would alter the status quo and

thus the equitable factors favor Defendants.

Brehm is not entitled to mandamus relief either. Brehm dismisses the significance of his

failure to identify a mandatory, non-discretionary duty to warrant mandamus relief. Opp'n at 23.

But this deficiency is significant. As the party seeking mandamus relief, it is Brehm's burden to

identify a mandatory, non-discretionary duty. *NAACP Legal Def. & Educ. Fund, Inc. v. Barr*, 496

F. Supp. 3d 116, 145 (D.D.C. 2020); *West v. Spellings*, 480 F. Supp. 2d 213, 217 (D.D.C. 2007)

("A plaintiff bears a heavy burden of showing that his right to a writ of mandamus is 'clear and indisputable.'").   Brehm's failure to identify such a duty, standing alone, is reason enough to dismiss his mandamus claim.

### III.    Brehm Should Be Required to Post Bond.

The preliminary injunction that Brehm seeks—which, if granted, would install him in an office that he never lawfully held—would be truly extraordinary.  It is a significant intrusion into the President's authority to exercise "all of" "the 'executive Power'" of the United States.  *Seila Law LLC*, 591 U.S. at 203.  The President would be prevented from designating Foundation leadership that is committed to implementing the President's agenda.  An order that wrongfully restrains the President's authority, even temporarily, would irreparably harm the executive branch. *Harris v. Bessent*, Civ. A. No. 25-5055, 2025 U.S. App. LEXIS 7301, at *48-49 (D.C. Cir. Mar. 28, 2025) (Walker, J., concurring) (granting preliminary relief would "disenfranchises voters by hampering the President's ability to govern during the four short years the people have assigned him the solemn duty of leading the executive branch.").  If the Court grants Brehm the preliminary relief that he seeks, then the Court should require Brehm to post Bond consummate with the harm that the Executive Brach will suffer from being "wrongfully enjoined."  Fed. R. Civ. P. 65(c).

\*        \*        \*

**CONCLUSION**

For these reasons, and the reasons stated in Defendants' cross motion for summary

judgment (ECF No. 31) the Court should deny Brehm's motion for summary judgment grant

summary judgment in Defendants favor.

Dated: April 9, 2025                          Respectfully submitted,
      Washington, DC

                                              EDWARD R. MARTIN, JR., D.C. Bar #481866
                                              United States Attorney


By:  */s/ John J. Bardo*
        JOHN J. BARDO, D.C. Bar #1655534
        Assistant United States Attorney
        601 D Street, NW
        Washington, DC 20530
        (202) 870-6770

        *Attorneys for the United States of America*