## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Ward Brehm**,

        Plaintiff,

**v.**

**Pete Marocco,** *et al.*,

        Defendants.

**Civil Case No. 25-cv-660**

## PLAINTIFF'S MOTION TO ESTABLISH PROCEDURES FOR TESTIMONY OR, IN THE ALTERNATIVE, TO STRIKE DECLARATIONS

Under Local Civil Rule 7, Plaintiff respectfully moves to establish procedures for witness testimony for the hearing that this Court has scheduled in this matter for April 16, 2025. In the alternative, Plaintiff respectfully requests that the Court strike the declarations of Peter Marocco (ECF No. 31-3 and ECF No. 35-1) and the portions of Defendants' briefing (ECF No. 31 and ECF No. 35) relying on these declarations.

Pursuant to Local Civil Rule 7(m), counsel for Plaintiff conferred with counsel for Defendants concerning this motion on April 11. Counsel for Defendants oppose this motion. For the Court's convenience, Defendants' statement in opposition to this motion is reproduced below. In support of this motion, Plaintiff states as follows.

**1.** This case concerns Defendant Marocco's claim, without statutory authority, to serve as the Acting Chair of the Board of Directors of the United States African Development Foundation (USADF), in which purported capacity he has claimed to

1

have removed Plaintiff, Ward Brehm, from his position as President of USADF and to have appointed himself to replace Plaintiff in that position. Plaintiff has moved for summary judgment or, in the alternative, for a preliminary injunction. There are no disputes of material fact with respect to the motion for summary judgment. As a matter of law, Marocco does not have the authority to serve as the Acting Chair of the Board, or to claim that authority to remove Plaintiff from his position. And, as a matter of law, Plaintiff serves in that position by virtue of his appointment by the lawfully constituted Board of USADF, which remained in place at all times relevant to this litigation. Moreover, the Federal Vacancies Reform Act (5 U.S.C. §3348(d)) instructs that all of Marocco's actions taken under his purported authority as Acting Chair, including the purported removal of Plaintiff from his position, must be set aside.

**2.** Because Brehm has shown that summary judgment should be granted in his favor, he does not believe that witness testimony is necessary. Defendants, however, have disputed Plaintiff's alternative request for a preliminary injunction in part by arguing that Marocco's plans for the agency are in keeping with USADF's statutory mission and that therefore the equities should weigh in Defendants' favor. Marocco's two declarations, and the contemplated witness testimony, may bear on this latter point.

This Court held a hearing on Plaintiff's motion for a temporary restraining order on March 11. At the conclusion of the hearing, this Court instructed Defendants that "[t]he person who's making these representations to the Department of Justice

[regarding Defendants' plans for the agency] is going to be required in the litigation on the PI to list in detail what steps were taken by the DOGE folks."  Transcript of Mot. for TRO at 35 (Mar. 11, 2025).  "[T]hey're going to be under oath to report to this Court what they did in this interim between today and the PI hearing."  *Id.*  "That person's going to be in this courtroom and on that witness seat and have to answer questions from me if it's not acceptable to this Court.  Remind them of that."  *Id.* at 36.

After denying Plaintiff's motion for a temporary restraining order, this Court ordered that "during the course of the litigation on the preliminary injunction, the Government must be prepared to provide testimony from Ethan Shaotran, Jacob Altik, and Nate Cavanaugh, under oath, as to what steps were taken to maintain USADF to 'the minimum presence and function required by law.'"  ECF No. 15 at 9 (internal quotation omitted).  "The Court expects, and will closely scrutinize, defendants' witnesses' testimony on how they maintained USADF's statutory requirements."  *Id.* at 10.

**3.** Plaintiff filed a motion for summary judgment or, in the alternative, for a preliminary injunction on March 21.  ECF No. 20.  With respect to the factors for preliminary injunctive relief, Plaintiff explained in his briefing that Defendants' plans to shutter the agency could not be reconciled with USADF's organic statute, *see* 22 U.S.C. §§ 290h-2, 290h-3; with the existing Congressional appropriation for the agency, which the agency is statutorily required to use to maintain existing grants and to award new grants, *see In re Aiken County*, 725 F.3d 255, 261 n.1 (D.C. Cir.

