IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Ward Brehm**, <br><br>          Plaintiff, <br><br> v. <br><br> **Pete Marocco,** *et al.*, <br><br>          Defendants. | Civil Case No. 25-cv-660 |

**THIRD DECLARATION OF ELISABETH FELEKE**

I, Elisabeth Feleke, declare under penalty of perjury, under 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Chief Program Officer at the United States African Development Foundation (USADF).

2. I have previously submitted two declarations in connection with the filing of Plaintiff's Motion for Summary Judgment on March 21, 2025, and the filing of Plaintiff's reply brief on April 4, 2025.

3. I submit this declaration to supplement my prior declarations and to inform the Court of events arising since those submissions that are relevant to this action.

4. On April 7, 2025, fourteen employees of USADF received emails from Pete Marocco, who identified himself as "Acting President and CEO, USADF," informing these employees that they were being terminated from their employment

1

with the Foundation pursuant to a reduction in force (RIF), with an effective date of May 7, 2025. The emails to these fourteen employees, like the emails of March 31, 2025, to three employees described in my prior declaration, attached a memorandum, also from Pete Marocco in his purported capacity as Acting President and CEO, stating that "[t]his RIF is necessary for workforce reshaping of the United States African Development Foundation."

5. Two additional employees of USADF accepted offers to participate in the Deferred Resignation Program.

6. With these resignations, as well as the termination of the employment of seventeen employees that Mr. Marocco announced on March 31 and April 7, USADF has been reduced to ten employees (not counting three employees of the U.S. DOGE Service who have been detailed to USADF on Mr. Marocco's orders).

7. USADF also has employed contract personnel. Mr. Marocco has cancelled these contracts, effective immediately, resulting in the termination of seven contractors in the Washington, D.C., area, and the termination of fifteen country program coordinators, that is, foreign nationals who have served USADF on a contract basis to perform local oversight activities on behalf of the agency.

8. In addition to contracts with country program coordinators, USADF has also retained the services of local representatives in nineteen countries through partner grants. Recipients of partner grants have performed services for USADF including capacity building to grantees, project design, program development, oversight, training, monitoring, and evaluation. Mr. Marocco has terminated almost

all of USADF's partner grants, effective immediately. I understand that one partner grant in Kenya has not been terminated. It is possible that USADF's partner grants in Burkina Faso and Cote D'Ivoire have not been terminated. Whether the grants remain in place or not, these grantees would depend on interaction with country program coordinators to be able to perform services on behalf of USADF. Because all of the agency's country program coordinators have been terminated, the recipients of partner grants no longer have the means to perform services for the agency.

9. As a result, USADF no longer has any personnel in Africa, either employed directly by the agency or performing services under a contract or grant, who are able to perform grant implementation services for USADF.

10. The remaining employees, all of whom are based domestically, cannot perform the statutory functions of USADF. In order to administer grants to partners in Africa that fulfill the purposes that Congress has directed USADF to fulfill in 22 U.S.C. §§ 290h-2 and 290h-3, USADF personnel must be able to perform portfolio management and oversight duties including the solicitation and review of quarterly reports from grantees, as well as the review of disbursement requests, site visit reports, project audits, work plans and performance assessments, implementation-related amendments, and close outs.

11. In addition, USADF personnel must be able to perform annual portfolio reviews to evaluate performance indicators of all active grants, including the grading of these grants based on project-specific performance indicators.

12. USADF personnel must also be able to conduct quarterly meetings with, and reports to, strategic government partners in six countries as well as private sector partners in four countries.

13. In order to comply with Congressional instructions to devote $45 million to grants to African partners through September 30, 2025, USADF personnel must also be able to perform activities relating to the awarding of new grants, including the solicitation of grant proposals, the screening of thousands of applicants for eligibility and fit, and the performance of preliminary site visits to hundreds of potential grantees in over twenty countries.

14. As a matter of due diligence, USADF must also be able to review business registration requirements, review corporate documentation including documents of incorporation and financial statements, and perform identity checks of shareholders and boards of directors.

15. For successful grant applicants, USADF personnel must also be able to complete project design and development of the grants, including market analyses, technology assessments, budget and financial analyses, and environmental screening reports.

16. USADF personnel must also be able to perform notifications and coordination with United States embassies in more than twenty countries; manage USADF assets located abroad including vehicles, equipment, and offices; and maintain oversight of foreign bank accounts.

17. USADF staff must also be able to implement and respond to financial audits of the agency conducted by FISMA, OIG, and GAO.

18. The remaining employees of USADF personnel cannot perform any of these functions. They cannot perform any of the actions that are necessary to award new grants using the funds that Congress has appropriated for this purpose, and they cannot perform any of the actions that are necessary for effective implementation and oversight of the agency's existing grants. Indeed, the remaining employees do not have the capability to establish contact with USADF's existing grantees.

19. I understand that Mr. Marocco asserts that he has cancelled 353 of USADF's existing grants, and that 148 grants remain active. Whether or not these 148 grants have been formally terminated, USADF no longer has the capability to pay amounts remaining to be disbursed on these grants, to coordinate with foreign partners to arrange the payment of amounts those partners have pledged in matching funds, or to maintain basic functions of oversight to ensure that grantees are performing their functions consistently with the terms and conditions of each grant. As a result, every grant of USADF has effectively been terminated, even if some grants continue to appear on the agency's records as active.

Washington, DC  /s/ Elisabeth Feleke
April 14, 2025  Elisabeth Feleke