UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WARD BREHM, <br><br> Plaintiff, <br><br> v. <br><br> PETE MAROCCO, et al., <br><br> Defendants. | Civil Action No. 25-0660 (RJL) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLARIFICATION OR IN THE ALTERNATIVE TO STRIKE DECLARATIONS**

Defendants, various high-level government officials, including the President, sued in their official capacities, respectfully submit this memorandum in opposition to Plaintiff Ward Brehm's motion clarification or, in the alternative, to strike declarations. *See* Pl. Mot. (ECF No. 37). The Court should deny Plaintiff's motion because it violates Local Rule 65.1(c), which requires a written submitted to the Court at least 72 hours before the hearing and because the type of testimony that Plaintiff seeks to obtain is not relevant to the legal question before the Court.

The issue in this case is whether Plaintiff Ward Brehm was lawfully removed from the presidency of the U.S. Africa Development Foundation ("the Foundation"). Plaintiff's motion for summary judgment argues his removal was *ultra vires* and should be set aside. *See generally* Pl. Mot. (ECF No. 20). Defendants' cross motion for summary judgment argues that Plaintiff was never lawfully appointed Foundation president in the first place and even if he was, Peter Marocco, the acting chair of the Foundation Board, lawfully removed Plaintiff from the position. *See generally* Def. Mot. (ECF No. 31). Indeed, Plaintiff acknowledges "[t]here are no disputes of material fact with respect to the motion for summary judgment." Pl. Mot. ¶ 1. Plaintiff summarizes

the disputes between the parties "[a]s a matter of law" as to whether Marocco has authority to serve as the Acting Chair of the Board and the authority to remove Plaintiff. *Id.*

To resolve this legal dispute, as acknowledged by Plaintiff, the Court need only examine the parties' legal arguments regarding the scope of the President's powers in Article II of the Constitution which can be done without live witness testimony. *See Mangreum v. State Insurance Co.*, Civ. A. No. 19-1775, 2020 WL 6220746, at *1 n.1 (E.D. Pa. Mar. 2, 2020) ("Given the nature of this dispute and the fact that it is being reviewed on a motion for summary judgment, a credibility determination after hearing live witness testimony is unnecessary."); *Richardson v. District of Columbia*, 522 A.2d 1295, 1300 (D.C. 1987) (Terry J., concurring) (describing live testimony in a summary judgment hearing as "highly unusual," "extremely rare," and "unwise.").

To the extent that Plaintiff seeks to present live testimony to support his motion for preliminary injunction, the Court should not allow live testimony because Plaintiff failed to comply with the local rules in seeking an opportunity to testify. Local Rule 65.1(d) requires that "any party who wishes to offer live testimony or cross-examine an affiant at the hearing shall so request in writing 72 hours before the hearing and shall provide the Court and all other parties a list of the witnesses to be examined and an estimate of the time required." Plaintiff has not complied with this explicit requirement.

Plaintiff, through counsel, contacted counsel for Defendants on April 11, 2025, at 1:40 p.m. notifying Defendants that Plaintiff intended to seek witness testimony at the April 16 hearing and requested that Defendants' position by close of business that same day. Defendants responded promptly that they opposed the motion. Yet, inexplicably, Plaintiff waited until shortly before 2:00 p.m. on April 14, 2025, roughly forty-nine hours before the April 16 hearing to submit his request. Plaintiff's failure to timely seek this relief has unduly prejudiced Defendants because

Defendants are now left with just two days to identify and prepare witnesses to testify. Indeed, when Plaintiff did not file his motion on the evening of April 11, Defendants believed that Plaintiff had reconsidered his decision to seek witness testimony.

