```
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3   WARD BREHM,                      )
                                      )
 4          Plaintiff,                )
                                      )
 5       vs.                          )  CASE NO. 1:25-cv-00660-RJL
                                      )
 6   PETE MAROCCO, et al.,            )
                                      )
 7          Defendants.               )
     _____    )
 8

 9

10                    TRANSCRIPT OF MOTION HEARING
           BEFORE THE HONORABLE RICHARD J. LEON, DISTRICT JUDGE
11                    Wednesday - April 16, 2025
                        3:41 p.m. - 4:21 p.m.
12                         Washington, DC

13

14   FOR THE PLAINTIFF:
             Democracy Forward
15           BY:  JOEL L. McELVAIN, BRADLEY GIRARD,
                  ROBIN THURSTON and ORLANDO ECONOMOS
16           P.O. Box 34553
             Washington, DC 20043
17

18   FOR THE DEFENDANTS:
             DOJ-USAO
19           BY:  JOHN BARDO and JOHN TRUONG
             601 D Street, NW
20           Washington, DC 20530

21
     _____
22                         SONJA L. REEVES
                      Registered Diplomate Reporter
23                      Certified Realtime Reporter
                      Federal Official Court Reporter
24                      333 Constitution Avenue, NW
                          Washington, DC 20001
25           Transcript Produced from the Stenographic Record
```

1                (Call to Order of the Court at 3:41 p.m.)

2            DEPUTY CLERK:  We're on the record in Civil Action

3    25-660, *Ward Brehm versus Pete Marocco, et al.*

4            Starting with plaintiff's counsel, please approach the

5    podium and state your appearance for the record.

6            MR. McELVAIN:  Good afternoon, Your Honor.  Joel

7    McElvain from Democracy Forward for the plaintiff Ward Brehm.

8    With me at counsel table are Orlando Economos, Bradley Girard

9    and Robin Thurston.

10           THE COURT:  Welcome.

11           MR. BARDO:  Good afternoon, Your Honor.  Assistant

12   United States Attorney John Bardo on behalf of the government.

13   I'm joined at counsel table by assistant United States Attorney

14   John Truong.

15           THE COURT:  Welcome.

16           All right, Counsel.  We're here for argument on

17   summary judgment cross-motions.  Each side can have 20 minutes

18   and 5 minutes for rebuttal.

19           MR. McELVAIN:  Thank you, Your Honor, and may it

20   please the Court.  Defendants' position turns on two arguments

21   that have no basis in the law.  First, they forthrightly

22   acknowledge that they have no statutory basis whatsoever to

23   name an acting member of USADF's board.  They nonetheless

24   assert that they have a free-floating power to name an acting

25   board member, even though Congress specified that the Federal

1  Vacancies Reform Act is the exclusive means to name acting

2  officials, and even though Congress withheld that authority in

3  that statute.

4         And even on top of that, the USADF statute itself

5  states that the only means to join the board is through Senate

6  confirmation.  Defendants' position is a breathtaking assertion

7  of power which has never been endorsed by any court and which

8  was rejected as recently as Judge Alikhan's opinion in the

9  *Aviel* case two weeks ago.

10        Second, defendants argue, ignoring precedent to the

11 contrary, that they need not provide actual notice to terminate

12 principal officers.  They assert that removal can be

13 accomplished either through sending emails to non-existing

14 email addresses or by a third party sending a fake email that

15 does not even mention removal to another third party.

16        THE COURT:  That issue has never been addressed in the

17 Court of Appeals.

18        MR. McELVAIN:  It's been addressed by the Supreme

19 Court in *In Re Hennen*.

20        THE COURT:  Actual?

21        MR. McELVAIN:  *In Re Hennen* requires express notice

22 and states that you can accomplish express notice of removal in

23 two possible ways.  One is through express notice given to the

24 old officer themselves, or through the appointment of another

25 officer and that notice expressly reaches the old officer, and

1    at the moment that notice reaches the old officer, that is when

2    removal is accomplished.

3          THE COURT:  The defect here was that they had the

4    wrong spelling?

5          MR. McELVAIN:  The defect here was that there was no

6    email at all.  Nobody ever received an email.  We have some

7    printouts of some emails that were in the TRO record that the

8    defense submitted, but that was not supported by any

9    declaration, either at the TRO stage or at the PI stage.  There

10   is simply no competent evidence that any email was ever sent

11   ever.  So nothing ever reached the board members.  They had no

12   reason to believe that their status was in doubt as to their

13   continued service on the board.

14         THE COURT:  Why should there have to be actual

15   notice --

16         MR. McELVAIN:  Well, I think it makes sense that --

17         THE COURT:  -- once the president has made a decision?

18         MR. McELVAIN:  We don't know that the president has

19   made a decision.

20         THE COURT:  Hold on.

21         MR. McELVAIN:  Of course.

22         THE COURT:  Keep my court reporter in mind.  She can't

23   take us both down simultaneously.

24         Once the president has made a decision to remove the

25   members of the board and asks the PPO, personnel office, to

1   effectuate that, isn't that enough?

2       MR. McELVAIN:  We don't have a record that that

3   actually happened here, Your Honor.  We have a record that

4   there was an email sent that the president had named Pete

5   Marocco to the board, and we have a characterization of an

6   email that the presidential personnel office, in sending that

7   missive along, characterized the board -- characterized USADF

8   as boardless, but whether that was Trent Morse's own

9   characterization, whether he was attempting to describe the

10  thought process that was in the president's mind, what he meant

11  by boardless, whether he thought that USADF needed more

12  direction, whether he thought the board members had resigned,

13  whether he thought that a prior notice of removal had reached

14  them and he incorrectly believed that, we don't know what that

15  means.  All we know is that he used that adjective, but that's

16  not express notice of removal, as is required.

17      THE COURT:  Bob Dylan once had a lyric in one of his

18  songs, "You don't need a weatherman to know which way the wind

19  is blowing."

20      Tell me, I can't figure out, that he relieved four

21  members of that board he inherited, you're saying there is

22  serious question about that?

23      MR. McELVAIN:  Not only is there serious question --

24      THE COURT:  That the PPO was just acting on its own

25  initiative?

1          MR. McELVAIN:  No, it's not that the PPO was acting on

2    its own initiative.  There was an email from the PPO saying

3    that Trent Marocco [sic] had been appointed an acting member of

4    the board, which in and of itself is a nullity because there is

5    no such thing as an acting member of the board.

6          But then Trent Morse's email said he's being appointed

7    to the boardless USADF, but nobody has any idea what that

8    means.  It was a head-scratcher.  Why would he use that

9    terminology?  Whatever it is, it is not an express notice of

10   removal, which is required by *In Re Hennen*.

11         If I could back up for a moment, Your Honor, to review

12   the circumstances that got us to that point.  The DOGE

13   representatives came to USADF on that first day, I believe -- I

14   don't have the exact day, but in February.  They asked for the

15   contact information for all of the board members.  The USADF

16   management team said that's personal information, we need to

17   get their information -- we need to get their permission to

18   share that information, let me go do that.

19         And she did obtain that permission and returned, but

20   by the time they returned, they were gone, and they never

21   followed up for that information at all.  At any moment in time

22   they could have asked for that contact information and they

23   would have gotten it.  She had permission to share it.  They

24   just never bothered to get that contact information.

25         So what happens next, one board member, Ward Brehm,

1    does receive the notice of termination, which is express.  It

2    states, "You are hereby removed from your position as a board

3    member of USADF."  Nobody else received a similar

4    communication.  They would have had -- it was reasonable for

5    them to assume that a similar email would be coming to them if

6    there was any intent whatsoever to remove them from the board.

7            Most likely, given the state of affairs that anybody

8    knew at that time, the inference from that to be drawn is one

9    board member is being removed as a warning shot across the bow

10   or something.

11           THE COURT:  Is that really the most reasonable

12   inference?

13           MR. McELVAIN:  I do believe so, because nobody ever

14   received that notice.  It was very, very easy for them to send

15   the notice to the right contact information for the board

16   members, and it just simply never arrived.

17           THE COURT:  None of the board members picked up the

18   phone and called the presidential personnel office to check on

19   their status?

20           MR. McELVAIN:  We don't have a record of that, Your

21   Honor.

22           THE COURT:  I didn't ask if you had a record.  I asked

23   you do you know if any of the other members contacted PPO to

24   see if they were also being relieved.

25           MR. McELVAIN:  I have to fall back on the notion that

1    we don't have a record of that, but for the purposes of

2    discussion, we can assume that the answer to that is no.

3            THE COURT:  I assume you talk to your clients.  You

4    didn't ask them that question?

5            MR. McELVAIN:  I think we can assume for the purposes

6    of this record that the answer is no.  That's the best I can

7    give you.  For the purpose of this discussion, I will concede

8    for the purposes of engaging in this dialogue that the answer

9    to that is no, that no such phone call --

10           THE COURT:  Is that what this is, a dialogue?  I

11   thought you were making an argument.

12           MR. McELVAIN:  For the purposes of this argument.

13           THE COURT:  Go ahead.

14           MR. McELVAIN:  But again, express notice is required

15   under the case law, and there is an obvious reason for that.

16   There could be moments in time where it's really, really

17   important to know the precise moment when one person is removed

18   from a position and one other person takes on the duties of

19   that office.  So the case law is quite clear that the moment

20   when that happens is when express notice is reached.

21           Now, the case law mostly deals with the activities of

22   U.S. marshals in the 19th century, but that's an example of a

23   circumstance where it would be important to know when the

24   actual removal was effected because the marshal could take some

25   action and that action could have legal effect until such time

1    as they were aware that they been removed from their position.

2    And again, no express notice was reached -- was provided here.

3            Another way to get at the same point, if I may, is

4    there is a discussion in the recent OLC opinion that the

5    defendants have provided themselves, which discusses the point

6    of how the removal power is not delegable, it must be exercised

7    by the president.  So if there had been an email from the

8    presidential personnel office saying the president has decided

9    that he is terminating you from that position -- from this

10   position, there would be no dispute on this record that that

11   would be adequate.  And that in fact is the email that went to

12   Ward Brehm, and there is no dispute here that he was removed.

13           But an email where Trent Morse states this is a

14   boardless enterprise, we are appointing Pete Marocco to this

15   position, that's his characterization.  That is his choice to

16   use an adjective to describe some other action the president

17   has taken that is different from an act of ordering the removal

18   of an official.

19           We simply don't know why Trent Morse used that

20   adjective, whether the adjective was a quotation from the

21   president, whether it was his own gloss on his understanding of

22   what the president may or may not have done.  We just simply

23   don't have any basis on that, and, again, the case law requires

24   express notice of removal, not vague emails, not insinuations

25   that would require some attempt to decipher what somebody may

1    have meant.

