# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Ward Brehm,<br><br>      *Plaintiff*,<br><br>*v.*<br><br>Pete Marocco, *et al.*,<br><br>      *Defendants*. | Civil Action No. 25-660 (RJL) |

## MEMORANDUM OPINION

June *10*, 2025 [Dkt. #20; Dkt. #31]

This case challenges President Trump's efforts to reduce the functions of the United States African Development Foundation ("USADF"), a small federal agency that invests directly into African enterprises. Plaintiff Ward Brehm ("Brehm") has sued Pete Marocco ("Marocco"), the U.S. Department of Government Efficiency Service ("DOGE"), Sergio Gor, Amy Gleason, Stephen Ehikian, and President Donald Trump (collectively, "defendants"), alleging that his purported removal as the President of USADF and President Trump's appointment of Marocco as acting Chairman of the Board were *ultra vires*, and that defendants' exercise of authority at USADF violates the Administrative Procedure Act ("APA"). Because this Court finds that Brehm was not lawfully USADF's president, the Court **DENIES** Brehm's motion for summary judgment or, in the alternative, a preliminary injunction, and **GRANTS** defendants' cross-motion for summary judgment.

## BACKGROUND

### I.    Factual and Statutory Background

On February 19, 2025, President Trump signed Executive Order 14,217 ("EO 14,217"), entitled "Commencing the Reduction of the Federal Bureaucracy." *See* 90 Fed. Reg. 10577 (Feb. 19, 2025).  The purpose of EO 14,217 is to "dramatically reduce the size of the Federal Government." *Id.* § 1.  It lists four federal agencies—USADF included—that would "be eliminated to the maximum extent consistent with applicable law" by "reduc[ing] the performance of [its] statutory functions and associated personnel to the minimum presence and function required by law." *Id.* § 2.

USADF is a federal agency established by Congress to support and invest in African-owned and African-led enterprises with the goal of "enabl[ing] the people of African countries to develop their potential, fulfill their aspirations, and enjoy better, more productive lives[.]" *See* 22 U.S.C. § 290h-2(a).  The agency is tasked with making "grants, loans, and loan guarantees to any African private or public group (including public international organizations), association, or other entity engaged in peaceful activities for" carrying out its purposes. *Id.* § 290h-3(a)(1).

The statute vests the management of USADF in a Board of Directors ("Board"). *See id.* § 290h-5(a)(1).  The Board is "composed of seven members appointed by the President [of the United States], by and with the advice and consent of the Senate." *Id.*  The President of the United States may select a chairperson and vice chairperson among the board members. *Id.*  The Board, in turn, manages the agency in part through its appointment of a president. *Id.* § 290h-5(d).  The president functions "on such terms as

the Board may determine." *Id.* By the Board's delegation, the President has the "responsibilities for directing the day to day activities of the Foundation." 22 C.F.R. § 1501.3(b).

USADF had five Board members (with two vacancies) and a committee in lieu of a president when President Trump signed EO 14,217. *See* Defs.' Statement of Undisputed Material Facts ("Defs.' SUMF") [Dkt. #31-1] ¶¶ 2–4;[1] Decl. of John Leslie, Jr. ("Leslie Decl.") [Dkt. #7-4] ¶ 4. The five Board members were Ward Brehm, John Leslie Jr. ("Leslie"), Senator Carol Moseley Braun ("Mosely Braun"), John Agwunobi ("Agwunobi"), and Morgan Davis ("Davis"), with Moseley Braun serving as the chairperson. *See* Defs.' SUMF ¶¶ 2–4. On February 10, 2025, the President of USADF—Travis Adkins—resigned. Leslie Decl. ¶ 4. The Board then created an interim "leadership committee" to perform the functions of the president. *Id.*