3

2013); or with statutorily-imposed requirements for consultation with Congress before the agency could seek to reprogram its funding.  ECF No. 20-1 at 35-37.

Defendants opposed Plaintiff's motion and cross-moved for summary judgment. ECF No. 31.  Defendants did not respond to Plaintiff's arguments concerning USADF's statutory duties.  Defendants, however, submitted a declaration from Marocco in which he asserted that "[a]s of today, March 31, 2025, I have taken no steps toward canceling any USADF contracts or grants,: and "[a]s of today, March 31, 2025, I have taken no actions with respect to termination of USADF staff."  ECF No. 31-3, ¶¶ 10-11.  Marocco further asserted that he "possess[ed] factual knowledge of the situation at USADF, and I am aware of no additional action or inaction taken at USADF."  ECF No. 31-3, ¶ 12.

Marocco had, in fact, taken "actions with respect to terminations of USADF staff." Almost three hours before Marocco submitted his declaration, he sent a notice informing three USADF employees that they were subject to a reduction in force.  Ex. P, Suppl. Feleke Decl. ¶ 7, ECF No. 33-5. These notices followed Marocco's March 18 notices to almost all USADF's employees placing them on administrative leave and prohibiting them from appearing at USADF's premises or accessing USADF's systems; Marocco had issued similar notices to employees at USADF's sister agency, the Inter-American Foundation (IAF), as a precursor to a reduction in force there. Ex. B, Feleke Decl. ¶¶ 31, 55, ECF No. 20-4.

Marocco had likewise taken steps toward canceling USADF contracts and grants. In a March 19 email from the Administrative Resource Center (ARC), a component

of the Department of the Treasury that provides financial management services for various agencies, including USADF, ARC alerted USADF that it had been informed that Marocco "intends to commence the termination of select USADF contracts and grants as early as today," and that ARC would honor Marocco's instructions because it had been advised that he was the President of the Foundation. ECF No. 20-13. That Marocco had not yet cancelled any grants is irrelevant—by informing ARC that he was going to, he had certainly (in Marocco's words) "taken . . . steps towards canceling . . . USADF contracts or grants," ECF No. 3-13, ¶ 10. Moreover, just over one hour after Defendants filed Marocco's declaration, at 12:17 a.m. on April 1, 2025, one of the DOGE employees detailed to USADF on Marocco's orders emailed Feleke (cc'ing Marocco) asking if they could "schedule a call 'to discuss the outstanding grants' and another call 'with your contracting officers to review descoping / cancellations.'" Ex. P, Suppl. Feleke Decl. ¶ 8, ECF No. 33-5.

In Plaintiff's combined response and reply brief, we alerted the Court to the grave concerns that have now arisen concerning Marocco's lack of candor with this Court, and we suggested that it would be appropriate for this Court to instruct that Marocco be one of Defendants' witnesses at the hearing that the Court has scheduled for April 16. ECF No. 33 at 2-4.

Defendants did not withdraw either the inaccurate declaration or their brief that relied on the inaccurate declaration. Instead, with their reply brief, they submitted a second declaration from Marocco, which asserted, "[r]egarding apparent confusion about my March 31, 2025 declaration, on March 30, 2025, I conditionally approved

that a future reduction in force could be actioned subject to legal and process review. At the time I signed the declaration on March 31, 2025, when I stated I had 'taken no actions with respect to terminations of USADF staff,' no action had yet been taken. On the evening of March 31, 2025, roughly three hours after I signed the declaration, three employees were terminated." ECF No. 35-1, ¶ 10. Marocco's second declaration asserts that, since the filing of his prior declaration, he had terminated additional employees of USADF and had cancelled 353 USADF grants and 43 USADF contracts. *Id.*, ¶¶ 11-13. Marocco's second declaration did not address the proof that Plaintiff had presented that he had "taken . . . steps towards canceling . . . USADF contracts or grants." Defendants' reply brief, like their opening brief, did not address the question of the scope of USADF's statutory obligations.