More broadly, the Court need not resolve the question of whether Marocco's plans are consistent with the Foundation's minimum statutory function because the parties' dispute centers simply on whether Brehm was lawfully removed from his position as president of the Foundation. Even if the Court finds in Plaintiff's favor and orders that he be installed as president of the Foundation, Plaintiff would still be subordinate to the Foundation Board and thus could not override any changes that the Board made to the Foundation. 22 U.S.C. § 290h-5(d)(1). Thus, even if he prevails, Plaintiff will not be able to run the Foundation in a manner inconsistent with the President's Executive Order to reduce the Foundation to its core statutory functions. Exec. Order No. 14,217, 90 Fed. Reg. 10577 (Feb. 25, 2025).

Nor have Plaintiffs presented any basis to seek testimony from Ethan Shaotran, Jacob Altik, and Nate Cavanaugh. Their motion does not address those individuals at all except to note that this Court anticipated their testimony might be appropriate in a prior order. But that order only alerted the government to be prepared to provide testimony during these proceedings. Mem. Order at 9 (ECF No. 15). It did not find that such testimony was relevant or necessary. Because Plaintiffs have made no showing that testimony from these individuals would be material to any disputed question in this case, they have forfeited their claim to compel their testimony. And in any event, Shaotran, Altik, and Cavanaugh do not have further information regarding Defendants' efforts to reduce the Foundation to its minimum statutory function. Any need for their testimony thus would be "outweighed by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Local R. Civ. 65.1(c).

Even though it is not material to the legal question presented in this case, consistent with the Court's order that Defendants provide testimony "as to what steps were taken to maintain [Foundation] to 'the minimum presence and function required by law,'" Mem. Order at 9 (ECF No. 15) Defendants submitted declarations from Marocco explaining his plans for the Foundation under his leadership. *See* Marocco Decls. (ECF Nos. 31-3, 35-1).  Marocco has terminated nineteen employees, canceled 350 grants, and canceled forty-three contracts.  2d. Marocco Decl. ¶¶ 10-13 (ECF No. 35-1).  But Marocco has retained thirteen employees, 148 grants, and eight contracts. *Id.* ¶¶ 14-16.  Moreover, Marocco clarified any potential misunderstandings from his first declaration by explaining,

> on March 30, 2025, I conditionally approved that a future reduction in force could be actioned subject to legal and process review. At the time I signed the declaration on March 31, 2025, when I stated I had "taken no actions with respect to terminations of USADF staff," no action had yet been taken. On the evening of March 31, 2025, roughly three hours after I signed the declaration, three employees were terminated.

*Id.* ¶ 10.  Additionally, nothing in the March 19, 2025 email that Plaintiff cites regarding grants states that Marocco had taken any steps toward terminating grants.  Compare ARC Email (ECF No. 20-13 at 3) with Marocco Decl. ¶ 10.

Because Marocco has fully detailed his plans to reduce the Foundation to its minimum statutory function, any benefit to live testimony would be "outweighed by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Local R. Civ. 65.1(d).  To the extent Marocco's first declaration was imprecise, he has since clarified his plans for the Foundation in his second declaration.  Notably, even as he dedicated four pages of his motion criticizing Marocco's first declaration, Plaintiff does not characterize any statements in Marocco's second declaration as inaccurate.  Pl. Mot at 4-8.  Thus, the Court should not strike either of Marocco's declarations.

In short, Plaintiff's motion should be denied because any testimony that the Court orders would not assist the Court in deciding the narrow question before it—namely, whether the former Board members who purported to appoint Brehm president of the Foundation had the authority to make that appointment or whether Marocco, designated by President Trump to act as Chair of the Foundation Board had the authority to remove Brehm.

| | |
|---|---|
| Dated: April 14, 2025<br>Washington, DC | Respectfully submitted<br><br>EDWARD R. MARTIN, JR., D.C. Bar #481866<br>United States Attorney<br><br>By:      /s/ John J. Bardo<br>     JOHN J. BARDO, D.C. Bar #1655534<br>     Assistant United States Attorney<br>     601 D Street, NW<br>     Washington, DC 20530<br>     (202) 870-6770<br><br>*Attorneys for the United States of America* |

- 5 -