2            And again, it's a very, very easy standard to meet.

3    All they needed to do was get the correct contact information,

4    which was available to them at any time, at any relevant time

5    from the record here from day one on, send the notice of

6    removal to that correct address, and there would be no dispute

7    here that removal had in fact been accomplished.

8            THE COURT:  So Brehm's basis to have standing to go

9    forward turns on this issue?

10           MR. McELVAIN:  Well, for standing purposes, you assume

11   that we're correct on the merits.  And there is ample precedent

12   in the DC Circuit and otherwise we have quoted in our brief

13   that you don't assume we lose on the merits.  We assume that

14   we're correct on the merits for the purposes of assessing our

15   Article III standing.

16           So beginning from the premise that we are correct on

17   this notion that the board was not removed, then everything

18   follows from there.

19           THE COURT:  If you're wrong on that, then he has no

20   standing?

21           MR. McELVAIN:  If we're wrong on that, then we're

22   wrong on the merits, but that's not a standing issue.

23           But turning to the question of whether Pete Marocco

24   could possibly have been appointed to a position as acting

25   member of the board where no statute grants that authority at

1    all.  The appointments clause is quite clear.  There are two,

2    and only two methods, to appoint officers of the federal

3    government.  One is through Senate confirmation, and then the

4    second is such other officers under -- under such procedures as

5    Congress shall designate by law as Congress deems fit.

6         There is no third method.  Actually, there is a third

7    method, that's a recess appointment under the recess

8    appointments clause, but apart from those one, two and three

9    methods, there is no additional method whatsoever.  It is

10   either Senate confirmation or under some procedure that

11   Congress has designated by law.

12        And the procedure Congress has designated by law is

13   the Federal Vacancies Reform Act, which Congress took care in

14   1998 to specify is the exclusive means for the appointment of

15   an acting official, unless another statute also expressly

16   provides a means to appoint an acting official.  And Congress

17   expressly withheld the authority to name an acting official to

18   a multi-member board like that of USADF.

19        Congress in enacting FVRA in 1998 was quite explicit

20   in the Senate report accompanying it that the reason they were

21   enacting the Senate report was because there is no inherent

22   power of presidential appointment, but that in the years

23   leading up to 1998, there had been some issues where the

24   executive had asserted an inherent power contrary to Congress's

25   wishes, and so the entire point of enacting the FVRA was to cut

1    off that assertion of power to the executive and to make

2    absolutely clear that Congress was occupying the field and

3    granting an authority to appoint acting officials only to the

4    limited extent and the limited means that Congress had itself

5    specified in that statute.

6         And Congress so recognized that Congress had

7    accomplished that goal in *NLRB versus Southwest General*, which

8    described the FVRA as a grant of, quote, "limited authority,"

9    that is, not as a restriction on a free-floating presidential

10   authority that otherwise existed, but as a grant of limited

11   authority whose terms must be observed.

12         *Southwest General* also has a useful discussion of the

13   background leading up to the 1998 FVRA amendments, which I

14   recognize that this Court cited in the TRO opinion that this

15   Court has already issued in this case.

16         So there is no free-floating grant of inherent

17   authority.  They must find a statute that could possibly grant

18   them authority, and there is no such statute.

19         Turning to the USADF statutes, they only provide for

20   Senate confirmation.  The only means to join the board of USADF

21   described in the USADF statute is through Senate confirmation.

22   That's in 290h-5(a)(1).  And moreover, Congress understood the

23   possibility that there might be vacancy if there's a delay in

24   confirmation of a successor, and they chose to address that

25   potential problem, not by allowing for the appointment of

1    acting board members, but by enacting a holdover provision that

2    the old members would hold over in their seats until their

3    successor is confirmed, not until an acting member is

4    appointed, until a new successor who is Senate confirmed

5    replaces them in that seat.

6        Turning to the FVRA, that statute itself is quite

7    explicit that it does not provide any means whatsoever to

8    appoint acting members to a multi-member board.  That's in 5

9    U.S.C. 3349(c).

10        And absent an appointment that's authorized under the

11   FVRA, that office shall remain vacant.  That's 3348(b)(1).  Any

12   action by anybody claiming to be an acting officer invalidly

13   shall have no force or effect.  That's Section 3348(d)(1).  And

14   it may not be ratified.  That's Section 3348(d)(2).  All of

15   those provisions explicitly under the language of the statute

16   include persons claiming to hold office on a multi-member board

17   that is under an agency that's covered by 3349(c).

18        Now, in their reply brief, the defendants have

19   attempted to cite and quote Section 3348(d)(1) as a point in

20   their favor, and I candidly did not follow their reasoning, but

21   if I could, I would just like to walk through the actual text

22   of the language of Section 3348(d)(1), because I think the

23   parties are in agreement that this case turns on that explicit

24   text.

25        To quote that provision, "An action taken by any

1    person who is not acting under Section 3345, 3346 or 3347 or as

2    provided by Subsection (b) in the performance of any function

3    or duty of a vacant office to which this section," and a list

4    of sections including 3349, "apply shall have no force or

5    effect."  Let's take that piece by piece.

6            "An action taken by any person."  That is Pete

7    Marocco.

8            "Who is not acting under Section 3345, 3346 or 3347 or

9    as provided in Subsection 3348(b)."  None of those provisions

10   apply here, and I don't understand the defense to be claiming

11   otherwise.  He's not acting under any of those sections.

12           "In the performance of any function or duty of a

13   vacant office to which Section 3349(c) applies."  Again, this

14   explicitly covers the USADF board.

15           And then that sentence concludes "shall have no force

16   or effect."  QED, that's the end of the discussion, because

17   this provision squarely applies to the actions that Pete

18   Marocco is taking under his invalid claim, to be an acting

19   member of the USADF board or acting chair of the USADF board,

20   none of the actions he is taking can have any force or effect.

21   In the words of the Supreme Court in *NLRB versus Southwest

22   General*, any of those actions are void ab initio.

23           So as to the question of remedy, this is an area where

24   Congress has withdrawn this Court's discretion.  The relief

25   that must be ordered here is mandatory under the language of

1    the FVRA itself.  Congress has specified the remedy that must

2    be ordered.  Any of his actions must be held to be void ab

3    initio, including his purported termination of Ward Brehm,

4    including his purported appointment of himself to be the

5    president of the foundation while also serving on the board of

6    directors, including the reductions in force that he has

7    recently ordered, including the cancellation of grants and

8    contracts that he also recently ordered.

9            With that, I would invite the Court's questions, if

10   there is anything you'd like me to follow up on.

11           THE COURT:  I don't have any.

12           MR. McELVAIN:  Thank you, Your Honor.

13           MR. BARDO:  Good afternoon, Your Honor.  This case can

14   be resolved simply by finding that Mr. Brehm was never

15   appointed president of the foundation to begin with.

16           THE COURT:  No standing?

17           MR. BARDO:  Yes.  If he wasn't ever appointed

18   president of the foundation, he would not have standing to

19   bring the rest of the case.  That's correct, Your Honor.

20           THE COURT:  That would apply to both himself as well

21   as Mr. Marocco?

22           MR. BARDO:  Yeah.  He wouldn't be able to challenge

23   any actions of Mr. Marocco going forward, because Mr. Brehm's

24   affiliation with the foundation would have ended the moment he

25   was removed.

1          THE COURT:  Why do they have it wrong on standing?

2          MR. BARDO:  Why do they have -- they have it wrong

3  because Mr. Brehm was never appointed president of the

4  foundation.  His affiliation with the foundation ended when he

5  -- and Mr. Brehm admits that he received this email -- when he

6  received the email from the presidential personnel office that

7  his services on the board were no longer needed.

8          And the rest of the board members I understand they

9  say they didn't receive the email.  I take them at their word

10  that they didn't receive them, but there is no dispute that

11  they were aware of an email that was sent to the chief

12  financial officer saying that because the foundation was

13  boardless, President Trump was going to designate Peter Marocco

14  to act as chair of the foundation board.

15          And plaintiff -- Mr. Brehm saying that this isn't

16  sufficient to establish notice, these board members are --

17          THE COURT:  He says actual notice is a requirement

18  based on a Supreme Court opinion.

19          MR. BARDO:  Well, we would argue this is actual notice

20  because each of the board members submitted declarations saying

21  they were aware of this email and that they had been told that

22  the foundation was boardless.  And for them to just say, oh, we

23  don't understand what that means, they are just disregarding

24  evidence that's plainly in front of them that they have been

25  removed.

1          And even if they hadn't received that email, we still

2     think that notice to the CFO is sufficient because the CFO is

3     an agent of the foundation, and Mr. Brehm doesn't dispute that.

4          THE COURT:  So if the notice was adequate -- you're

5     saying if the notice was adequate, then the three other members

6     of the -- four other members of the board, no longer on the

7     board, they couldn't appoint Mr. Brehm as the president?

8          MR. BARDO:  That's exactly right, Your Honor.

9          THE COURT:  If he wasn't the president, he wouldn't

10    have standing to challenge his own situation as well as

11    Mr. Marocco's situation?

12         MR. BARDO:  That's exactly right, Your Honor.  Yes,

13    that's the easiest way for the Court to resolve this case.

14         THE COURT:  Basically, they picked the wrong plaintiff

15    because there are other people they could have picked who might

16    have had standing?

17         MR. BARDO:  In theory, I suppose, Your Honor, but I

18    wouldn't be able to --

19         THE COURT:  You wouldn't even concede that?

20         MR. BARDO:  In theory, I would say it's possible, but

21    I would be uncomfortable commenting hypothetically, but in

22    theory, yes, I think that's possible.

23         But does the Court have any further questions on

24    the --

25         THE COURT:  I want to hear your argument.

1        MR. BARDO:  You mean on -- I'm asking about the notice

2   issue.  I was going to move on to the next part of the

3   argument.

4        THE COURT:  Go on to the next part.

5        MR. BARDO:  So with the next part of the argument,

6   even if the Court were to find that these board members were

7   not removed and they did have the power to appoint Pete Marocco

8   as president of the foundation, the Court can still find in our

9   favor because at some point the board members were removed and

10  Mr. Marocco was designated as the acting chair of the

11  foundation board.

12        And when he was designated acting chair of the

13  foundation board, he had the authority to remove Mr. Brehm from

14  his position as president of the foundation and then designate

15  himself as president of the foundation in his replacement.