A few days after President Trump signed EO 14,217, he fired the five Board members. On February 24, 2025, Trent Morse ("Morse"), the Deputy Director at the White House Office of Presidential Personnel, notified Brehm that, "[a]t the direction of President Trump," he had been terminated from the Board "effective immediately." Pl.'s Corrected Statement of Undisputed Material Facts ("Pl.'s SUMF") [Dkt. #21] ¶ 20; Decl. of Ward Brehm ("Ward Decl.") [Dkt. #20-3] ¶¶ 9–10. Morse also attempted to send notices of termination to the other Board members, but the Board members did not receive them due to errors with the email addresses. *See* Defs.' SUMF ¶ 3; Pl.'s SUMF

---

[1] Unless otherwise noted, cited facts submitted by the parties are undisputed. *See* Pl.'s Corrected Statement of Undisputed Material Facts ("Pl.'s SUMF") [Dkt. #21]; Defs.' Resp. to Pl.'s SUMF [Dkt. #31-2]; Defs.' SUMF; Pl.'s Rsp. To Defs.' SUMF [Dkt. #33-1].

¶¶ 21–24; Defs.' Resp. to Pl.'s SUMF [Dkt. #31-2] ¶¶ 21–24.

Subsequently, on February 28, 2025, Morse notified USADF's Chief Financial Officer, Mathieu Zahui ("Zahui"), that President Trump had temporarily appointed Marocco as the acting chairperson of the Board, since USADF was "Board-less." Defs.' SUMF ¶¶ 6–7.   After consultations with USADF's Board, "Zahui responded to the Presidential Personnel Office" that "because under [USADF's] statue, a board nomination requires Senate confirmation, [USADF] could not recognize Marocco's authority as [USADF's] board chair." *Id.* ¶¶ 7–8.

Then, on March 3, 2025, Leslie, Mosely Braun, Agwunobi, and Davis convened a meeting of the Board (without Marocco) and adopted a resolution appointing Brehm as the President of USADF.  Pl.'s SUMF ¶ 27.  That same day, they notified Congress that they had received Morse's February 28 email, that President Trump had appointed Marocco the Board, and that Brehm was the new President of USADF.  Pl.'s SUMF ¶ 28. "The following day, Brehm received an email from Nate Cavanaugh, a General Services Administration employee temporarily detailed to USADF, informing him that President Trump had appointed Marocco as the acting chairperson of the Board."  Defs.' SUMF ¶ 10 (citation omitted).

Marocco then purportedly terminated Brehm.  He called an emergency meeting of the Board on March 6, 2025, with only himself present.  *See* Defs.' SUMF ¶ 11.  At the meeting, Marocco unilaterally removed Brehm and appointed himself as President of USADF.  Defs.' SUMF ¶ 11.  Since then, both Brehm and Marocco claim to be USADF's president.  *See* Decl. of Ward Brehm ("Brehm Decl.") [Dkt. #20-3] ¶ 1; Decl.

of Pete Marocco ("Marocco Decl.") [Dkt. #31-3] ¶ 6.

## II.    Procedural History

Brehm then filed suit in this Court.  The Complaint alleges that Brehm's purported removal as President of USADF and President Trump's appointment of Marocco as the acting chairperson of the Board were *ultra vires* in violation of statutory authority and violated the separation of powers.  Compl. ¶¶ 71–82.[2]  Brehm also alleges that, "[t]o the extent Defendants purport to exercise authority with respect to USADF without regard to Brehm's position as President of USADF, or through Marocco's invalid appointment," those actions violate the APA.  *Id.* ¶ 85.  He seeks preliminary and injunctive relief, declaratory judgments, a writ of mandamus, "equitable relief," reimbursement for attorneys' fees and expenses, and "such other relief as the Court deems proper."  *See id.* ¶¶ 86–91; *id.* at 24–26 (Prayer for Relief).