Marocco has removed all but ten of USADF's employees through reductions in force; the remaining ten employees are based domestically. Third Feleke Decl., ¶ 6. In addition, Marocco has canceled the contracts through which USADF had employed contract personnel, effective immediately; as a result, USADF no longer retains the services of any of its seven Washington-based contract employees domestically, or the termination of any of its fifteen country program coordinators, that is, foreign nationals who have served USADF on a contract basis to perform local oversight activities on behalf of the agency. *Id.*, ¶ 7. Marocco has further canceled almost all of the agency' partner grants, that is grants to local representatives who perform services for the agency including project design, program development, oversight, training, monitoring, and evaluation. *Id.*, ¶ 8. Although somewhere between one to

three partner grants have not been terminated, it is impossible for those partners to perform services for USADF without coordination with the agency's country program coordinators. Third Feleke Decl., ¶¶ 8, 9. It is accordingly impossible for USADF's remaining staff to fulfill their statutory obligation to administer the agency's existing grants (if any such grants remain), or their statutory obligation to use their remaining appropriation to award new grants to partners in Africa. Third Feleke Decl., ¶¶ 10, 18, 19.

Marocco's first and second declarations do not comply with this Court's instruction that the Defendants must explain "in detail" the steps that they are taking to ensure that USADF remain in compliance with its statutory obligations. Transcript of Mot. for TRO at 35; *see also* ECF No. 15 at 9-10. It is apparent that Defendants have ignored this Court's instructions on this score because they, in fact, have made no effort to reconcile their plans for the agency with USADF's statutory obligations.

**4.** As stated above, counsel for Plaintiff conferred with counsel for Defendants concerning this motion, and counsel for Defendants responded that they oppose this motion for the following reason: "This is a hearing on cross motions for summary judgment, not an evidentiary hearing and there are no disputes of material fact. The parties' dispute centers on whether Mr. Brehm was lawfully removed from his position as president of the Foundation, which is a purely legal issue for the Court to resolve. In addition, Mr. Marocco clarified his statements in his second declaration and thus there are no factual issues for the Court to resolve on reducing the functions

7

and presence of USADF.  Moreover, none of the other three individuals who you propose calling as witnesses have any relevant information and you have failed to specify what information, if any, you expect to elicit from them."

**5.** Given the inaccuracies in Marocco's declarations, and Defendants' failure to comply with this Court's directives, it is appropriate for this Court to establish procedures for the April 16 testimony of Defendants' witnesses. Plaintiff requests that this Court: (1) confirm that Peter Marocco, Ethan Shaotran, Jacob Altik, and Nate Cavanaugh are required to testify at this hearing, limited to the topics of (a) Defendants' efforts to reduce the presence and function of USADF and (b) inaccuracies in the declarations Marocco has submitted in this litigation; (2) order that for each witness, Plaintiff's counsel would be permitted to open with direct questioning (while each witness is designated as a hostile witness), followed by cross from Defendants' counsel and re-direct from Plaintiff's counsel; and (3) schedule the hearing, at a time of the Court's preference at 2:00 p.m. or earlier on April 16 to allow for the taking of this testimony and for counsel's arguments.

In the alternative, it would be appropriate for the Court to strike Marocco's two declarations (ECF No. 31-3 and ECF No. 35-1).  *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994) (noting court's "broad authority" to strike pleadings in response to a party's "failure to comply with the rule of conduct governing the litigation process"). Plaintiff also requests that the Court strike the portions of Defendant's briefing relying on those declarations.  Specifically, the first full paragraph of page 11, the first full paragraph of page 14, the carryover paragraph

of pages 15-16, the carryover paragraph of pages 20-21, the first full paragraph of page 23, and the carryover paragraph of pages 23-24 of Defendants' motion for summary judgment (ECF No. 31), and the Supplemental Background section om pages 1-2, along with the carryover paragraph of pages 11-12, of Defendants' reply brief (ECF No. 35), should be stricken.

April 14, 2025

Respectfully submitted,

_/s/ Joel McElvain_
Joel McElvain (DC Bar No. 448431)
Bradley Girard (DC Bar No. 1033743)
Orlando Economos (DC Bar No. 90013791)
Robin F. Thurston (DC Bar No. 1531399)
Skye Perryman (DC Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
jmcelvain@democracyforward.org
bgirard@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

_Counsel for Plaintiffs_