16        Now, the president's authority to designate

17  Mr. Marocco as acting chair of the board comes from his

18  inherent authority under Article II.  I'm sure the Court is

19  familiar with the three zones of presidential power in

20  *Youngstown Sheet & Tube Company versus Sawyer*.  We're in zone

21  two, where Congress hasn't put an overt restriction on the

22  president's power and the president then exercises his inherent

23  authority to designate someone to the foundation board who is

24  willing to run the foundation that's consistent with his vision

25  and his right to exercise all of the executive power rather

1    than allowing Mr. Brehm to run the foundation consistent with

2    his own way of how he thinks the foundation should be run.

3            The foundation is subordinate to the president and the

4    executive branch, so the foundation needs to be run consistent

5    with the president's agenda.

6            The Federal Vacancies Reform Act issue that Mr. Brehm

7    brings up, Section 3349(c) excludes from the Vacancies Act any

8    member who is appointed by the president by and with the advice

9    and consent of the Senate to any board, commission or similar

10   entity that is composed of multiple members and governs

11   independent establishment -- and governs an independent

12   establishment or government corporation.

13           There is no dispute that the foundation would fall

14   under this category.  And the statute up top in the heading

15   says that Sections 3345 through 3349(b) do not apply to an

16   entity like the foundation.  And within that string of statutes

17   from 3345 to 3349(b) is 3348.  And for that reason, a ruling

18   voiding the actions that Mr. Marocco has taken as president of

19   the foundation wouldn't be an available remedy to Mr. Brehm.

20           I know Mr. Brehm's counsel acknowledged the OLC

21   opinion about the board and foundation -- the boards and

22   foundations, but this position by the Office of Legal Counsel

23   goes -- they have advised presidents of his inherent authority

24   to designate acting members of multi-member boards at least

25   going back to President Carter.

1           There is an OLC opinion that we cited from 1977

2    involving the Home -- I believe it's the Home Mortgage Board,

3    saying that the president -- that President Carter had the

4    authority to designate an acting member of that board.  And in

5    the Senate report where the Senate passed the 1998 amendments,

6    which is where -- which is where these provisions that are at

7    issue in this case, where those provisions of the Federal

8    Vacancies Act come from, the Senate -- Court's indulgence, Your

9    Honor.

10          (Pause)

11          MR. BARDO:  The Senate said that this has always been

12   the case with respect to the Vacancies Act, meaning that these

13   types of boards, like the foundation, don't apply to the

14   Vacancies Act.  The Senate says, "This has always been the case

15   with respect to the Vacancies Act, and the committee wishes to

16   avoid any confusion that might result from the enactment of a

17   replacement statute on this point."

18          So Congress would have been aware that previous

19   presidents had exercised their inherent authority to designate

20   members of these multi-member boards prior to enacting that

21   amendment to the Federal Vacancies Act in 1998.

22          That concludes my arguments on the merits.  Does the

23   Court have the any questions?

24          THE COURT:  No.

25          MR. BARDO:  Would you like me to discuss irreparable

1  harm?

2          THE COURT:  Sure, if you would like to.

3          MR. BARDO:  Yes.  So with respect to the preliminary

4  injunction factors, there would be no irreparable harm that --

5          THE COURT:  This is summary judgment.

6          MR. BARDO:  Well, I thought it was both.  Okay.  I was

7  bringing it up because I thought there was a chance the Court

8  might enter the PI and then think about summary judgment

9  further, but if that's --

10         THE COURT:  Why write two opinions when I can write

11 one.

12         MR. BARDO:  That's correct, Your Honor.

13         THE COURT:  We're not underworked at the moment in

14 this circuit.

15         MR. BARDO:  I understand, Your Honor.  If the Court

16 doesn't have any further questions, I'll rest.

17         THE COURT:  You can use your five minutes for rebuttal

18 after he does his, if he has any.

19         MR. BARDO:  Understood, Your Honor.

20         THE COURT:  Mr. McElvain?

21         MR. McELVAIN:  Just a few points, Your Honor.  First,

22 on the question of notice.  I understood my colleague to refer

23 again to the printouts of the initial set of emails, which are

24 not supported by any declaration.  They were not supported by

25 any declaration or affidavit in the TRO papers or in the

1    current set of papers on summary judgment briefing.  They are

2    simply not competent evidence.  They are not in this case.

3         What we do have in the record is the declarations from

4    each of the board members saying they never received it, and,

5    of course, they never received it because they didn't even have

6    the email addresses that those notices were purportedly sent

7    to.  So I mean, those emails I think are simply out of the case

8    because there is just simply no competent evidence of them in

9    the first place.

10        Now, to the question of the email from Trent Morse to

11   Matthew Zahui characterizing USADF as boardless.  Again,

12   defendant submitted no evidence of their own on this issue at

13   all.  The evidence that we do have in this case is the evidence

14   that we have submitted through competent affidavits and

15   declarations.  And what we have demonstrated is none of the

16   board members understood that reference to have anything to do

17   with a claim that they had been removed from their position.

18   That's from the Leslie declaration, paragraphs 10 through 13,

19   ECF No. 20-5, and also the Moseley Braun, Davis and Agwunobi

20   declarations, paragraph five of each of those declarations, ECF

21   No. 33-2, 33-3 and ECF 33-4.

22        That's the only evidence we have on the record in this

23   case.  And on the record we have in this case, there is simply

24   no dispute of material fact that there was nothing communicated

25   to the board members that they understood that they had been

1    removed.

2         I would like to return the Court, if I could, to the

3    operative principle of law here, which again is the *In Re*

4    *Hennen* case.    "Such removal may be made either by express

5    notification" --

6         THE COURT:  Which case again?

7         MR. McELVAIN:   *In Re Hennen*.

8         THE COURT:  Who wrote that opinion?

9         MR. McELVAIN:  I don't know, Your Honor.  It's from

10   1837.

11        THE COURT:  1837?

12        MR. McELVAIN:  It is.

13        THE COURT:  You're relying on an 1837 case?

14        MR. McELVAIN:  It remains good law to this day.  The

15   Office of Legal Counsel has acknowledged that it remains good

16   law to this day in an opinion that we cited in our TRO papers.

17        I know it's an 1837 case.  I think the point is that

18   this just doesn't come up that often because it's not a hard

19   standard for the government to meet.

20        It's incredibly easy for the government to provide

21   notice to officers if they want to provide notice to officers

22   that they have been removed.

23        So the relevant principle of law here is in indeed the

24   *In Re Hennen* case, which holds "such removal may be made either

25   by express notification or simply by appointing another person

1   to the same office."

2          Let's take those piece by piece.  "Such removal may be

3   made either by express notification."  There was no express

4   notification here.

5          Or now the Court recognized there was another vehicle

6   here, which is you could appoint somebody to that office and to

7   replace the old officer, but that new appointment would have to

8   be valid, and it's simply not valid for Pete Marocco to claim

9   he had been appointed as an acting member of the board for the

10  reasons that I have explained in our argument under the Federal

11  Vacancies Reform Act.

12          THE COURT:  Was he nominated to the Senate?

13          MR. McELVAIN:  He has not been nominated, Your Honor.

14          Turning to the question of the Federal Vacancies

15  Reform Act.  I understand my colleague to be referring to the

16  take care clause of the Constitution as the source of an

17  asserted inherent authority to appoint acting officials, even

18  where Congress has denied that authority to the president.

19          The take care clause -- it stands to reason that the

20  take care clause imposes a duty on the president to ensure that

21  all of the laws be faithfully executed, and that includes the

22  duty to ensure that the remaining provisions of the

23  Constitution are faithfully executed.

24          And again, the appointments clause specifies two and

25  only two methods for an officer of the federal government to

1    take a position -- to take an office with the federal

2    government.  One is through Senate confirmation.  Two is

3    through such means as Congress itself shall specify by law and

4    that Congress itself shall see fit.

5         The methods that Congress has specified by law are in

6    the FVRA itself, and it's a matter of common ground here that

7    that is not a source of authority to name Mr. Marocco to his

8    asserted position as acting chair of the board.

9         My colleague referred to an OLC opinion from 1977.

10   Whatever validity that opinion may have had at that time, it

11   predates the 1998 amendments to the FVRA, which, again, as I

12   have demonstrated in my prior argument, Congress specifically

13   undertook efforts to enact those amendments because it wanted

14   to occupy the field and it wanted to be absolutely clear that

15   the only source of authority to appoint acting officials was

16   under the source of authority that Congress itself was granting

17   to the executive.

18        And again, as I have demonstrated under Section

19   3348(d)(1), once you have cleared the threshold of

20   demonstrating that there is an FVRA violation here, and there

21   is, the relief is automatic.  Any actions that Pete Marocco has

22   taken are void ab initio under the words of the Supreme Court

23   in *NLRB versus Southwest General* and under the express language

24   of Section 3348(d)(1).

25        I would invite any additional questions that the Court

1    may have.

2             THE COURT:  That's fine.

3             MR. McELVAIN:  Thank you, Your Honor.

4             MR. BARDO:  Your Honor, just a few clarifying points.

5    I don't think the parties disagree as to the facts.  What the

6    parties seem to disagree of is the --

7             THE COURT:  Whoa, that's a big statement.  This

8    gentleman is arguing that there is no evidence anywhere that

9    the president directed PPO to get rid of the four members of

10   the board.  I assume you disagree with that.

11            MR. BARDO:  We do disagree with that, Your Honor.

12            THE COURT:  Why isn't there any evidence on your side

13   that he actually did that?

14            MR. BARDO:  We did submit those emails during the TRO

15   portion, but I'm focusing more on the issue of notice to the

16   board members.  There is no dispute that the board members were

17   aware of an email from Trent Morse saying, because the

18   foundation is boardless, the president has designated Pete

19   Marocco to be acting chairman of the board.  We would submit

20   that them being aware of that email is sufficient to have

21   effectuated notice.

22            THE COURT:  Proof they are aware of it is what?

23            MR. BARDO:  Because they said so in their declarations

24   that they attached to their reply brief.  Each of the board

25   members said that they learned of that email.  They do deny

1    understanding it, but I think the plain meaning of the email is

2    that they have been removed.

3         I will also add, Your Honor, the president has

4    nominated two individuals to serve for full terms on the

5    foundation board.  That's Russell Vought and Laken Rapier.

6    Both of them have been referred to the Senate Committee on

7    Foreign Relations on March -- March 14, 2025.  So there is a

8    plan going forward to have permanent leadership at the

9    foundation.  Mr. Marocco's designation is temporary until these

10   nominees can be confirmed.

11        And that's all I have, Your Honor.

12        THE COURT:  All right.  Thank you.

13        Well, as I alluded, Counsel, we're a little busy

14   around here these days and I can't tell you when you will get

15   an opinion.  I'll do my best to get you one quickly, but we're

16   all flooded with TROs and PIs right now, every judge in this

17   court is, even senior judges like me.