With the Compliant, Brehm moved for "an immediate administrative stay" and a TRO.  *See* Pl.'s Mot. for Temporary Restraining Order ("TRO") [Dkt. #7].  This Court entered an administrative stay and ordered additional briefing.  *See* Min. Order (Mar. 6, 2025).  With the benefit of both parties' arguments, the Court denied Brehm's motion for a TRO.  *See* Mem. Order (Mar. 11, 2025) [Dkt. #15].  Brehm then moved for summary judgment on all claims or, in the alternative, a preliminary injunction.  *See* Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") [Dkt. #20]; Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Br.") [Dkt.

---

[2] There is no "separation of powers clause" in the Constitution, so a claim that a branch of government has exercised a power that belongs to another branch must be "evident from the Constitution's vesting of certain powers in certain bodies."  *See Seila Law LLC v. CFPB*, 591 U.S. 197, 227 (2020).  Brehm makes his separation of powers claim more specific by reference to Article II, Section 2, Clause 2 (Appointments Clause) and Section 3 (Take Care Clause) of the Constitution.  *See* Compl. ¶¶ 71–82. .

#20-1]; Reply in Supp. of Pl.'s Mot. & Opp. to Defs.' Mot. ("Pl.'s Reply") [Dkt. #34].

Defendants oppose and cross move for summary judgment on all claims. *See* Defs.'

Cross Mot. for Summ. J. & Opp. to Pl.'s Mot. ("Defs.' Br.") [Dkt. #31]; Reply in Supp.

of Defs.' Mot. & Opp. to Pl.'s Mot. ("Defs.' Reply") [Dkt. #35]. The motions are now

ripe for review.

## STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the Court "must

assume the truth of all statements proffered by the non-movant except for conclusory

allegations lacking any factual basis in the record." *Dist. Intown Props. Ltd. P'ship. v.*

*District of Columbia*, 198 F.3d 874, 878 (D.C. Cir. 1999).

## ANALYSIS

### I.    Removal Claims

#### A.    Standing

At the outset, the Court has jurisdiction over Brehm's challenge to his purported

removal. A plaintiff has standing if he shows that he has "(1) suffered an injury in fact,

(2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely

to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330,

338 (2016). Assuming the merits of Brehm's removal arguments (*i.e.*, that his

termination was unlawful), his termination is a cognizable injury directly traceable to

defendants, and his injury is redressable since the Court may "enjoin 'subordinate

executive officials' to reinstate a wrongly terminated official '*de facto*[.]'" *See Severino v. Biden*, 71 F.4th 1038, 1042–43 (D.C. Cir. 2023) (quoting *Swan v. Clinton*, 100 F.3d 973, 980 (D.C. Cir. 1996)).[3] Brehm thus has standing to pursue his removal claims.

### B.    Merits

Although the Court has jurisdiction to hear Brehm's removal claims, I find that summary judgment is warranted for defendants. The parties agree that the President can effectuate removal of USADF's Board members by providing them with notice. *See* Pl.'s Br. at 28–30; Tr. of April 16, 2025 Hearing ("Dispositive Mots. Hearing Tr.") [Dkt. #39] at 16:15–17:13. They dispute whether that occurred. Defendants argue that Leslie, Mosely Braun, Davis, and Agwunobi did not have the authority to appoint Brehm as President of USADF because President Trump fired the Board prior to the Board meeting on March 3, 2025. Defs.' Br. at 7–9. In turn, Brehm argues that President Trump had not yet effected the removals of Leslie, Mosely Braun, Davis, and Agwunobi because these Board members had not yet received notice. Pl.'s Br. at 28–30. I disagree. President Trump removed the Board *prior* to Brehm's appointment, and thus Brehm was not lawfully appointed! Brehm's removal claims must therefore fail.

The "President may remove anyone he appoints," unless Congress "wishes to restrict the President's removal power," which it "must make [] clear in a statute." *Severino*, 71 F.4th at 1044; *see Seila Law LLC v. CFPB*, 591 U.S. 197, 228 (2020) ("President's removal power is the rule, not the exception."). Congress must "clear[ly]

---

[3] Brehm does not, however, have standing to seek injunctive relief against the President. *See Severino*, 71 F.4th at 1042.

signal" its restriction on the President's removal power either: (i) "in the plain text of a statute" or (ii) "through the statutory structure and function of an office." *Severino*, 71 F.4th at 1044.