18        We'll stand adjourned.

19      (Proceedings concluded at 4:21 p.m.)

20

21

22

23

24

25

1                           CERTIFICATE

2        I, Sonja L. Reeves, Federal Official Court Reporter in and
     for the United States District Court of the District of
3    Columbia, do hereby certify that the foregoing transcript is a
     true and accurate transcript from the original stenographic
4    record in the above-entitled matter and that the transcript
     page format is in conformance with the regulations of the
5    Judicial Conference of the United States.

6        Dated this 16th day of April, 2025.

7

8                               /s/ Sonja L. Reeves
                            SONJA L. REEVES, RDR-CRR
9                           FEDERAL OFFICIAL COURT REPORTER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**/**

**/s** [1] - 28:8

**1**

**10** [1] - 22:18
**13** [1] - 22:18
**14** [1] - 27:7
**16** [1] - 1:11
**16th** [1] - 28:6
**1837** [4] - 23:10, 23:11, 23:13, 23:17
**1977** [2] - 20:1, 25:9
**1998** [7] - 11:14, 11:19, 11:23, 12:13, 20:5, 20:21, 25:11
**19th** [1] - 8:22
**1:25-cv-00660-RJL** [1] - 1:5

**2**

**20** [1] - 2:17
**20-5** [1] - 22:19
**20001** [1] - 1:24
**20043** [1] - 1:16
**2025** [3] - 1:11, 27:7, 28:6
**20530** [1] - 1:20
**25-660** [1] - 2:3
**290h-5(a)(1)** [1] - 12:22

**3**

**33-2** [1] - 22:21
**33-3** [1] - 22:21
**33-4** [1] - 22:21
**333** [1] - 1:24
**3345** [4] - 14:1, 14:8, 19:15, 19:17
**3346** [2] - 14:1, 14:8
**3347** [2] - 14:1, 14:8
**3348** [1] - 19:17
**3348(b)** [1] - 14:9
**3348(b)(1)** [1] - 13:11
**3348(d)(1** [3] - 13:19, 13:22, 25:19
**3348(d)(1)** [2] - 13:13, 25:24
**3348(d)(2)** [1] - 13:14
**3349** [1] - 14:4
**3349(b** [2] - 19:15, 19:17
**3349(c** [2] - 14:13, 19:7
**3349(c)** [2] - 13:9, 13:17
**34553** [1] - 1:16

**3:41** [2] - 1:11, 2:1

**4**

**4:21** [2] - 1:11, 27:19

**5**

**5** [2] - 2:18, 13:8

**6**

**601** [1] - 1:19

**A**

**ab** [3] - 14:22, 15:2, 25:22
**able** [2] - 15:22, 17:18
**above-entitled** [1] - 28:4
**absent** [1] - 13:10
**absolutely** [2] - 12:2, 25:14
**accompanying** [1] - 11:20
**accomplish** [1] - 3:22
**accomplished** [4] - 3:13, 4:2, 10:7, 12:7
**accurate** [1] - 28:3
**acknowledge** [1] - 2:22
**acknowledged** [2] - 19:20, 23:15
**Act** [11] - 3:1, 11:13, 19:6, 19:7, 20:8, 20:12, 20:14, 20:15, 20:21, 24:11, 24:15
**act** [2] - 9:17, 16:14
**acting** [31] - 2:23, 2:24, 3:1, 5:24, 6:1, 6:3, 6:5, 10:24, 11:15, 11:16, 11:17, 12:3, 13:1, 13:3, 13:8, 13:12, 14:1, 14:8, 14:11, 14:18, 14:19, 18:10, 18:12, 18:17, 19:24, 20:4, 24:9, 24:17, 25:8, 25:15, 26:19
**Action** [1] - 2:2
**action** [6] - 8:25, 9:16, 13:12, 13:25, 14:6
**actions** [7] - 14:17, 14:20, 14:22, 15:2, 15:23, 19:18, 25:21
**activities** [1] - 8:21

**actual** [7] - 3:11, 3:20, 4:14, 8:24, 13:21, 16:17, 16:19
**add** [1] - 27:3
**additional** [2] - 11:9, 25:25
**address** [2] - 10:6, 12:24
**addressed** [2] - 3:16, 3:18
**addresses** [2] - 3:14, 22:6
**adequate** [3] - 9:11, 17:4, 17:5
**adjective** [4] - 5:15, 9:16, 9:20
**adjourned** [1] - 27:18
**admits** [1] - 16:5
**advice** [1] - 19:8
**advised** [1] - 19:23
**affairs** [1] - 7:7
**affidavit** [1] - 21:25
**affidavits** [1] - 22:14
**affiliation** [2] - 15:24, 16:4
**afternoon** [3] - 2:6, 2:11, 15:13
**agency** [1] - 13:17
**agenda** [1] - 19:5
**agent** [1] - 17:3
**ago** [1] - 3:9
**agreement** [1] - 13:23
**Agwunobi** [1] - 22:19
**ahead** [1] - 8:13
**al** [2] - 1:6, 2:3
**Alikhan's** [1] - 3:8
**allowing** [2] - 12:25, 19:1
**alluded** [1] - 27:13
**amendment** [1] - 20:21
**amendments** [4] - 12:13, 20:5, 25:11, 25:13
**ample** [1] - 10:11
**answer** [3] - 8:2, 8:6, 8:8
**apart** [1] - 11:8
**Appeals** [1] - 3:17
**appearance** [1] - 2:5
**applies** [2] - 14:13, 14:17
**apply** [5] - 14:4, 14:10, 15:20, 19:15, 20:13
**appoint** [9] - 11:2, 11:16, 12:3, 13:8,

**17:7, 18:7, 24:6, 24:17, 25:15
**appointed** [9] - 6:3, 6:6, 10:24, 13:4, 15:15, 15:17, 16:3, 19:8, 24:9
**appointing** [2] - 9:14, 23:25
**appointment** [8] - 3:24, 11:7, 11:14, 11:22, 12:25, 13:10, 15:4, 24:7
**appointments** [3] - 11:1, 11:8, 24:24
**approach** [1] - 2:4
**April** [2] - 1:11, 28:6
**area** [1] - 14:23
**argue** [2] - 3:10, 16:19
**arguing** [1] - 26:8
**argument** [8] - 2:16, 8:11, 8:12, 17:25, 18:3, 18:5, 24:10, 25:12
**arguments** [2] - 2:20, 20:22
**arrived** [1] - 7:16
**Article** [2] - 10:15, 18:18
**assert** [2] - 2:24, 3:12
**asserted** [3] - 11:24, 24:17, 25:8
**assertion** [2] - 3:6, 12:1
**assessing** [1] - 10:14
**assistant** [2] - 2:11, 2:13
**assume** [8] - 7:5, 8:2, 8:3, 8:5, 10:10, 10:13, 26:10
**attached** [1] - 26:24
**attempt** [1] - 9:25
**attempted** [1] - 13:19
**attempting** [1] - 5:9
**Attorney** [2] - 2:12, 2:13
**authority** [21] - 3:2, 10:25, 11:17, 12:3, 12:8, 12:10, 12:11, 12:17, 12:18, 18:13, 18:16, 18:18, 18:23, 19:23, 20:4, 20:19, 24:17, 24:18, 25:7, 25:15, 25:16
**authorized** [1] - 13:10
**automatic** [1] - 25:21
**available** [2] - 10:4,

19:19
**Avenue** [1] - 1:24
**Aviel** [1] - 3:9
**avoid** [1] - 20:16
**aware** [7] - 9:1, 16:11, 16:21, 20:18, 26:17, 26:20, 26:22

**B**

**background** [1] - 12:13
**Bardo** [2] - 2:12
**BARDO** [24] - 1:19, 2:11, 15:13, 15:17, 15:22, 16:2, 16:19, 17:8, 17:12, 17:17, 17:20, 18:1, 18:5, 20:11, 20:25, 21:3, 21:6, 21:12, 21:15, 21:19, 26:4, 26:11, 26:14, 26:23
**based** [1] - 16:18
**basis** [4] - 2:21, 2:22, 9:23, 10:8
**BEFORE** [1] - 1:10
**begin** [1] - 15:15
**beginning** [1] - 10:16
**behalf** [1] - 2:12
**best** [2] - 8:6, 27:15
**big** [1] - 26:7
**blowing** [1] - 5:19
**board** [57] - 2:23, 2:25, 3:5, 4:11, 4:13, 4:25, 5:5, 5:7, 5:12, 5:21, 6:4, 6:5, 6:15, 6:25, 7:2, 7:6, 7:9, 7:15, 7:17, 10:17, 10:25, 11:18, 12:20, 13:1, 13:8, 13:16, 14:14, 14:19, 15:5, 16:7, 16:8, 16:14, 16:16, 16:20, 17:6, 17:7, 18:6, 18:9, 18:11, 18:13, 18:17, 18:23, 19:9, 19:21, 20:4, 22:4, 22:16, 22:25, 24:9, 25:8, 26:10, 26:16, 26:19, 26:24, 27:5
**Board** [1] - 20:2
**boardless** [8] - 5:8, 5:11, 6:7, 9:14, 16:13, 16:22, 22:11, 26:18
**boards** [4] - 19:21, 19:24, 20:13, 20:20
**Bob** [1] - 5:17
**bothered** [1] - 6:24
**bow** [1] - 7:9
**Box** [1] - 1:16

**Bradley** [1] - 2:8
**BRADLEY** [1] - 1:15
**branch** [1] - 19:4
**Braun** [1] - 22:19
**breathtaking** [1] -
3:6
**Brehm** [15] - 2:3, 2:7,
6:25, 9:12, 15:3,
15:14, 16:3, 16:5,
16:15, 17:3, 17:7,
18:13, 19:1, 19:6,
19:19
**BREHM** [1] - 1:3
**Brehm's** [3] - 10:8,
15:23, 19:20
**brief** [3] - 10:12,
13:18, 26:24
**briefing** [1] - 22:1
**bring** [1] - 15:19
**bringing** [1] - 21:7
**brings** [1] - 19:7
**busy** [1] - 27:13
**BY** [2] - 1:15, 1:19