Here, Congress has not place restrictions on the President's removal power of the Board members. USADF's organic statute is silent on Board member's removal and does not "clearly express[] a congressional intent to trim the President's removal power." *Severino*, 71 F.4th at 1044. In fact, it "nowhere imposes conditions or constraints on either the timing of or reasons for removal of [Board] members." *Id.* The statutory structure of the Board also does not curtail the President's removal power. While Board members have a defined term, ·that—"standing alone"—is not a restriction·on the President's removal power. *Id.* at 1047. The President thus has the authority to remove the Board members at will. *See Collins v. Yellen*, 594 U.S. 220, 248 (2021) ("When a statute does not limit the President's power to remove an agency head, we generally presume that the officer serves at the President's pleasure.").[4]

It is undisputed that President Trump decided to remove the Board members. The unambiguous language of the Presidential Personnel Office's emails (albeit undelivered) to Leslie, Mosely Braun, Davis, and Agwunobi speaks for itself: "At the direction of President Donald J. Trump, I am writing to inform you that your position as a board member of the United States African Development Foundation is terminated, effective

---

[4] Brehm represents that he "does not concede that he was lawfully fired from the Board," but he does not challenge his termination from the Board. *See* Pl.'s Br. 29 n.1. The Court finds that Brehm has waived the argument. *See Wood v. Milyard*, 566 U.S. 463, 474 (2012) (party waived a defense where it did not concede nor challenge an issue).

immediately." *See* Defs.' Opp'n to TRO, Exs. 1–5 [Dkt #10-1]. The Court rejects Brehm's bald assertion that "[d]efendants have not provided *competent* evidence that President Trump has directed the removal of these Board members[.]" Pl.'s Resp. to Defs.' SUMF [Dkt. #33-1] ¶¶ 3–4 (emphasis added); Pl.'s Reply at 12. At summary judgment, the Court "may not make credibility determinations or weigh the evidence." *Wood v. Am. Fed'n of Gov't Emps.*, 316 F. Supp. 3d 475, 481 (D.D.C. 2018), *aff'd*, 2019 WL 668337 (D.C. Cir. Feb. 12, 2019); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (same). Besides, it would be utterly unreasonable for the Court to draw the inference that the Presidential Personnel Office was acting on its own initiative.

That, however, does not end the Court's analysis. Since the parties dispute whether President Trump had actually removed the Board members, I must decide whether their removals were in effect prior to their resolution to appoint Brehm. The Constitution does not establish a way by which the President can remove at-will Executive officers, so I must look to other sources.

While the Supreme Court has not squarely addressed the issue,[5] history is replete

---

[5] At the hearing, Brehm's counsel represented that the Court is bound by the rule outlined in *In re Hennen*, 38 U.S. (13 Pet.) 230 (1839). Dispositive Mots. Hearing Tr. at 3:10–19. According to counsel, the Supreme Court in "*In re Hennen* requires express notice and states that you can accomplish express notice in two possible ways. One is through express notice given to the old officer themselves, or through the appointment of another officer and that notice expressly reaches the old officer, and at the moment that notice reaches the old officer, that is when removal is accomplished." *Id.* at 3:18–4:2; *see also id.* 6:9–10 ("Whatever it is, it is not an express notice of removal, which is required by *In re Hennen*."); *id.* at 8:14–15 ("But again, express notice is required under the case law[.]"); *id.* at 23:2–19 ("the *In re Hennen* case" is "the operative principle of law here"). *In re Hennen* proscribes no such rule. Counsel erroneously relies on attorney argument that appears *before* the Supreme Court's opinion that discusses a Pennsylvania Circuit Court decision. *See In re Hennen*, 38 U.S. at 247; Library of Congress, *U.S.*