## C

**cancellation** [1] -
15:7
**candidly** [1] - 13:20
**care** [4] - 11:13,
24:16, 24:19, 24:20
**Carter** [2] - 19:25,
20:3
**CASE** [1] - 1:5
**case** [23] - 3:9, 8:15,
8:19, 8:21, 9:23,
12:15, 13:23, 15:13,
15:19, 17:13, 20:7,
20:12, 20:14, 22:2,
22:7, 22:13, 22:23,
23:4, 23:6, 23:13,
23:17, 23:24
**category** [1] - 19:14
**century** [1] - 8:22
**CERTIFICATE** [1] -
28:1
**Certified** [1] - 1:23
**certify** [1] - 28:3
**CFO** [1] - 17:2
**chair** [6] - 14:19,
16:14, 18:10, 18:12,
18:17, 25:8
**chairman** [1] - 26:19
**challenge** [2] -
15:22, 17:10
**chance** [1] - 21:7
**characterization** [3]
- 5:5, 5:9, 9:15
**characterized** [2] -
5:7

**characterizing** [1] -
22:11
**check** [1] - 7:18
**chief** [1] - 16:11
**choice** [1] - 9:15
**chose** [1] - 12:24
**circuit** [1] - 21:14
**Circuit** [1] - 10:12
**circumstance** [1] -
8:23
**circumstances** [1] -
6:12
**cite** [1] - 13:19
**cited** [3] - 12:14,
20:1, 23:16
**Civil** [1] - 2:2
**claim** [3] - 14:18,
22:17, 24:8
**claiming** [3] - 13:12,
13:16, 14:10
**clarifying** [1] - 26:4
**clause** [6] - 11:1,
11:8, 24:16, 24:19,
24:20, 24:24
**clear** [4] - 8:19, 11:1,
12:2, 25:14
**cleared** [1] - 25:19
**CLERK** [1] - 2:2
**clients** [1] - 8:3
**colleague** [3] -
21:22, 24:15, 25:9
**COLUMBIA** [1] - 1:1
**Columbia** [1] - 28:3
**coming** [1] - 7:5
**commenting** [1] -
17:21
**commission** [1] -
19:9
**committee** [1] -
20:15
**Committee** [1] - 27:6
**common** [1] - 25:6
**communicated** [1] -
22:24
**communication** [1] -
7:4
**Company** [1] - 18:20
**competent** [4] - 4:10,
22:2, 22:8, 22:14
**composed** [1] -
19:10
**concede** [2] - 8:7,
17:19
**concluded** [1] -
27:19
**concludes** [2] -
14:15, 20:22
**Conference** [1] -
28:5
**confirmation** [7] -

3:6, 11:3, 11:10,
12:20, 12:21, 12:24,
25:2
**confirmed** [3] - 13:3,
13:4, 27:10
**conformance** [1] -
28:4
**confusion** [1] - 20:16
**Congress** [24] - 2:25,
3:2, 11:5, 11:11,
11:12, 11:13, 11:16,
11:19, 12:2, 12:4,
12:6, 12:22, 14:24,
15:1, 18:21, 20:18,
24:18, 25:3, 25:4,
25:5, 25:12, 25:16
**Congress's** [1] -
11:24
**consent** [1] - 19:9
**consistent** [3] -
18:24, 19:1, 19:4
**Constitution** [3] -
1:24, 24:16, 24:23
**contact** [5] - 6:15,
6:22, 6:24, 7:15, 10:3
**contacted** [1] - 7:23
**continued** [1] - 4:13
**contracts** [1] - 15:8
**contrary** [2] - 3:11,
11:24
**corporation** [1] -
19:12
**correct** [7] - 10:3,
10:6, 10:11, 10:14,
10:16, 15:19, 21:12
**counsel** [4] - 2:4,
2:8, 2:13, 19:20
**Counsel** [2] - 2:16,
19:22, 23:15, 27:13
**course** [2] - 4:21,
22:5
**court** [3] - 3:7, 4:22,
27:17
**Court** [23] - 1:23, 2:1,
2:20, 3:17, 3:19,
12:14, 12:15, 14:21,
16:18, 17:13, 17:23,
18:6, 18:8, 18:18,
20:23, 21:7, 21:15,
23:2, 24:5, 25:22,
25:25, 28:2, 28:2
**COURT** [49] - 1:1,
2:10, 2:15, 3:16, 3:20,
4:3, 4:14, 4:17, 4:20,
4:22, 5:17, 5:24, 7:11,
7:17, 7:22, 8:3, 8:10,
8:13, 10:8, 10:19,
15:11, 15:16, 15:20,
16:1, 16:17, 17:4,
17:9, 17:14, 17:19,

17:25, 18:4, 20:24,
21:2, 21:5, 21:10,
21:13, 21:17, 21:20,
23:6, 23:8, 23:11,
23:13, 24:12, 26:2,
26:7, 26:12, 26:22,
27:12, 28:9
**Court's** [3] - 14:24,
15:9, 20:8
**covered** [1] - 13:17
**covers** [1] - 14:14
**cross** [1] - 2:17
**cross-motions** [1] -
2:17
**CRR** [1] - 28:8
**current** [1] - 22:1
**cut** [1] - 11:25

## D

**Dated** [1] - 28:6
**Davis** [1] - 22:19
**days** [1] - 27:14
**DC** [5] - 1:12, 1:16,
1:20, 1:24, 10:12
**deals** [1] - 8:21
**decided** [1] - 9:8
**decipher** [1] - 9:25
**decision** [3] - 4:17,
4:19, 4:24
**declaration** [4] - 4:9,
21:24, 21:25, 22:18
**declarations** [6] -
16:20, 22:3, 22:15,
22:20, 26:23
**deems** [1] - 11:5
**defect** [2] - 4:3, 4:5
**defendant** [1] - 22:12
**Defendants** [1] - 1:7
**defendants** [3] -
3:10, 9:5, 13:18
**DEFENDANTS** [1] -
1:18
**defendants'** [2] -
2:20, 3:6
**defense** [2] - 4:8,
14:10
**delay** [1] - 12:23
**delegable** [1] - 9:6
**Democracy** [2] -
1:14, 2:7
**demonstrated** [3] -
22:15, 25:12, 25:18
**demonstrating** [1] -
25:20
**denied** [1] - 24:18
**deny** [1] - 26:25
**DEPUTY** [1] - 2:2
**describe** [2] - 5:9,
9:16

**described** [2] - 12:8,
12:21
**designate** [8] - 11:5,
16:13, 18:14, 18:16,
18:23, 19:24, 20:4,
20:19
**designated** [5] -
11:11, 11:12, 18:10,
18:12, 26:18
**designation** [1] -
27:9
**dialogue** [2] - 8:8,
8:10
**different** [1] - 9:17
**Diplomate** [1] - 1:22
**directed** [1] - 26:9
**direction** [1] - 5:12
**directors** [1] - 15:6
**disagree** [4] - 26:5,
26:6, 26:10, 26:11
**discretion** [1] - 14:24
**discuss** [1] - 20:25
**discusses** [1] - 9:5
**discussion** [5] - 8:2,
8:7, 9:4, 12:12, 14:16
**dispute** [8] - 9:10,
9:12, 10:6, 16:10,
17:3, 19:13, 22:24,
26:16
**disregarding** [1] -
16:23
**District** [2] - 28:2
**DISTRICT** [3] - 1:1,
1:1, 1:10
**DOGE** [1] - 6:12
**DOJ** [1] - 1:18
**DOJ-USAO** [1] - 1:18
**done** [1] - 9:22
**doubt** [1] - 4:12
**down** [1] - 4:23
**drawn** [1] - 7:8
**during** [1] - 26:14
**duties** [1] - 8:18
**duty** [4] - 14:3,
14:12, 24:20, 24:22
**Dylan** [1] - 5:17

## E

**easiest** [1] - 17:13
**easy** [3] - 7:14, 10:2,
23:20
**ECF** [3] - 22:19,
22:20, 22:21
**Economos** [1] - 2:8
**ECONOMOS** [1] -
1:15
**effect** [5] - 8:25,
13:13, 14:5, 14:16,
14:20

**effected** [1] - 8:24
**effectuate** [1] - 5:1
**effectuated** [1] - 26:21
**efforts** [1] - 25:13
**either** [6] - 3:13, 4:9, 11:10, 23:4, 23:24, 24:3
**email** [25] - 3:14, 4:6, 4:10, 5:4, 5:6, 6:2, 6:6, 7:5, 9:7, 9:11, 9:13, 16:5, 16:6, 16:9, 16:11, 16:21, 17:1, 22:6, 22:10, 26:17, 26:20, 26:25, 27:1
**emails** [6] - 3:13, 4:7, 9:24, 21:23, 22:7, 26:14
**enact** [1] - 25:13
**enacting** [5] - 11:19, 11:21, 11:25, 13:1, 20:20
**enactment** [1] - 20:16
**end** [1] - 14:16
**ended** [2] - 15:24, 16:4
**endorsed** [1] - 3:7
**engaging** [1] - 8:8
**ensure** [2] - 24:20, 24:22
**enter** [1] - 21:8
**enterprise** [1] - 9:14
**entire** [1] - 11:25
**entitled** [1] - 28:4
**entity** [2] - 19:10, 19:16
**establish** [1] - 16:16
**establishment** [2] - 19:11, 19:12
**et** [2] - 1:6, 2:3
**evidence** [10] - 4:10, 16:24, 22:2, 22:8, 22:12, 22:13, 22:22, 26:8, 26:12
**exact** [1] - 6:14
**exactly** [2] - 17:8, 17:12
**example** [1] - 8:22
**excludes** [1] - 19:7
**exclusive** [2] - 3:1, 11:14
**executed** [2] - 24:21, 24:23
**executive** [5] - 11:24, 12:1, 18:25, 19:4, 25:17
**exercise** [1] - 18:25
**exercised** [2] - 9:6, 20:19

**exercises** [1] - 18:22
**existed** [1] - 12:10
**existing** [1] - 3:13
**explained** [1] - 24:10
**explicit** [3] - 11:19, 13:7, 13:23
**explicitly** [2] - 13:15, 14:14
**express** [15] - 3:21, 3:22, 3:23, 5:16, 6:9, 7:1, 8:14, 8:20, 9:2, 9:24, 23:4, 23:25, 24:3, 25:23
**expressly** [3] - 3:25, 11:15, 11:17
**extent** [1] - 12:4