with examples of the President successfully terminating his subordinate executive officials with notice. *See NLRB v. Noel Canning*, 573 U.S. 513, 525–26 (2014) (relying on historical practice to interpret the Recess Appointments Clause); Aditya Bamzai, Saikrishna Bangalore Prakash, *How to Think About the Removal Power*, 110 Va. L. Rev. Online 159, 196–97 (2024); *see also* Pl.'s Br. at 30 (relying on historical practice). For example, in 1796, President Washington unilaterally fired James Monroe from his position as an ambassador, and Monroe received notice of his removal from a letter written by Thomas Pickering, then-Secretary of State. Bamzai & Prakash, 110 Va. L. Rev. Online at 196–97 (citing Letter from Timothy Pickering to James Monroe, *in* 1 American State Papers: Foreign Relations 741, 741–42 (1883)). Not long after, when Pickering refused to resign, President Adams sent Pickering a letter notifying him of his removal. *Id.* at 196 (citing Letter of John Adams to Timothy Pickering (May 12, 1800), *in* 9 The Works of John Adams 55, 55 (1854)). Accordingly, the Court finds that President Trump effectuate the removal of USADF's Board members upon notices of their termination.[6]

Unfortunately for Brehm, defendants have shown that the Board members' removals were effective prior his appointment on March 3, 2025. Even though the Board members did not receive their termination emails, they were aware that, on February 28, the Presidential Personnel Office emailed Chief Financial Officer Zahui that, "because

---

*Reports: Ex Parte Duncan N. Hennen, 38 U.S. (13 Pet.) 225 (1839)*, https://tile.loc.gov/storage-services/service/ll/usrep/usrep038/usrep038225/usrep038225.pdf.

[6] There may be other mechanism for the President to remove at-will Executive officials, but I do not reach that issue based on the record before me.

USADF was 'Board-less,'" Marocco had been "appointed Acting Board Chair of USADF," replacing Mosely Braun from that position. *See* Defs.' SUMF ¶¶ 6–7; Decl. of Carol Moseley Braun ("Moseley Braun Decl.") [Dkt. #33-2] ¶ 5; Decl. of John Agwunobi ("Agwunobi Decl.") [Dkt. #33-3] ¶ 5; Decl. of Morgan Davis ("Davis Decl.") [Dkt. #33-4] ¶ 5. In fact, it was only after Zahui consulted with the Board regarding the email that he responded to the Presidential Personnel Office. Defs.' SUMF ¶ 6. As such, Zahui effectively notified the Board members of their terminations.

Brehm's argument that the Presidential Personnel Office's email to Zahui was not clear enough to effectuate notice is unpersuasive. Mosely Braun, Agwunobi, and Davis each attest (verbatim) that they "did not (and do not) understand this characterization to be a statement that [they] or any other Board members had been terminated from [their] seats on the Board,"[7] but the President's ability to effectively remove an at-will Executive official cannot depend on the official's appreciation of the President's removal. *See* Moseley Braun Decl. ¶ 5; Agwunobi Decl. ¶ 5; Davis Decl. ¶ 5. To hold otherwise would undermine the President's power to swiftly remove Executive officials. *See Myers v. United States*, 272 U.S. 52, 106 (1926) (postmaster protested President Woodrow Wilson's removal of him until the end of his appointed term). Without such power, "the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 514 (2010).

---

[7] The Court will assume the truth of these declarations, *see Reeves*, 530 U.S. at 150, but notes that the identical, cookie-cutter language concerning the Board members' perception of the Presidential Personnel Office's email suggests that the declarants signed their declarations without due reflection.

In sum, since the President removed the Board members before March 3, 2025, they lacked the authority to appoint Brehm as the President of USADF. Brehm thus never lawfully held the position, and the Court is not at liberty to unilaterally install him as president. The Court therefore finds that summary judgment is warranted for the defendants on Brehm's removal claims.