**F**

**fact** [3] - 9:11, 10:7, 22:24
**factors** [1] - 21:4
**facts** [1] - 26:5
**faithfully** [2] - 24:21, 24:23
**fake** [1] - 3:14
**fall** [2] - 7:25, 19:13
**familiar** [1] - 18:19
**favor** [2] - 13:20, 18:9
**February** [1] - 6:14
**Federal** [8] - 2:25, 11:13, 19:6, 20:7, 20:21, 24:10, 24:14, 28:2
**federal** [4] - 1:23, 11:2, 24:25, 25:1
**FEDERAL** [1] - 28:9
**few** [2] - 21:21, 26:4
**field** [2] - 12:2, 25:14
**figure** [1] - 5:20
**financial** [1] - 16:12
**fine** [1] - 26:2
**first** [4] - 2:21, 6:13, 21:21, 22:9
**fit** [2] - 11:5, 25:4
**five** [2] - 21:17, 22:20
**floating** [3] - 2:24, 12:9, 12:16
**flooded** [1] - 27:16
**focusing** [1] - 26:15
**follow** [2] - 13:20, 15:10
**followed** [1] - 6:21
**follows** [1] - 10:18
**FOR** [3] - 1:1, 1:14, 1:18
**force** [5] - 13:13, 14:4, 14:15, 14:20, 15:6

**foregoing** [1] - 28:3
**Foreign** [1] - 27:7
**format** [1] - 28:4
**forthrightly** [1] - 2:21
**forward** [3] - 10:9, 15:23, 27:8
**Forward** [2] - 1:14, 2:7
**foundation** [29] - 15:5, 15:15, 15:18, 15:24, 16:4, 16:12, 16:14, 16:22, 17:3, 18:8, 18:11, 18:13, 18:14, 18:15, 18:23, 18:24, 19:1, 19:2, 19:3, 19:4, 19:13, 19:16, 19:19, 19:21, 20:13, 26:18, 27:5, 27:9
**foundations** [1] - 19:22
**four** [3] - 5:20, 17:6, 26:9
**free** [3] - 2:24, 12:9, 12:16
**free-floating** [3] - 2:24, 12:9, 12:16
**front** [1] - 16:24
**full** [1] - 27:4
**function** [2] - 14:2, 14:12
**FVRA** [10] - 11:19, 11:25, 12:8, 12:13, 13:6, 13:11, 15:1, 25:6, 25:11, 25:20

**G**

**General** [4] - 12:7, 12:12, 14:22, 25:23
**gentleman** [1] - 26:8
**GIRARD** [1] - 1:15
**Girard** [1] - 2:8
**given** [2] - 3:23, 7:7
**gloss** [1] - 9:21
**goal** [1] - 12:7
**government** [7] - 2:12, 11:3, 19:12, 23:19, 23:20, 24:25, 25:2
**governs** [2] - 19:10, 19:11
**grant** [4] - 12:8, 12:10, 12:16, 12:17
**granting** [2] - 12:3, 25:16
**grants** [2] - 10:25, 15:7
**ground** [1] - 25:6

**H**

**hard** [1] - 23:18
**harm** [2] - 21:1, 21:4
**head** [1] - 6:8
**head-scratcher** [1] - 6:8
**heading** [1] - 19:14
**hear** [1] - 17:25
**HEARING** [1] - 1:10
**held** [1] - 5:2
**Hennen** [6] - 3:19, 3:21, 6:10, 23:4, 23:7, 23:24
**hereby** [2] - 7:2, 28:3
**himself** [2] - 15:4, 15:20, 18:15
**hold** [4] - 4:20, 13:2, 13:16
**holdover** [1] - 13:1
**holds** [2] - 12:8, 12:13
**Home** [1] - 20:2
**Honor** [24] - 2:6, 2:11, 2:19, 5:3, 6:11, 7:21, 15:12, 15:13, 15:19, 17:8, 17:12, 17:17, 20:9, 21:12, 21:15, 21:19, 21:21, 23:9, 24:13, 26:3, 26:4, 26:11, 27:3, 27:11
**HONORABLE** [1] - 1:10
**hypothetically** [1] - 17:21

**I**

**idea** [1] - 6:7
**ignoring** [1] - 3:10
**II** [1] - 18:18
**III** [1] - 10:15
**important** [2] - 8:17, 8:23
**imposes** [1] - 24:20
**include** [1] - 13:16
**includes** [1] - 24:21
**including** [6] - 14:4, 15:3, 15:4, 15:6, 15:7
**incorrectly** [1] - 5:14
**incredibly** [1] - 23:20
**indeed** [1] - 23:23
**independent** [1] - 19:11
**individuals** [1] - 27:4
**indulgence** [1] - 20:8
**inference** [2] - 7:8, 7:12
**information** [9] - 6:15, 6:16, 6:17, 6:18,

6:21, 6:22, 6:24, 7:15, 10:3
**inherent** [8] - 11:21, 11:24, 12:16, 18:18, 18:22, 19:23, 20:19, 24:17
**inherited** [1] - 5:21
**initial** [1] - 21:23
**initiative** [2] - 5:25, 6:2
**initio** [3] - 14:22, 15:3, 25:22
**injunction** [1] - 21:4
**insinuations** [1] - 9:24
**intent** [1] - 7:6
**invalid** [1] - 14:18
**invalidly** [1] - 13:12
**invite** [2] - 15:9, 25:25
**involving** [1] - 20:2
**irreparable** [2] - 20:25, 21:4
**issue** [8] - 3:16, 10:9, 10:22, 18:2, 19:6, 20:7, 22:12, 26:15
**issued** [1] - 12:15
**issues** [1] - 11:23
**itself** [9] - 3:4, 6:4, 12:4, 13:6, 15:1, 25:3, 25:4, 25:6, 25:16

**J**

**Joel** [1] - 2:6
**JOEL** [1] - 1:15
**John** [2] - 2:12, 2:14
**JOHN** [2] - 1:19
**join** [2] - 3:5, 12:20
**joined** [1] - 2:13
**judge** [1] - 27:16
**JUDGE** [1] - 1:10
**Judge** [1] - 3:8
**judges** [1] - 27:17
**judgment** [4] - 2:17, 21:5, 21:8, 22:1
**Judicial** [1] - 28:5

**K**

**keep** [1] - 4:22

**L**

**Laken** [1] - 27:5
**language** [4] - 13:15, 13:22, 14:25, 25:23
**law** [14] - 2:21, 8:15, 8:19, 8:21, 9:23, 11:5, 11:11, 11:12, 23:3,

23:14, 23:16, 23:23, 25:3, 25:5
**laws** [1] - 24:21
**leadership** [1] - 27:8
**leading** [2] - 11:23, 12:13
**learned** [1] - 26:25
**least** [1] - 19:24
**legal** [1] - 8:25
**Legal** [2] - 19:22, 23:15
**LEON** [1] - 1:10
**Leslie** [1] - 22:18
**likely** [1] - 7:7
**limited** [4] - 12:4, 12:8, 12:10
**list** [1] - 14:3
**lose** [1] - 10:13
**lyric** [1] - 5:17

## M

**management** [1] - 6:16
**mandatory** [1] - 14:25
**March** [2] - 27:7
**Marocco** [18] - 2:3, 5:5, 6:3, 9:14, 10:23, 14:7, 14:18, 15:21, 15:23, 16:13, 18:7, 18:10, 18:17, 19:18, 24:8, 25:7, 25:21, 26:19
**MAROCCO** [1] - 1:6
**Marocco's** [2] - 17:11, 27:9
**marshal** [1] - 8:24
**marshals** [1] - 8:22
**material** [1] - 22:24
**matter** [2] - 25:6, 28:4
**Matthew** [1] - 22:11
**McElvain** [30] - 1:15, 2:6, 2:7, 2:19, 3:18, 3:21, 4:5, 4:16, 4:18, 4:21, 5:2, 5:23, 6:1, 7:13, 7:20, 7:25, 8:5, 8:12, 8:14, 10:10, 10:21, 15:12, 21:20, 21:21, 23:7, 23:9, 23:12, 23:14, 24:13, 26:3
**mean** [2] - 18:1, 22:7
**meaning** [2] - 20:12, 27:1
**means** [11] - 3:1, 3:5, 5:15, 6:8, 11:14, 11:16, 12:4, 12:20, 13:7, 16:23, 25:3

**meant** [2] - 5:10, 10:1
**meet** [2] - 10:2, 23:19
**member** [18] - 2:23, 2:25, 6:3, 6:5, 6:25, 7:3, 7:9, 10:25, 11:18, 13:3, 13:8, 13:16, 14:19, 19:8, 19:24, 20:4, 20:20, 24:9
**members** [28] - 4:11, 4:25, 5:12, 5:21, 6:15, 7:16, 7:17, 7:23, 13:1, 13:2, 13:8, 16:8, 16:16, 16:20, 17:5, 17:6, 18:6, 18:9, 19:10, 19:24, 20:20, 22:4, 22:16, 22:25, 26:9, 26:16, 26:25
**mention** [1] - 3:15
**merits** [5] - 10:11, 10:13, 10:14, 10:22, 20:22
**method** [3] - 11:6, 11:7, 11:9
**methods** [4] - 11:2, 11:9, 24:25, 25:5
**might** [4] - 12:23, 17:15, 20:16, 21:8
**mind** [2] - 4:22, 5:10
**minutes** [3] - 2:17, 2:18, 21:17
**missive** [1] - 5:7
**moment** [7] - 4:1, 6:11, 6:21, 8:17, 8:19, 15:24, 21:13
**moments** [1] - 8:16
**moreover** [1] - 12:22
**Morse** [4] - 9:13, 9:19, 22:10, 26:17
**Morse's** [2] - 5:8, 6:6
**Mortgage** [1] - 20:2
**Moseley** [1] - 22:19
**most** [2] - 7:7, 7:11
**mostly** [1] - 8:21
**MOTION** [1] - 1:10
**motions** [1] - 2:17
**move** [1] - 18:2
**MR** [50] - 2:6, 2:11, 2:19, 3:18, 3:21, 4:5, 4:16, 4:18, 4:21, 5:2, 5:23, 6:1, 7:13, 7:20, 7:25, 8:5, 8:12, 8:14, 10:10, 10:21, 15:12, 15:13, 15:17, 15:22, 16:2, 16:19, 17:8, 17:12, 17:17, 17:20, 18:1, 18:5, 20:11, 20:25, 21:3, 21:6, 21:12, 21:15, 21:19,

21:21, 23:7, 23:9, 23:12, 23:14, 24:13, 26:3, 26:4, 26:11, 26:14, 26:23
**multi** [5] - 11:18, 13:8, 13:16, 19:24, 20:20
**multi-member** [5] - 11:18, 13:8, 13:16, 19:24, 20:20
**multiple** [1] - 19:10
**must** [6] - 9:6, 12:11, 12:17, 14:25, 15:1, 15:2