## II.    Appointment Claims

The parties dispute whether Brehm has standing to pursue his claims that the President's appointment of Marocco was *ultra vires* in violation of statutory authority and violated the separation of powers. *See* Pl.'s Reply at 15 n.5; Defs.' Br. at 10–11. Defendants argue that Brehm does not have standing because Brehm "ceased to have any fiduciary or business relationship" with USADF after President Trump removed him from the Board. Defs.' Br. at 10–11. Brehm merely argues in response that the Court "must 'assume [Plaintiff] will prevail on the merits' of his claims when evaluating his standing," and that he "plainly suffers an injury that is traceable to Defendants' actions and is redressable by a judgment in his favor." Pl.'s Reply at 15 n.5 (quoting *LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011)). The Court finds that Brehm lacks standing to challenge Marocco's appointment.

Brehm has not shown an injury-in-fact. He presumably would proffer that Marocco's attempt to remove him as the President of USADF caused him injury. *See* Pl.'s Reply at 15 n.5 (arguing that "Brehm plainly suffers an injury"). Brehm was not, however, lawfully the president and thus does not have an entitlement to that position. Moreover, since Brehm was not lawfully the president, he was not "subject to an action

12

by the official whose appointment [he] challenge[s] as constitutionally invalid," which is required to challenge an appointment. *Jefferson v. Harris*, 285 F. Supp. 3d 173, 187 (D.D.C. 2018); *see Freytag v. CIR*, 501 U.S. 868, 871–72 (1991) (plaintiffs challenged process for appointing Special Trial Judge who assessed federal income-tax deficiencies against them); *Tucker v. Comm'r*, 676 F.3d 1129 (D.C. Cir. 2012) (taxpayer challenged process for appointing IRS Office of Appeals employees after those employees heard plaintiff's challenge to tax-deficiency determination). His affiliation with USADF ended on February 23, 2024, when the President removed him from the Board. *See* Brehm Decl. ¶ 10. That was *prior* to Marocco's appointment! *See* Defs.' SUMF ¶ 6. Brehm therefore lacks standing to challenge Marocco's appointment.

The Court rejects Brehm's argument that I must assume he was USADF's president for purposes of evaluating standing for his appointment claims. *See* Pl.'s Reply at 15 n.5. The Court assess standing "for each claim"—not in gross. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017). And whether Brehm lawfully held the position of president goes to whether he has an injury-in-fact—not the merits of his appointment claims.

In short, Brehm is the wrong plaintiff to challenge Marocco's appointment. I therefore find that summary judgment is warranted in favor of defendants on Brehm's appointment claims.

III.    **APA Claim**

Finally, Brehm's APA claim is also not justiciable. *See* Compl. ¶¶ 83–85. He fails to identify a final agency action for the Court to review—let alone proffer an injury

that stems from such action. The Complaint merely states: "[t]o the extent that Defendants purport to exercise authority with respect to USADF without regard to Brehm's position as President of USADF, or through Marocco's invalid appointment as Chair of the Board of USADF, those actions" violate the APA. *Id.* ¶ 85. The Complaint, however, does not identify an "agency action," nor does Brehm argue any such action in his motion for summary judgment. *See* Compl. ¶¶ 1–6; 40–51. Even if Brehm had identified any agency action, he has not shown that he has standing to challenge defendants' actions taken at USADF. Therefore, I find summary judgment warranted for the defendants on Brehm's APA claims.[8]

## CONCLUSION

For the reasons stated above, the Court **DENIES** Brehm's motion for summary judgment and **GRANTS** defendants' motion for summary judgment.

RICHARD J. LEON
United States District Judge

---

[8] Since defendants prevail on summary judgment for Brehm's *ultra vires* and APA claims (Counts I–III), I grant summary judgment for defendants on Count IV (Declaratory Judgment Act), Count V (Writ of Mandamus), and Count VI (Equitable Relief for Statutory and Constitutional Violations). *See* Compl. ¶¶ 86–91.