## N

**name** [5] - 2:23, 2:24, 3:1, 11:17, 25:7
**named** [1] - 5:4
**need** [4] - 3:11, 5:18, 6:16, 6:17
**needed** [2] - 5:11, 10:3, 16:7
**needs** [1] - 19:4
**never** [9] - 3:7, 3:16, 6:20, 6:24, 7:16, 15:14, 16:3, 22:4, 22:5
**new** [2] - 13:4, 24:7
**next** [4] - 6:25, 18:2, 18:4, 18:5
**NLRB** [3] - 12:7, 14:21, 25:23
**NO** [1] - 1:5
**nobody** [4] - 4:6, 6:7, 7:3, 7:13
**nominated** [3] - 24:12, 24:13, 27:4
**nominees** [1] - 27:10
**non** [1] - 3:13
**non-existing** [1] - 3:13
**none** [4] - 7:17, 14:9, 14:20, 22:15
**nonetheless** [1] - 2:23
**nothing** [2] - 4:11, 22:24
**notice** [30] - 3:11, 3:21, 3:22, 3:23, 3:25, 4:1, 4:15, 5:13, 5:16, 6:9, 7:1, 7:14, 7:15, 8:14, 8:20, 9:2, 9:24, 10:5, 16:16, 16:17, 16:19, 17:2, 17:4, 17:5, 18:1, 21:22, 23:21, 26:15, 26:21
**notices** [1] - 22:6
**notification** [4] -

23:5, 23:25, 24:3, 24:4
**notion** [2] - 7:25, 10:17
**nullity** [1] - 6:4
**NW** [2] - 1:19, 1:24

## O

**observed** [1] - 12:11
**obtain** [1] - 6:19
**obvious** [1] - 8:15
**occupy** [1] - 25:14
**occupying** [1] - 12:2
**OF** [2] - 1:1, 1:10
**Office** [2] - 19:22, 23:15
**office** [13] - 4:25, 5:6, 7:18, 8:19, 9:8, 13:11, 13:16, 14:3, 14:13, 16:6, 24:1, 24:6, 25:1
**officer** [8] - 3:24, 3:25, 4:1, 13:12, 16:12, 24:7, 24:25
**officers** [5] - 3:12, 11:2, 11:4, 23:21
**OFFICIAL** [1] - 28:9
**official** [4] - 9:18, 11:15, 11:16, 11:17
**Official** [2] - 1:23, 28:2
**officials** [4] - 3:2, 12:3, 24:17, 25:15
**often** [1] - 23:18
**OLC** [4] - 9:4, 19:20, 20:1, 25:9
**old** [5] - 3:24, 3:25, 4:1, 13:2, 24:7
**once** [4] - 4:17, 4:24, 5:17, 25:19
**one** [12] - 3:23, 5:17, 6:25, 7:8, 8:17, 8:18, 10:5, 11:3, 11:8, 21:11, 25:2, 27:15
**operative** [1] - 23:3
**opinion** [1] - 3:8, 9:4, 12:14, 16:18, 19:21, 20:1, 23:8, 23:16, 25:9, 25:10, 27:15
**opinions** [1] - 21:10
**Order** [1] - 2:1
**ordered** [4] - 14:25, 15:2, 15:7, 15:8
**ordering** [1] - 9:17
**original** [1] - 28:3
**Orlando** [1] - 2:8
**ORLANDO** [1] - 1:15
**otherwise** [3] - 10:12, 12:10, 14:11

**overt** [1] - 18:21
**own** [7] - 5:8, 5:24, 6:2, 9:21, 17:10, 19:2, 22:12

## P

**p.m** [4] - 1:11, 2:1, 27:19
**P.O** [1] - 1:16
**page** [1] - 28:4
**papers** [3] - 21:25, 22:1, 23:16
**paragraph** [1] - 22:20
**paragraphs** [1] - 22:18
**part** [3] - 18:2, 18:4, 18:5
**parties** [3] - 13:23, 26:5, 26:6
**party** [2] - 3:14, 3:15
**passed** [1] - 20:5
**Pause** [1] - 20:10
**people** [1] - 17:15
**performance** [2] - 14:2, 14:12
**permanent** [1] - 27:8
**permission** [3] - 6:17, 6:19, 6:23
**person** [5] - 8:17, 8:18, 14:1, 14:6, 23:25
**personal** [1] - 6:16
**personnel** [5] - 4:25, 5:6, 7:18, 9:8, 16:6
**persons** [1] - 13:16
**PETE** [1] - 1:6
**Pete** [10] - 2:3, 5:4, 9:14, 10:23, 14:6, 14:17, 18:7, 24:8, 25:21, 26:18
**Peter** [1] - 16:13
**phone** [2] - 7:18, 8:9
**PI** [2] - 4:9, 21:8
**picked** [3] - 7:17, 17:14, 17:15
**piece** [4] - 14:5, 24:2
**Pls** [1] - 27:16
**place** [1] - 22:9
**plain** [1] - 27:1
**plainly** [1] - 16:24
**Plaintiff** [1] - 1:4
**plaintiff** [3] - 2:7, 16:15, 17:14
**PLAINTIFF** [1] - 1:14
**plaintiff's** [1] - 2:4
**plan** [1] - 27:8
**podium** [1] - 2:5
**point** [8] - 6:12, 9:3,

9:5, 11:25, 13:19, 18:9, 20:17, 23:17
  **points** [2] - 21:21, 26:4
    **portion** [1] - 26:15
    **position** [14] - 2:20, 3:6, 7:2, 8:18, 9:1, 9:9, 9:10, 9:15, 10:24, 18:14, 19:22, 22:17, 25:1, 25:8
    **possibility** [1] - 12:23
    **possible** [3] - 3:23, 17:20, 17:22
    **possibly** [2] - 10:24, 12:17
    **potential** [1] - 12:25
    **power** [10] - 2:24, 3:7, 9:6, 11:22, 11:24, 12:1, 18:7, 18:19, 18:22, 18:25
    **PPO** [6] - 4:25, 5:24, 6:1, 6:2, 7:23, 26:9
    **precedent** [2] - 3:10, 10:11
    **precise** [1] - 8:17
    **predates** [1] - 25:11
    **preliminary** [1] - 21:3
    **premise** [1] - 10:16
    **President** [3] - 16:13, 19:25, 20:3
    **president** [28] - 4:17, 4:18, 4:24, 5:4, 9:7, 9:8, 9:16, 9:21, 9:22, 15:5, 15:15, 15:18, 16:3, 17:7, 17:9, 18:8, 18:14, 18:15, 18:22, 19:3, 19:8, 19:18, 20:3, 24:18, 24:20, 26:9, 26:18, 27:3
    **president's** [4] - 5:10, 18:16, 18:22, 19:5
    **presidential** [7] - 5:6, 7:18, 9:8, 11:22, 12:9, 16:6, 18:19
    **presidents** [2] - 19:23, 20:19
    **previous** [1] - 20:18
    **principal** [1] - 3:12
    **principle** [2] - 23:3, 23:23
    **printouts** [2] - 4:7, 21:23
    **problem** [1] - 12:25
    **procedure** [2] - 11:10, 11:12
    **procedures** [1] - 11:4

    **Proceedings** [1] - 27:19
    **process** [1] - 5:10
    **Produced** [1] - 1:25
    **proof** [1] - 26:22
    **provide** [5] - 3:11, 12:19, 13:7, 23:20, 23:21
    **provided** [4] - 9:2, 9:5, 14:2, 14:9
    **provides** [1] - 11:16
    **provision** [3] - 13:1, 13:25, 14:17
    **provisions** [5] - 13:15, 14:9, 20:6, 20:7, 24:22
    **purported** [2] - 15:3, 15:4
    **purportedly** [1] - 22:6
    **purpose** [1] - 8:7
    **purposes** [6] - 8:1, 8:5, 8:8, 8:12, 10:10, 10:14
    **put** [1] - 18:21

**Q**

    **QED** [1] - 14:16
    **questions** [5] - 15:9, 17:23, 20:23, 21:16, 25:25
    **quickly** [1] - 27:15
    **quite** [4] - 8:19, 11:1, 11:19, 13:6
    **quotation** [1] - 9:20
    **quote** [3] - 12:8, 13:19, 13:25
    **quoted** [1] - 10:12

**R**

    **Rapier** [1] - 27:5
    **rather** [1] - 18:25
    **ratified** [1] - 13:14
    **RDR** [1] - 28:8
    **RDR-CRR** [1] - 28:8
    **Re** [6] - 3:19, 3:21, 6:10, 23:3, 23:7, 23:24
    **reached** [4] - 4:11, 5:13, 8:20, 9:2
    **reaches** [2] - 3:25, 4:1
    **really** [3] - 7:11, 8:16
    **Realtime** [1] - 1:23
    **reason** [5] - 4:12, 8:15, 11:20, 19:17, 24:19
    **reasonable** [2] - 7:4,

7:11
    **reasoning** [1] - 13:20
    **reasons** [1] - 24:10
    **rebuttal** [2] - 2:18, 21:17
    **receive** [3] - 7:1, 16:9, 16:10
    **received** [8] - 4:6, 7:3, 7:14, 16:5, 16:6, 17:1, 22:4, 22:5
    **recent** [1] - 9:4
    **recently** [3] - 3:8, 15:7, 15:8
    **recess** [2] - 11:7
    **recognize** [1] - 12:14
    **recognized** [2] - 12:6, 24:5
    **Record** [1] - 1:25
    **record** [15] - 2:2, 2:5, 4:7, 5:2, 5:3, 7:20, 7:22, 8:1, 8:6, 9:10, 10:5, 22:3, 22:22, 22:23, 28:4
    **reductions** [1] - 15:6
    **Reeves** [2] - 28:2, 28:8
    **REEVES** [2] - 1:22, 28:8
    **refer** [1] - 21:22
    **reference** [1] - 22:16
    **referred** [2] - 25:9, 27:6
    **referring** [1] - 24:15
    **Reform** [5] - 3:1, 11:13, 19:6, 24:11, 24:15
    **Registered** [1] - 1:22
    **regulations** [1] - 28:4
    **rejected** [1] - 3:8
    **Relations** [1] - 27:7
    **relevant** [2] - 10:4, 23:23
    **relief** [2] - 14:24, 25:21
    **relieved** [2] - 5:20, 7:24
    **relying** [1] - 23:13
    **remain** [1] - 13:11
    **remaining** [1] - 24:22
    **remains** [2] - 23:14, 23:15
    **remedy** [3] - 14:23, 15:1, 19:19
    **removal** [16] - 3:12, 3:15, 3:22, 4:2, 5:13, 5:16, 6:10, 8:24, 9:6, 9:17, 9:24, 10:6, 10:7, 23:4, 23:24, 24:2
    **remove** [3] - 4:24,

7:6, 18:13
    **removed** [14] - 7:2, 7:9, 8:17, 9:1, 9:12, 10:17, 15:25, 16:25, 18:7, 18:9, 22:17, 23:1, 23:22, 27:2
    **replace** [1] - 24:7
    **replacement** [2] - 18:15, 20:17
    **replaces** [1] - 13:5
    **reply** [2] - 13:18, 26:24
    **report** [3] - 11:20, 11:21, 20:5
    **REPORTER** [1] - 28:9
    **Reporter** [4] - 1:22, 1:23, 1:23, 28:2
    **reporter** [1] - 4:22
    **representatives** [1] - 6:13
    **require** [1] - 9:25
    **required** [3] - 5:16, 6:10, 8:14
    **requirement** [1] - 16:17
    **requires** [2] - 3:21, 9:23
    **resigned** [1] - 5:12
    **resolve** [1] - 17:13
    **resolved** [1] - 15:14
    **respect** [3] - 20:12, 20:15, 21:3
    **rest** [3] - 15:19, 16:8, 21:16
    **restriction** [2] - 12:9, 18:21
    **result** [1] - 20:16
    **return** [1] - 23:2
    **returned** [2] - 6:19, 6:20
    **review** [1] - 6:11
    **RICHARD** [1] - 1:10
    **rid** [1] - 26:9
    **Robin** [1] - 2:9
    **ROBIN** [1] - 1:15
    **ruling** [1] - 19:17
    **run** [4] - 18:24, 19:1, 19:2, 19:4
    **Russell** [1] - 27:5

**S**

    **Sawyer** [1] - 18:20
    **scratcher** [1] - 6:8
    **seat** [1] - 13:5
    **seats** [1] - 13:2
    **second** [2] - 3:10, 11:4
    **section** [1] - 14:3

    **Section** [10] - 13:13, 13:14, 13:19, 13:22, 14:1, 14:8, 14:13, 19:7, 25:18, 25:24
    **sections** [2] - 14:4, 14:11
    **Sections** [1] - 19:15
    **see** [2] - 7:24, 25:4
    **seem** [1] - 26:6
    **Senate** [17] - 3:5, 11:3, 11:10, 11:20, 11:21, 12:20, 12:21, 13:4, 19:9, 20:5, 20:8, 20:11, 20:14, 24:12, 25:2, 27:6
    **send** [2] - 7:14, 10:5
    **sending** [3] - 3:13, 3:14, 5:6
    **senior** [1] - 27:17
    **sense** [1] - 4:16
    **sent** [4] - 4:10, 5:4, 16:11, 22:6
    **sentence** [1] - 14:15
    **serious** [2] - 5:22, 5:23
    **serve** [1] - 27:4
    **service** [1] - 4:13
    **services** [1] - 16:7
    **serving** [1] - 15:5
    **set** [2] - 21:23, 22:1
    **shall** [11] - 11:5, 13:11, 13:13, 14:4, 14:15, 25:3, 25:4
    **share** [2] - 6:18, 6:23
    **Sheet** [1] - 18:20
    **shot** [1] - 7:9
    **sic** [1] - 6:3
    **side** [2] - 2:17, 26:12
    **similar** [3] - 7:3, 7:5, 19:9
    **simply** [11] - 4:10, 7:16, 9:19, 9:22, 15:14, 22:2, 22:7, 22:8, 22:23, 23:25, 24:8
    **simultaneously** [1] - 4:23
    **situation** [2] - 17:10, 17:11
    **someone** [1] - 18:23
    **songs** [1] - 5:18
    **SONJA** [2] - 1:22, 28:8
    **Sonja** [2] - 28:2, 28:8
    **source** [4] - 24:16, 25:7, 25:15, 25:16
    **southwest** [1] - 12:12
    **Southwest** [3] - 12:7, 14:21, 25:23

**specifically** [1] - 25:12
**specified** [4] - 2:25, 12:5, 15:1, 25:5
**specifies** [1] - 24:24
**specify** [2] - 11:14, 25:3
**spelling** [1] - 4:4
**squarely** [1] - 14:17
**stage** [2] - 4:9
**stand** [1] - 27:18
**standard** [2] - 10:2, 23:19
**standing** [10] - 10:8, 10:10, 10:15, 10:20, 10:22, 15:16, 15:18, 16:1, 17:10, 17:16
**stands** [1] - 24:19
**starting** [1] - 2:4
**state** [2] - 2:5, 7:7
**statement** [1] - 26:7
**STATES** [1] - 1:1
**states** [4] - 3:5, 3:22, 7:2, 9:13
**States** [4] - 2:12, 2:13, 28:2, 28:5
**status** [2] - 4:12, 7:19
**statute** [12] - 3:3, 3:4, 10:25, 11:15, 12:5, 12:17, 12:18, 12:21, 13:6, 13:15, 19:14, 20:17
**statutes** [2] - 12:19, 19:16
**statutory** [1] - 2:22
**stenographic** [1] - 28:3
**Stenographic** [1] - 1:25
**still** [2] - 17:1, 18:8
**Street** [1] - 1:19
**string** [1] - 19:16
**submit** [2] - 26:14, 26:19
**submitted** [4] - 4:8, 16:20, 22:12, 22:14
**subordinate** [1] - 19:3
**Subsection** [2] - 14:2, 14:9
**successor** [3] - 12:24, 13:3, 13:4
**sufficient** [3] - 16:16, 17:2, 26:20
**summary** [4] - 2:17, 21:5, 21:8, 22:1
**supported** [3] - 4:8, 21:24
**suppose** [1] - 17:17

**Supreme** [4] - 3:18, 14:21, 16:18, 25:22

### T

**table** [2] - 2:8, 2:13
**team** [1] - 6:16
**temporary** [1] - 27:9
**terminate** [1] - 3:11
**terminating** [1] - 9:9
**termination** [2] - 7:1, 15:3
**terminology** [1] - 6:9
**terms** [2] - 12:11, 27:4
**text** [2] - 13:21, 13:24
**THE** [51] - 1:1, 1:10, 1:14, 1:18, 2:10, 2:15, 3:16, 3:20, 4:3, 4:14, 4:17, 4:20, 4:22, 5:17, 5:24, 7:11, 7:17, 7:22, 8:3, 8:10, 8:13, 10:8, 10:19, 15:11, 15:16, 15:20, 16:1, 16:17, 17:4, 17:9, 17:14, 17:19, 17:25, 18:4, 20:24, 21:2, 21:5, 21:10, 21:13, 21:17, 21:20, 23:6, 23:8, 23:11, 23:13, 24:12, 26:2, 26:7, 26:12, 26:22, 27:12
**themselves** [2] - 3:24, 9:5
**theory** [3] - 17:17, 17:20, 17:22
**thinks** [1] - 19:2
**third** [4] - 3:14, 3:15, 11:6
**three** [3] - 11:8, 17:5, 18:19
**threshold** [1] - 25:19
**THURSTON** [1] - 1:15
**Thurston** [1] - 2:9
**took** [1] - 11:13
**top** [2] - 3:4, 19:14
**transcript** [3] - 28:3, 28:3, 28:4
**TRANSCRIPT** [1] - 1:10
**Transcript** [1] - 1:25
**Trent** [7] - 5:8, 6:3, 6:6, 9:13, 9:19, 22:10, 26:17
**TRO** [6] - 4:7, 4:9, 12:14, 11:25, 23:16, 26:14
**TROs** [1] - 27:16

**true** [1] - 28:3
**Trump** [1] - 16:13
**Truong** [1] - 2:14
**TRUONG** [1] - 1:19
**Tube** [1] - 18:20
**turning** [4] - 10:23, 12:19, 13:6, 24:14
**turns** [3] - 2:20, 10:9, 13:23
**two** [12] - 2:20, 3:9, 3:23, 11:1, 11:2, 11:8, 18:21, 21:10, 24:24, 24:25, 25:2, 27:4
**types** [1] - 20:13

### U

**U.S** [1] - 8:22
**U.S.C** [1] - 13:9
**uncomfortable** [1] - 17:21
**under** [20] - 8:15, 11:4, 11:7, 11:10, 13:10, 13:15, 13:17, 14:1, 14:8, 14:11, 14:18, 14:25, 18:18, 19:14, 24:10, 25:16, 25:18, 25:22, 25:23
**understood** [5] - 12:22, 21:19, 21:22, 22:16, 22:25
**undertook** [1] - 25:13
**underworked** [1] - 21:13
**UNITED** [1] - 1:1
**United** [4] - 2:12, 2:13, 28:2, 28:5
**unless** [1] - 11:15
**up** [10] - 6:11, 6:21, 7:17, 11:23, 12:13, 15:10, 19:7, 19:14, 21:7, 23:18
**USADF** [15] - 3:4, 5:7, 5:11, 6:7, 6:13, 6:15, 7:3, 11:18, 12:19, 12:20, 12:21, 14:14, 14:19, 22:11
**USADF's** [1] - 2:23
**USAO** [1] - 1:18
**useful** [1] - 12:12

### V

**Vacancies** [11] - 3:1, 11:13, 19:6, 19:7, 20:8, 20:12, 20:14, 20:15, 20:21, 24:11, 24:14
**vacancy** [1] - 12:23

**vacant** [3] - 13:11, 14:3, 14:13
**vague** [1] - 9:24
**valid** [2] - 24:8
**validity** [1] - 25:10
**vehicle** [1] - 24:5
**versus** [5] - 2:3, 12:7, 14:21, 18:20, 25:23
**violation** [1] - 25:20
**vision** [1] - 18:24
**void** [3] - 14:22, 15:2, 25:22
**voiding** [1] - 19:18
**Vought** [1] - 27:5
**vs** [1] - 1:5

### W

**walk** [1] - 13:21
**Ward** [5] - 2:3, 2:7, 6:25, 9:12, 15:3
**WARD** [1] - 1:3
**warning** [1] - 7:9
**Washington** [4] - 1:12, 1:16, 1:20, 1:24
**ways** [1] - 3:23
**weatherman** [1] - 5:18
**Wednesday** [1] - 1:11
**weeks** [1] - 3:9
**welcome** [2] - 2:10, 2:15
**whatsoever** [4] - 2:22, 7:6, 11:9, 13:7
**whoa** [1] - 26:7
**willing** [1] - 18:24
**wind** [1] - 5:18
**wishes** [2] - 11:25, 20:15
**withdrawn** [1] - 14:24
**withheld** [2] - 3:2, 11:17
**word** [1] - 16:9
**words** [2] - 14:21, 25:22
**write** [2] - 21:10
**wrote** [1] - 23:8

### Y

**years** [1] - 11:22
**Youngstown** [1] - 18:20

### Z

**Zahui** [1] - 22:11

**zone** [1] - 18:20
**zones** [1] - 18:19